**Tara J. Schleicher, WSBA No. 26884**
tara.schleicher@foster.com
**Jason M. Ayres, WSBA No. 39141**
jason.ayres@foster.com
Foster Garvey P.C.
121 SW Morrison Street, 11th Floor
Portland, Oregon 97204
  *Attorneys for Columbia State Bank*

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re | Case No. 19-00467-FPC11 |
| **GRAY LAND & LIVESTOCK, LLC,** | **SECOND AMENDED PLAN OF LIQUIDATION (June 18, 2020)** |
|   Debtor. | |

FG:11016154.1

# TABLE OF CONTENTS

I. DEFINITIONS ............................................................................................ 5
   1.1    Defined Terms. ....................................................................... 5
   1.2    Other Terms. ........................................................................... 5
   1.3    Interpretation; Application of Definitions; and Rules of Construction.. ............... 5

II. TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY
CLAIMS ...................................................................................................... 6
   2.1    Administrative Expense Claims............................................ 6
       a.    Non-Professional Fee Claims. ................................ 6
       b.    Professional Fees. .................................................... 6
   2.2    Bankruptcy Fee Claims......................................................... 7
   2.3    Priority Tax Claims. .............................................................. 7

III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ........................ 7
   3.1    Classification & Treatment. ................................................. 7
       a.    Class 1 (Allowed Secured Claim of Columbia State Bank) ...................... 8
       b.    Class 2 (Allowed Secured Claim of CoBank) .......................................... 8
       c.    Class 3 (Allowed Secured Claim of Diversified Financial Services, LLC) ......................................................................................................... 9
       d.    Class 4 (Allowed Secured Claim of John Deere Financial, ("JDF") ......... 9
       e.    Class 5 (Allowed Secured Claim for RDO)............................................... 9
       f.    Class 6 (Allowed Secured Claim for Husch & Husch, Inc.) ...................... 9
       g.    Class 7 (Allowed Secured Claim of Grant Construction Co Inc.)............ 10
       h.    Class 8 (Allowed Secured Claim of Miland Walling).............................. 10
       i.    Class 9 (Allowed Secured Claims for Property Taxes of the Real Estate Collateral of the Trust)............................................................................ 11
       j.    Class 10 (General Unsecured Claims). .................................................... 12
       k.    Class 11 (Debtor's Interests)................................................................... 12
   3.2    Impairment of Classes. ....................................................... 12
       a.    Impaired Classes. ................................................... 12
       b.    Confirmation Notwithstanding Rejection by a Class................................ 13

IV. MEANS FOR PLAN EXECUTION ........................................................... 13
   4.1    Liquidation of Assets. ........................................................ 13
       a.    Transfer of Estate Assets to the Debtor. ................................................. 13
       b.    Transfer of the Debtor's Assets to the Liquidation Trust. ........................ 13
       c.    Liquidation of Assets. .............................................................................. 13
       d.    Notice of Sale/Abandonment to Interested Parties. ................................. 13
       e.    Return of Assets to the Debtor. ............................................................... 14
   4.2    Funding for the Plan and Grantor Trust. ............................. 14
   4.3    Deposit Accounts. ............................................................... 14
   4.4    Engagement of Plan Agent. ................................................ 14
       a.    Appointment of Plan Agent. .................................................................... 14
       b.    Compensation. ......................................................................................... 15
       c.    Powers and Duties. .................................................................................. 15
       d.    Bond. ....................................................................................................... 15
   4.5    Distributions to be Made by the Plan Agent........................ 15
       a.    Compliance by the Plan Agent. ............................................................... 15
       b.    Form of Payments. .................................................................................. 16
       c.    Delivery of Distributions. ........................................................................ 16
       d.    Minimum Distributions........................................................................... 16

FG:11016154.1

       e.     Reserve Fund. ............................................................... 16

       f.      Unclaimed Property. ...................................................... 16

       g.     Time Bar to Cash Payments. .......................................... 17

4.6     Disputed, Contingent and Unliquidated Claims. ...................... 17

4.7     Amendments to Claims. ............................................................. 18

4.8     Disputed Distributions. ............................................................. 18

4.9     Setoff, Recoupment and Defenses. ........................................... 18

4.10   United States Trustee Fees. ........................................................ 18

4.11   Post-Confirmation Date Fees and Expenses of Professionals and Plan Agent. ...................................................................................... 18

4.12   Annual Reports and Notices. ..................................................... 19

4.13   Reimbursement of Capital Gain Tax Paid By the Debtor. ............ 19

4.14   Closing of the Chapter 11 Case. ............................................... 20

V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............... 20

5.1     Rejection of Executory Contracts and Unexpired Leases. ............ 20

5.2     Claims for Rejection Damages. ................................................. 21

VI. EFFECT OF PLAN CONFIRMATION. ........................................................ 21

6.1     Injunction. ................................................................................ 21

6.2     Binding Effect. ......................................................................... 22

VII. RETENTION OF JURISDICTION ............................................................. 22

7.1     Jurisdiction of Bankruptcy Court. ............................................. 22

       a.     To classify the Claim of any Creditor, to reexamine Claims that have been allowed for Plan voting purposes and to hear and determine objections to Claims; ............................................................................ 23

       b.     To hear and determine any and all adversary proceedings, applications and contested matters, whether pending on or commenced after the Confirmation Date; ............................................................... 23

       c.     To determine the allowance of Claims resulting from the rejection of executory contracts and unexpired leases; ..................................... 23

       d.     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated; ............................................................................... 23

       e.     To issue such orders in aid of execution of this Plan to the extent authorized by Section 1142 of the Bankruptcy Code; ............................ 23

       f.      To consider any modifications of this Plan and to cure any defect or omission, or reconcile any inconsistency, in this Plan or in any Court order relating to this Plan (including, without limitation, the Confirmation Order); ............................................................................... 23

       g.     To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of this Plan; ................. 23

       h.     To recover property of the Estate, wherever located; ................... 23

       i.      To hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations under Section 505(b) of the Bankruptcy Code filed, or to be filed, with respect to tax returns for any and all taxable periods ending after the Petition Date through, and including, the Plan Agent's final Distribution); ....................................... 23

       j.      To hear any other matter consistent with the provisions of the Bankruptcy Code; and ............................................................................ 23

       k.     To enter a final decree closing the Chapter 11 case. ................... 23

FG:11016154.1

    7.2    <u>Other Courts of Competent Jurisdiction</u>. ............................................................... 24

VIII. MISCELLANEOUS PROVISIONS ............................................................................... 24
    8.1    <u>Election Pursuant to Section 1129(b) of the Bankruptcy Code</u>. ........................ 24
    8.2    <u>Computation of Time Periods</u>. ............................................................................ 24
    8.3    <u>Governing Law</u>. ................................................................................................... 24
    8.4    <u>Amendment</u>. ......................................................................................................... 24
    8.5    <u>Plan Controls</u>. ..................................................................................................... 25

FG:11016154.1

Secured creditor, Columbia State Bank (the "Proponent") proposes the following Second Amended Plan of Liquidation (the "Plan") pursuant to the provisions of Chapter 11 of the Bankruptcy Code. A short summary of the Plan is as follows:

The Bank's plan transfers all of the Debtor's assets to a trust managed by experienced Plan Agent, Critical Point Advisors, LLC, who will sell the Debtor's assets as expeditiously as possible at the maximum amount possible. The Plan Agent has the discretion to operate the business, while a chapter 7 trustee does not. The proceeds from the sale of assets shall be distributed first to creditors with valid liens on the assets with the balance paid to unsecured claims in accordance with the priorities established by the bankruptcy code. The Bank's plan proposes to pay 100% plus interest by May 31, 2021 with an interim distribution at the end of 2020. The Bank's plan is better than the Debtor's because the Debtor proposes to pay claims over a ten-year period but its 2019 crop insurance is void based upon fraud and it does not have 2020 crop insurance; whereas, the Plan Agent can obtain crop insurance.

## I.

## DEFINITIONS

1.1     Defined Terms.  Definitions of certain terms used in this Plan are set forth in the attached **Exhibit 1**.  Other terms are defined in the text of this Plan.  In either case, when a defined term is used, the first letter of each word in the defined term is capitalized.

1.2     Other Terms.  Terms used and not defined in this Plan that are defined in the Bankruptcy Code or in the Bankruptcy Rules shall have the meanings ascribed to them in the Bankruptcy Code or in the Bankruptcy Rules, as applicable.

1.3     Interpretation; Application of Definitions; and Rules of Construction.  Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter.  For purposes of the Plan:  (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (b) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified or supplemented; and (c)

Page 5 of 25 – SECOND AMENDED PLAN OF LIQUIDATION (June 18, 2020)

unless otherwise specified, all references in the Plan to Sections and Exhibits are references to Sections and Exhibits of or to the Plan. The words "herein," "hereof," "hereto," "hereunder," "hereunto" and other words of similar meaning refer to this Plan as a whole and not to any particular section, subsection or clause contained in this Plan. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of this Plan. Unless otherwise indicated herein, all references to dollars means United States dollars.

## II.
## TREATMENT OF ADMINISTRATIVE EXPENSE
## CLAIMS AND PRIORITY CLAIMS

2.1 <u>Administrative Expense Claims</u>. All Administrative Expense Claims that arise or are incurred prior to the Effective Date must be filed no later than thirty (30) days after the Effective Date.

a. <u>Non-Professional Fee Claims</u>. Administrative Expense Claims that arise or are incurred prior to the Effective Date, other than for Professional Fees, shall be paid by the Plan Agent (a) in full, in Cash, on the later of (i) the Effective Date, (ii) when due (in the case of Claims which become due after the Effective Date), (iii) upon entry of a Final Order if Court approval is a precondition to payment or (b) as may be agreed upon in writing between the Holder and Plan Agent.

b. <u>Professional Fees</u>. The Plan Agent shall pay the amount of the Allowed Administrative Expense Claims for Professional Fees on the later of (i) the Effective Date or (ii) upon entry of a Final Order from the Court allowing the payment of the Administrative Expense Claims for Professional Fees, unless the holder of an Allowed Administrative Expense Claim for Professional Fees agrees to a different treatment of such Claim (including, without limitation, any different treatment that may be provided for in any documentation, statute or regulation

governing such Administrative Expense Claim).  Other than to Secured Creditors from proceeds of their collateral, no Distributions shall be made by the Plan Agent until the Allowed Professional Fee Claims have been paid in full.

      2.2   <u>Bankruptcy Fee Claims.</u>    Fees payable by Debtor under 28 U.S.C. §1930, or to the Clerk of the Bankruptcy Court, will be paid in full in Cash on the Effective Date.  After confirmation, the Plan Agent shall continue to pay quarterly fees of the Office of the United States Trustee and to file quarterly reports with the Court until this case is closed by the Court, dismissed or converted, except as otherwise ordered by the Court.  This requirement is subject to any amendments to 28 U.S.C. §1930(a)(6) that Congress makes retroactively applicable to confirmed Chapter 11 cases.

      2.3   <u>Priority Tax Claims</u>.  Priority Tax Claims, if any, shall be paid over a period not to exceed five (5) years after the Petition Date as provided in Section 1129(a)(9)(C) of the Bankruptcy Code.  The payment of such Priority Tax Claims, together with simple interest at the applicable statutory rate, shall be made in annual payments beginning September 1, 2020, with the annual payment in year 2024 to be made by August 30, 2024.  Any creditor with a Priority Tax Claim that also has a valid tax lien against any Asset shall retain that tax lien and such lien shall remain unaffected and shall remain in place to secure that Priority Tax Claim. Alternatively to the treatment described above, the Holder and Plan Agent may agree to a different treatment of the Holder's Priority Tax Claim.  The Holder of Priority Tax Claims shall not be entitled to any future refund of the Debtor to pay its or any portion of its Allowed Tax Claims.  Rather the payment of the Priority Tax Claims shall be granted solely by this Plan.

### III.

### CLASSIFICATION AND TREATMENT OF

### CLAIMS AND INTERESTS

      3.1   <u>Classification & Treatment</u>.  All Claims (other than Administrative Expense Claims, Bankruptcy Fee Claims and Priority Tax Claims) and Interests are placed in the

following Classes for all purposes and the Classes of Claims and Interests shall receive the treatment described herein. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in other Classes only to the extent that any remainder of the Claim qualifies within the description of such other Classes. A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid or otherwise satisfied prior to the Effective Date. The treatment of and consideration to be received by Holders of Allowed Claims pursuant to this Plan shall be in full settlement, release, and discharge of their respective Allowed Claims unless otherwise specified herein.

a. Class 1 (Allowed Secured Claim of Columbia State Bank) consists of the Allowed Secured Claim of Columbia State Bank in the amount of $3,988,832.40 as of the Petition Date under Section 506 of the Bankruptcy Code. Columbia State Bank shall retain its lien on all of the Debtor's personal property (including 14 titled vehicles) and 16 parcels of Debtor's real property in Klickitat County and Yakima County identified in highlight on **Exhibit 2** attached hereto securing such claim, and any other real property of the Debtor in which Columbia State Bank may have a lien or interest, with the same priority such lien had as of the Petition Date. All terms and conditions set forth in the agreements and instruments under which the Class 1 Allowed Secured Claim arose shall be and remain in full force and effect according to their terms, except that interest shall accrue post-confirmation at no more than 5.5% per annum.

b. Class 2 (Allowed Secured Claim of CoBank) consists of the Allowed Secured Claim of CoBank ("CoBank") as of the Petition Date under Section 506 of the Bankruptcy Code. CoBank shall retain its lien on the Grain Trailers securing such claim with the same priority such lien had as of the Petition Date. All terms and conditions set forth in the agreements and instruments under which the Class 2 Allowed Secured Claim arose shall be and

remain in full force and effect according to their terms, except that interest shall accrue post-confirmation at no more than 5.5% per annum

      c.    <u>Class 3 (Allowed Secured Claim of Diversified Financial Services, LLC)</u> consists of the Allowed Secured Claim of Diversified Financial Services, LLC ("DFS") as of the Petition Date under Section 506 of the Bankruptcy Code. DFS shall retain its lien on the Great Plains Turbo, securing such claim with the same priority such lien had as of the Petition Date. All terms and conditions set forth in the agreements and instruments under which the Class 3 Allowed Secured Claim arose shall be and remain in full force and effect according to their terms, except that interest shall accrue post-confirmation at no more than 5.5% per annum.

      d.    <u>Class 4 (Allowed Secured Claim of John Deere Financial, ("JDF")</u> consists of the Allowed Secured Claim of JDF as of the Petition Date under Section 506 of the Bankruptcy Code. John Deere shall retain its lien on the 2009 Flex Coil 5000 Air Drill securing such claim with the same priority such lien had as of the Petition Date. All terms and conditions set forth in the agreements and instruments under which the Class 4 Allowed Secured Claim arose shall be and remain in full force and effect according to their terms, except that interest shall accrue post-confirmation at no more than 5.5% per annum

      e.    <u>Class 5 (Allowed Secured Claim for RDO)</u> consists of the Allowed Secured Claim of RDO as of the Petition Date under Section 506 of the Bankruptcy Code. RDO shall retain its lien on the 2003 John Deere 9620 Tractor securing such claim with the same priority such lien had as of the Petition Date. All terms and conditions set forth in the agreements and instruments under which the Class 5 Allowed Secured Claim arose shall be and remain in full force and effect according to their terms, except that interest shall accrue post-confirmation at no more than 5.5% per annum

      f.    <u>Class 6 (Allowed Secured Claim for Husch & Husch, Inc.)</u> consists of the claim asserted by Husch & Husch, Inc. ("H&H") as secured in the Crop Proceeds of Debtor under RCW 60.11.020 and 60.11.050(4) in the amount of $255,508.20, as agreed between

Proponent and H&H. To the extent the Class 6 Claim is secured, H&H shall retain its lien on the Crops with the same priority such lien may have had as of the Petition Date. All terms and conditions set forth in the agreements and instruments, if any, under which the Class 6 Secured Claim arose shall remain in full force and effect according to their terms, except that interest shall accrue post-confirmation at no more than 5.5% per annum To the extent that the alleged secured status of the Class 6 Claim of H&H is incorrect, then the Class 6 Claim shall be treated as a Class 10 General Unsecured Claim.

g.    Class 7 (Allowed Secured Claim of Grant Construction Co Inc.) consists of the claim asserted by Grant Construction Co Inc. ("Grant") as secured in certain real property of the Debtor. To the extent the Class 7 Claim is allowed and secured, Grant shall retain its lien on that real property with the same priority such lien may have had as of the Petition Date. All terms and conditions set forth in the agreements and instruments, if any, under which the Class 7 Secured Claim arose shall remain in full force and effect according to their terms, except that interest shall accrue post-confirmation at no more than 5.5% per annum To the extent that the alleged secured status of the Class 7 Claim of Grant is incorrect, then the Class 7 Claim shall be treated as a Class 10 General Unsecured Claim.

h.    Class 8 (Allowed Secured Claim of Miland Walling) consists of the claim asserted by Miland Walling ("Walling") as secured in certain real property in Klickitat County. To the extent the Class 8 Claim is allowed and secured, Walling shall retain its lien on that real property with the same priority such lien may have had as of the Petition Date. All terms and conditions set forth in the agreements and instruments, if any, under which the Class 8 Secured Claim arose shall remain in full force and effect according to their terms, except that interest shall accrue post-confirmation at no more than 5.5% per annum. To the extent that the alleged secured status of the Class 8 Claim of Walling is incorrect, then the Class 8 Claim shall be treated as a Class 10 General Unsecured Claim.

FG:11016154.1

      i. <u>Class 9 (Allowed Secured Claims for Property Taxes of the Real Estate Collateral of the Trust)</u> consists of the Allowed Secured Claims of governmental entities as separated into subclasses according to the Holder and each property to be transferred to the Grantor Trust subject to the Holder's lien (the "Real Estate Collateral of the Trust" as defined below in the following table). The Allowed Secured Claims for property taxes of the Real Estate Collateral of the Grantor Trust shall be paid in accordance with this Section 3.1(i) of this Plan. To the extent of the net proceeds of sale of the respective property, the Plan Agent shall pay each subclass in full with interest at the applicable statutory or regulatory rate. Payment of the lien shall be made at the time of closing of the sale of the respective property of that subclass. If the Plan Agent determines that the sale of a property will not pay the subclass in full, the Plan Agent shall sell only with the subclass's consent and, alternatively, may abandon that property in accordance with § 4.1(d) of the Plan. Payments made by the Debtor prior to confirmation of this Plan will be deducted from the respective Allowed Secured Claim.

| <u>Subclass</u> | <u>Holder</u> | <u>"Real Estate Collateral of the Trust"</u> | <u>Acres</u> |
|---|---|---|---|
| A(i) | Klickitat County | Lots 2, 3; 6-5-22 | 79.11 |
| A(ii) | Klickitat County | S252; 28-6-21 | 160.00 |
| A(iii) | Klickitat County | NE LESS R/W; 33-6-21 | 160.00 |
| A(iv) | Klickitat County | W2W2; SESW; SWSE; 10-6-22 | 240.00 |
| A(v) | Klickitat County | S2NW4; SW4; 20-6-22 | 240.00 |
| A(vi) | Klickitat County | S2N2 FRACT'L; SE; 19-6-22 | 318.63 |
| A(vii) | Klickitat County | E2; 25-6-21 | 320.00 |
| A(viii) | Klickitat County | E2 20-6-22 | 320.00 |
| A(ix) | Klickitat County | E2NW4; SWNW4; S2 32-6-22 | 440.00 |
| A(x) | Klickitat County | W2; W2E2; 15-6-22 | 480.00 |
| A(xi) | Klickitat County | W2 and W2E2 22-6-22 | 480.00 |
| A(xii) | Klickitat County | ALL LESS SWSW4 31-6-22 | 598.12 |

| | | | |
|---|---|---|---|
| A(xiii) | Klickitat County | ALL FRACTIONAL 30-6-22 | 636.64 |
| A(xiv) | Klickitat County | ALL; 9-6-22 | 640.00 |
| A(xv) | Klickitat County | ALL 21-6-22 | 640.00 |
| A(xvi) | Klickitat County | TL 1 IN W2; 33-6-21 | 65.00 |
| A(xvii) | Klickitat County | E2 LESS SWSE; 32-6-21 | 280.00 |
| A(xviii) | Klickitat County | S2SE; 29-6-21 | 80.00 |
| A(xix) | Klickitat County | W2NE FRAC'L; E2NW FRAC'L; 4-5-21 | 161.21 |
| B | Washington Department of Transportation | W2NE FRAC'L; E2NW FRAC'L; 4-5-21 | 161.21 |
| C | Yakima County | Yakima County Grape Property (Tax parcel nos. 220910-23401 and 220910-23401 | |

j.  Class 10 (General Unsecured Claims) consists of all Allowed Unsecured Claims, together with interest at the rate of 2.35% per annum, the federal interest rate under 28 U.S.C. § 1961(a) as of the Petition Date.  After Allowed Administrative Expense Claims for Professional Fees have been paid in full, each Holder of an Allowed Unsecured Claim shall receive Distributions of a Pro Rata share of the Available Cash pursuant to the Grantor Trust Agreement.

k.  Class 11 (Debtor's Interests) consists of all Interests of the Debtor.  The rights of the Debtor's Interests shall remain subordinate to all Allowed Claims, and the Debtor shall not receive any payment under this Plan unless and until all Allowed Claims have been paid in full.  Upon payment of all Allowed Claims, the Grantor Trust will be terminated and all remaining Assets, if any, will be returned to the Debtor.

3.2  Impairment of Classes.

a.  Impaired Classes.  Classes 1 through 11 are impaired by this Plan and the holders of such Claims are entitled to vote to accept or reject this Plan.

Page 12 of 25 – SECOND AMENDED PLAN OF LIQUIDATION (June 18, 2020)

b.     Confirmation Notwithstanding Rejection by a Class.  In the event that an impaired Class of Claims fails to accept this Plan in accordance with Section 1129(a) of the Bankruptcy Code, Proponent may request that the Court confirm this Plan in accordance with Section 1129(b) of the Bankruptcy Code.

# IV.

## MEANS FOR PLAN EXECUTION

4.1     Liquidation of Assets.

a.     Transfer of Estate Assets to the Debtor.  On the Effective Date, all assets of the Estate will be transferred from the Estate to the Debtor.

b.     Transfer of the Debtor's Assets to the Liquidation Trust.  On the Effective Date, subsequent to the transfer from the Estate, the Debtor will transfer as grantor to the Grantor Trust all Assets to the Plan Agent as trustee of the Grantor Trust and all Assets shall vest in the Grantor Trust to be administered by the Plan Agent as trustee of the Debtor's Grantor Trust in accordance with the Grantor Trust Agreement attached hereto and incorporated herein as **Exhibit 3**.

c.     Liquidation of Assets.  From and after the Effective Date, the Plan Agent shall take steps necessary for liquidating the Assets as expeditiously as reasonably possible while taking into account the fair market value of the Assets based on current market conditions and recognizing his duty to all constituients of the Grantor Trust.  The Plan Agent shall also enforce and prosecute any Avoidance Actions and account for other rights, interests and privileges respecting the Assets.

d.     Notice of Sale/Abandonment to Interested Parties.  The Plan Agent may sell or abandon Assets without Court approval, but the Plan Agent must first submit to the Service List a notice of sale or abandonment of any such Assets with the following information: (i) the Buyer's name and relation, if any, to Debtor or Rick T. Gray, (ii) general description of the property; (iii) other parties to the transaction and their relation, if any, to the Debtor or Rick T.

Page 13 of 25 – SECOND AMENDED PLAN OF LIQUIDATION (June 18, 2020)

Gray; (iv) the gross sales price; (v) all liens on the property and the amount to be paid to each lienholder; (vi) total sale costs; (vii) tax consequences; (viii) summary of valuation information; (ix) that if any liens are not fully paid at closing they will attach to the sale proceeds in the same order of priority that they attach to the property, which will be held in trust until court order; (x) if any broker involved, name and commission; (xi) amount to be paid pro rata to Class 10 Beneficiaries; (xii) if property is to be abandoned, why it is being abandoned and to whom (the "Notice of Sale/Abandonment"). A party in interest may file an objection to the proposed sale or abandonment with the Court within fourteen (14) days of service of the Notice of Sale/Abandonment. If an objection is filed and served within that notice period, the Plan Agent may not sell or abandon the Asset(s) subject to the objection without an order of the Court. If no objection is filed within the notice period, the Plan Agent may immediately sell or abandon the Asset(s) in accordance with the terms set forth in the Notice of Sale/Abandonment.

        e.    <u>Return of Assets to the Debtor</u>. Upon payment of all Holders of Allowed Claims as set forth herein, the Grantor Trust shall be terminated and the remaining Assets, if any, shall be returned to the Debtor as grantor.

    4.2    <u>Funding for the Plan and Grantor Trust</u>. This Plan and the Grantor Trust shall be funded by (i) Cash on hand as of the Effective Date and (ii) Cash available after the Effective Date from, among other things, the liquidation of Assets.

    4.3    <u>Deposit Accounts</u>. The Plan Agent may establish one or more interest-bearing accounts as the Plan Agent determines may be necessary or appropriate to effectuate the provisions of this Plan consistent with Section 345 of the Bankruptcy Code and any orders of the Court.

    4.4    <u>Engagement of Plan Agent</u>.

        a.    <u>Appointment of Plan Agent</u>. As of the Effective Date, the Plan Agent shall be deemed to have been appointed by the Court to perform his duties and obligations under

this Plan. The Plan Agent's acitivities after the Effective Date, and the amount of the Plan Agent's fiduciary bond, will not be monitored by the United States Trustee.

        b.    <u>Compensation</u>. The compensation for the Plan Agent shall be the statutory fee to which a panel trustee is entitled under Section 326 of the Bankruptcy Code, which shall be paid on an interim basis from proceeds upon the closing of a sale of Assets if the proposed payment is disclosed in the Notice of Sale/Abandonment. Expenses of the Plan Agent shall be paid in accordance with Section 4.11 of the Plan.

        c.    <u>Powers and Duties</u>. From and after the Effective Date, the Plan Agent shall be empowered and directed to (i) without further approval of the Bankruptcy Court, use, sell at public or private sale, assign, transfer, abandon, or otherwise dispose of any of the Assets and liquidate and convert the same to Cash as expeditiously as reasonably possible; (ii) make Distributions and other payments that are required under this Plan; (iii) employ, retain or replace professionals, without prior Court approval, to represent the Plan Agent with respect to the Plan Agent's responsibilities hereunder; (iv) object to Claims and resolve Disputed Claims, and enforce and prosecute any Avoidance Actions on behalf of the Estate and compromise and settle the same; (v) assume or reject exeuctory contracts and leases; and (vi) exercise such powers which the Plan Agent in his discretion deems reasonably necessary or appropriate to effectuate this Plan.

        d.    <u>Bond</u>. The Plan Agent shall post a fiduciary bond in an amount no less than 125 percent of the total amount of Cash under the Plan Agent's control. The cost of such bond shall be paid out of the Assets. Any party in interest may request an order of the Court at any time prior to the Plan Agent's final Distribution that the face amount of the Plan Agent's bond shall be increased or decreased.

    4.5    <u>Distributions to be Made by the Plan Agent</u>.

        a.    <u>Compliance by the Plan Agent</u>. The Plan Agent shall make distributions in compliance with all of the terms and provisions of this Plan.

b. <u>Form of Payments</u>. Distributions to be made by the Plan Agent under this Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank, at the sole election of the Plan Agent.

c. <u>Delivery of Distributions</u>. Except as otherwise agreed to by the Plan Agent in writing, Distributions to be made to Holders of Allowed Claims pursuant to this Plan may be delivered by regular mail, postage prepaid, in an envelope addressed as directed in a request served on the Plan Agent but if no such request is made, to the address shown in the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated in a proof of claim duly filed with the Court, to such address. Nothwithstanding anything to the contrary contained herein, the Plan Agent shall not be required to make a quarterly Distribution to Holders of Allowed Unsecured Claims if the Available Cash is less than $10,000.

d. <u>Minimum Distributions</u>. If a distribution to any holder of an Allowed Unsecured Claim is less than the $25.00 Minimum Distribution, then the Plan Agent shall be obligated to make such a distribution only to the extent that such Holder of an Allowed Unsecured Claim requests such payment in writing within sixty (60) days of the Effective Date.

e. <u>Reserve Fund</u>. On the Effective Date (or as soon thereafter as is practicable), the Plan Agent shall establish the Reserve Fund. All Cash in the Reserve Fund shall at all times be held, managed and administered by the Plan Agent in trust for the benefit of those entities entitled thereto under the terms of this Plan.

f. <u>Unclaimed Property</u>. During the Claiming Period applicable to any particular Distribution made by the Plan Agent pursuant to this Plan, Unclaimed Property with respect to such Distribution shall be distributed to the Holders of Allowed Claims entitled thereto upon presentment to the Plan Agent of satisfactory proof of entitlement. On the first day after the expiration of the Claiming Period: (i) Holders of Allowed Claims previously entitled to such Unclaimed Property shall no longer be entitled thereto, (ii) such Claims shall be deemed

Page 16 of 25 – SECOND AMENDED PLAN OF LIQUIDATION (June 18, 2020)

disallowed for all purposes and (iii) the then remaining Cash constituting Unclaimed Property with respect to such Distribution shall be redesignated as and become Available Cash (but without impairing the right of the Plan Agent to use such redesignated funds to satisfy the costs of administering this Plan).

     g. <u>Time Bar to Cash Payments</u>.  Checks issued by the Plan Agent in respect of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof.  Requests for reissuance of any check shall be made to the Plan Agent by the Holder of the Allowed Claim to whom such check originally was issued, prior to the expiration of the Claiming Period.  After such date, (i) the Holder of any such Claim who has failed to make a timely request for reissuance of such a voided check shall not be entitled to any other or further distribution under this Plan on account of such voided check or such Claim and (ii) the Unclaimed Property held on account of such voided check or such Claim shall be redesignated as and become Available Cash (but without impairing the right of the Plan Agent to use such funds to satisfy the costs of administering this Plan).

    4.6 <u>Disputed, Contingent and Unliquidated Claims</u>.  Notwithstanding any other provision of the Plan, no Cash or other property shall be distributed hereunder on account of any Disputed Claim, or any Claim that is contingent or unliquidated, until such Claim becomes an Allowed Claim.  From and after the Effective Date, only the Plan Agent shall have the right (except as to applications or requests for allowances of compensation and reimbursement of expenses in favor of the Plan Agent or professionals) to make and file objections to Claims.  In determining the amount of any Distribution to Holders of Allowed Claims in Class 10, the appropriate Distributions required by the Plan shall be made as if all Disputed Claims were Allowed Claims in the Face Amounts claimed by the Holders thereof.  At such time as a Disputed Claim becomes an Allowed Claim, the Holder of such Allowed Claim shall receive the Distribution, if any, to which such Holder is then entitled under this Plan.

FG:11016154.1

4.7     Amendments to Claims.  No Claim may be amended by the Holder thereof at any time after the date that is 30 days after the Effective Date (other than to reduce the amount of the Claim), unless such period is extended by Court order on a motion that is filed with the Court and served on the Plan Agent within such 30-day period.  In addition to the limitations set forth in the preceding sentence, an amendment to a Claim that is made by the Holder thereof after the Effective Date shall be deemed disallowed, time barred and not enforceable against the Estate or any property of the Estate unless proof of such amended Claim is filed with the Court and served on the Plan Agent.

4.8     Disputed Distributions.  In the event of any dispute with the Holder of a Claim as to the right of any entity to receive or retain any Distribution to be made under this Plan, the Plan Agent may, in lieu of making such Distribution, withhold such Distribution until the disposition thereof is determined by the Court.

4.9     Setoff, Recoupment and Defenses.  Nothing contained in the Plan shall constitute a waiver or release by the Plan Agent or Debtor of any rights of setoff or recoupment, or of any defense the Debtor or the Estate may have with respect to any Claim (including, without limitation, rights under Section 502(d) of the Bankruptcy Code).

4.10    United States Trustee Fees.  Notwithstanding the entry of the Confirmation Order, the Plan Agent shall (i) be responsible for timely payments of all fees incurred pursuant to 28 USC § 1930(a)(6) and (ii) provide to the United States Trustee, on or before the 30th day following the close of each calendar quarter, a financial report of all disbursements made on behalf of the Estate (whether or not pursuant to this Plan) during the preceding calendar quarter, or portion thereof, that this Chapter 11 case remains open.

4.11    Post-Confirmation Date Fees and Expenses of Professionals and Plan Agent.  After the Confirmation Date, the Plan Agent shall, without the necessity for any Court approval, pay the reasonable expenses of the Plan Agent and the reasonable fees and expenses of the professional persons employed by the Plan Agent in connection with the implementation and

consummation of this Plan or with other matters as to which such professionals may be reasonably engaged. All such fees and expenses shall be paid by the Plan Agent out of Cash on hand in the Reserve Fund after fourteen (14) days after submitting to the Service List a detailed invoice therefor. If a party in interest disputes the reasonableness of any such invoice, the party shall file the objection with the Court and serve the Plan Agent with the objection so that notice is received within fourteen (14) days after service of the invoice. The objection shall specify the grounds for the dispute and identify which portion is disputed. The Plan Agent shall timely pay the undisputed portion of such invoice but the disputed portion shall not be paid without an order of the Court. Any such dispute shall be submitted to the Court for a determination of the reasonableness of such invoice.

4.12    <u>Annual Reports and Notices</u>. Within 120 days after the end of each calendar year (unless the Grantor Trust was terminated during that calendar year, and in such case, within 120 days after such termination), the Plan Agent shall submit to the Court (if the Case is still open), the Debtor, and the Service List a written report disclosing transactions for the prior calendar year, including: (i) financial statements of the Grantor Trust at the end of such calendar year and the receipts and disbursements of the Plan Agent for the year, and (ii) a description of any action taken by the Plan Agent in the performance of his duties which materially affects the Grantor Trust. In addition, the Plan Agent shall prepare and mail to the Debtor a separate statement setting forth the Debtor's items of income, gain, loss, deduction, or credit for tax-reporting purposes and shall assist the Debtor with preparation of the Debtor's tax returns showing the Debtor's gain or loss from the sale of the Assets.

4.13    <u>Reimbursement of Capital Gain Tax Paid By the Debtor</u>. After the Confirmation Date, the Plan Agent shall, without the necessity for any Court approval, reimburse the Debtor for income tax due as a result of gains resulting from the sale of the Assets. Upon the sale of an Asset, the Plan Agent shall estimate and retain in the Reserve Fund the amount of the Debtor's expected year-to-date tax liability for gains and losses. Payment to the Debtor shall be issued

FG:11016154.1

upon request by the Debtor and, within 30 days of such issuance, the Debtor shall present proof to the Plan Agent that such tax payment was made by the Debtor.

4.14    Closing of the Chapter 11 Case.  As soon as practicable after the Plan Agent's final Distribution, or at such earlier time as the Plan Agent deems appropriate, the Plan Agent shall seek authority from the Court to close the Chapter 11 case in accordance with the Bankruptcy Code and the Bankruptcy Rules; provided, however, that entry of a final decree closing the Chapter 11 case shall, whether or not specified therein, be without prejudice to the right of any party in interest to reopen the Chapter 11 case for any matter over which the Court has retained jurisdiction under this Plan.

# V.

# TREATMENT OF EXECUTORY CONTRACTS
# AND UNEXPIRED LEASES

5.1    Assumption and Rejection of Executory Contracts and Unexpired Leases.  Except as otherwise provided herein or in the Confirmation Order, effective as of the Effective Date, the Plan Agent shall exercise his reasonable discretion to assume or reject any executory contracts and unexpired leases of the Debtor (excluding only those that are assumed pursuant to Court order entered prior to the Confirmation Date) within sixty (60) days of the Effective Date (the "Assumption Deadline").  The Plan Agent will have the authority and power to reject or assume any executory contracts and/or unexpired leases of the Debtor (excluding only those that are assumed pursuant to Court order entered prior to the Confirmation Date).  The Plan Agent may exercise its authority to assume or reject by written notice to the affected party(ies), Columbia State Bank, the US Trustee and the Debtor.  Assumption shall be accomplished in accordance with the terms of the Bankruptcy Code relating to curing of defaults.  Unless assumed prior to the Assumption Deadline, all executory contracts and leases of the Debtor shall be deemed rejected as of the Assumption Deadline. With respect to any assumption or rejection by the Plan Agent of an executory contract or lease, the Confirmation Order shall constitute a Court order

FG:11016154.1

approving such actions pursuant to the provisions of Sections 365 and 1123(b)(2) of the Bankruptcy Code.

To the extent the Plan Agent obtains rights and any property interests under the Farm Lease Agreement with Option to Purchase, effective January 1, 2014, between Orville Thomas Gray and Lynda Lee Gray, Co-Trustees of the Orville T. Gray and Lynda Lee Gray Living Trust dated September 18, 1995, as Lessors, and Rick T. Gray, as Lessee (the "Lease"), subject to further determination of the Court, if necessary, to resolve the objections raised by Gray Trust as to the assignment of such rights and property interests to the Debtor, as to the rejection and termination of the Lease under 11 USC § 365(d)(4) based on the failure to timely assume the Lease and as to the cure of defaults as to said Lease if it was not rejected and will be assumed by the Plan Agent, those rights and property interests shall become an Asset of the Estate under the Plan. Nothing herein shall limit or reduce any parties' rights, interests, claims, or defenses relating to the Lease.

5.2  <u>Claims for Rejection Damages</u>.  Claims for damages arising by reason of the rejection of executory contracts and unexpired leases shall be classified and treated as Class 10 Claims; <u>provided</u>, <u>however</u>, that any such Claim shall be deemed disallowed, barred forever and not enforceable against the Debtor or any property of the Estate unless a proof of claim therefor is filed with the Court and served on the Plan Agent within 30 days after the earlier of the date of the notice of rejection issued by the Plan Agent or the Assumption Deadline Date (except that if a different date for filing proof of any particular such Claim has been fixed by a Court order entered prior to or in the Confirmation Date, then by the date so fixed in such Court order).

**VI.**

**EFFECT OF PLAN CONFIRMATION**

6.1  <u>Injunction</u>.  Except as otherwise specifically provided in this Plan or in the Confirmation Order, confirmation of the Plan shall act as a permanent injunction applicable to all entities against (i) the commencement or continuation, including the issuance or employment of

Page 21 of 25 – SECOND AMENDED PLAN OF LIQUIDATION (June 18, 2020)

process, of a judicial, administrative or other action or proceeding against the Debtor, the Estate or the Plan Agent or the Assets that was or could have been commenced before the entry of the Confirmation Order, in each case on account of any Claim (other than actions or proceedings brought to enforce any rights or obligations under this Plan or appeals, if any, from the Confirmation Order or with respect to such Claims), (ii) the enforcement against the Debtor, the Estate, the Plan Agent or the Assets of any judgment, award, decree or order obtained before the Petition Date, in each case on account of any Claim, (iii) any act to obtain possession of, or to exercise control over, or to create, perfect or enforce a lien upon, any of the Assets on account of any Claim, (iv) the assertion of any setoff, right of subrogation, reimbursement or recoupment of any kind, directly or indirectly, against any obligation due the Debtor or the Estate on account of any Claim, and (v) the exercise of any provision contained in any contract, lease or instrument which is or was entered into or issued by the Debtor prior to the Petition Date and which is not cancelled or rejected under the Plan that allows a Creditor to declare, or that declares, a default based upon the filing of the petition in this Chapter 11 case, the insolvency or financial condition of the Debtor or the subjective insecurity of such Creditor.

6.2     <u>Binding Effect</u>.  Except as otherwise specifically provided in this Plan or in the Confirmation Order, on and after the Confirmation Date, the provisions of this Plan shall bind each Holder of a Claim or Interest, and each of their respective successors, heirs, legal representatives and assigns, whether or not the Claim or Interest of such Holder is impaired under this Plan and whether or not such Holder has filed a proof of claim with the Court or has accepted this Plan.

## VII.

## RETENTION OF JURISDICTION

7.1     <u>Jurisdiction of Bankruptcy Court</u>.  Notwithstanding the entry of the Confirmation Order, the Court shall retain jurisdiction of all matters arising under, arising out of or related to

FG:11016154.1

the Chapter 11 case and this Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

a.      To classify the Claim of any Creditor, to reexamine Claims that have been allowed for Plan voting purposes and to hear and determine objections to Claims;

b.      To hear and determine any and all adversary proceedings, applications and contested matters, whether pending on or commenced after the Confirmation Date;

c.      To determine the allowance of Claims resulting from the rejection of executory contracts and unexpired leases;

d.      To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

e.      To issue such orders in aid of execution of this Plan to the extent authorized by Section 1142 of the Bankruptcy Code;

f.      To consider any modifications of this Plan and to cure any defect or omission, or reconcile any inconsistency, in this Plan or in any Court order relating to this Plan (including, without limitation, the Confirmation Order);

g.      To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of this Plan;

h.      To recover property of the Estate, wherever located;

i.      To hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations under Section 505(b) of the Bankruptcy Code filed, or to be filed, with respect to tax returns for any and all taxable periods ending after the Petition Date through, and including, the Plan Agent's final Distribution);

j.      To hear any other matter consistent with the provisions of the Bankruptcy Code; and

k.      To enter a final decree closing the Chapter 11 case.

7.2     Other Courts of Competent Jurisdiction.  If the Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter referred to the Court, such abstention, refusal or failure of exercise shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## VIII.

## MISCELLANEOUS PROVISIONS

8.1     Election Pursuant to Section 1129(b) of the Bankruptcy Code.  The Proponents hereby request confirmation of the Plan pursuant to Section 1129(b) of the Bankruptcy Code if the requirements of all provisions of Section 1129(a) of the Bankruptcy Code, except paragraph (a)(8) thereof, are met with regard to the Plan.  In determining whether the requirements of Section 1129(a)(8) of the Bankruptcy Code have been met, any Class or subclass of a Class that does not contain as an element thereof an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018 as of the date fixed by the Court for filing acceptances or rejections of this Plan shall be deemed deleted from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class or subclass.

8.2     Computation of Time Periods.  In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided herein, the provisions of Bankruptcy Rule 9006(a) shall apply.

8.3     Governing Law.  Except to the extent that the federal law is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Washington without giving effect to the principles of conflicts of laws thereof.

8.4     Amendment.     The Proponents reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan at any time prior to

the entry of the Confirmation Order. After the entry of the Confirmation Order, the Proponents may, upon Court order, amend or modify this Plan, in accordance with Section 1127(b) of the Bankruptcy Code, or cure any defect or omission, or reconcile any inconsistency, in this Plan or in any Court order relating to the Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

8.5    <u>Plan Controls</u>. To the extent the Plan is inconsistent with the disclosure statement relating to this Plan, the provisions of the Plan shall control.

DATED this 10th day of March, 2020 (as amended or supplemented by authorization of the Court).

PLAN PROPONENT:

Columbia State Bank

By: _/s/  David Grice_
       David Grice, Vice President

*[Additional Signatures on the Following Page]*

Page 25 of 25 – SECOND AMENDED PLAN OF LIQUIDATION (June 18, 2020)

The below signatures of the parties' attorneys are intended solely to comply with FRBP 9011(a) to the extent it applies to plans of liquidation.

FOSTER GARVEY


By:  _/s/ Tara J. Schleicher_____
    **Tara J. Schleicher, WSBA No. 26884**
    tara.schleicher@foster.com
    **Jason M. Ayres, WSBA No. 39141**
    jason.ayres@foster.com
    121 SW Morrison Street, 11th Fl.
    Portland, Oregon 97204-3136

    *Attorneys for Plan Proponent,*
    *Columbia State Bank*

# EXHIBIT 1
## DEFINITIONS:

Administrative Expense Claim means a Claim that is entitled to priority under Sections 503(b) and 507(a)(1) of the Bankruptcy Code, including (a) any actual and necessary costs and expenses of preserving the Estate and the Grantor Trust; (b) any actual and necessary costs and expenses of operating the estate's business and managing the Grantor Trust after the Petition Date; (c) any allowances of compensation or reimbursement of expenses under Sections 330, 331 or 503 of the Bankruptcy Code to the extent of the Allowed Amount thereof, whether fixed before or after the Effective Date; and (d) any fees or charges assessed against the Estate under 28 USC § 1930, including post-Confirmation Date and post-Effective Date fees and charges.

Allowed Amount means with reference to any Claim (including any Administrative Expense Claim): (a) if the Holder thereof has not filed a proof of claim with the Court within the applicable period of limitation fixed pursuant to Bankruptcy Rule 3003(c)(3), the amount of the Claim that is listed in the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, as not disputed, contingent or unliquidated; or (b) if the Holder thereof has filed a proof of claim with the Court within the applicable period of limitation fixed pursuant to Bankruptcy Rule 3003(c)(3): (i) the amount stated in such proof of claim, if no objection to such proof of claim has been interposed within any applicable period of limitation fixed by this Plan or a Final Order or (ii) such amount as shall be fixed by Final Order if an objection has been timely interposed; or (c) with respect to an Administrative Expense Claim that requires Court approval as a precondition to payment, such amount as shall be fixed by Final Order; or (d) any Claim arising from the recovery of property under Sections 550 or 553 of the Bankruptcy Code, or from the denial or avoidance of an interest in property of the Estate, if, within 30 days after the judgment for the recovery of money or property, or after the judgment that denies or avoids any such interest, becomes a Final Order, the holder thereof has filed a proof of claim with the Court respecting such Claim and has fully satisfied such judgment; or (e) any Claim allowed under or pursuant to the terms of this Plan; provided, however, that Allowed Amount shall not include interest, penalties or other charges accruing on a Claim after the Petition Date except as specifically provided for in this Plan or in the Confirmation Order.

Allowed Claim means a Claim for which an Allowed Amount has been determined.

Allowed Secured Claim means an Allowed Claim (other than an Administrative Expense Claim) that is secured by a lien, security interest or other charge against or interest in property of the Estate or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (as set forth in the Plan, or if no value is specified, as determined in accordance with Section 506 of the Bankruptcy Code or, if applicable, Section 1111(b) of the Bankruptcy Code) of the interest of the holder of such Claim in the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

Allowed Unsecured Claim means an Allowed Claim that is not an Administrative Expense Claim, Allowed Priority Tax Claim, or an Allowed Secured Claim.

Exhibit 1
Page 1 of 5

Assets at any particular time means, collectively, all right, title and interest of the Estate in and to the property described in Section 541 of the Bankruptcy Code, and includes Avoidance Actions.

Available Cash at any particular time means all Cash held by or for the estate less the aggregate of the Cash then designated for the Reserve Fund.

Avoidance Action means any claim or cause of action of the Estate that arises under Sections 542, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code.

Ballot means a ballot that is used by a holder of a Claim to accept or reject this Plan.

Bankruptcy Code means Title 11 of the United States Code, and any amendments thereto applicable to this Chapter 11 case, as in effect on the Confirmation Date.

Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure.

Cash means cash, cash equivalents and other readily marketable direct obligations of the United States of America.

Claim means a claim or right to payment against the Debtor or the Estate or against property of the Estate.

Claiming Period means with respect to any distribution to be made by the Plan Agent pursuant to this Plan, a period of 90 days following such distribution.

Class means a category of Claims or Equity Interests which are substantially similar to each other, as classified pursuant to the Plan.

Co-Borrowers means Gray and GF&C, who are co-borrowers with the Debtor on four (4) loans with Columbia State Bank. The four (4) loans are: (1) Klickitat Loan; (2) 2015 Operating Line; (3) 2016 Operating Line; and (4) Term Loan.

Collateral means, with respect to any Allowed Secured Claim, the property or interest in property of the Estate that secures such Claim.

Confirmation Date means the date of entry of the Confirmation Order.

Confirmation Order means the Court order confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

Court means the United States District Court for the Eastern District of Washington having jurisdiction over this chapter 11 case and, to the extent of any reference made pursuant to 28 USC § 157, the United States Bankruptcy Court for the Eastern District of Washington, and any court having competent jurisdiction to hear appeals therefrom.

Creditor means a Holder of a Claim.

Exhibit 1
Page 2 of 5

Crop Proceeds means those proceeds for the sale of Debtor's or its affiliates crops totaling approximately $519,016.53 to which Proponent and H&H each claim a security interest and any crops or proceeds in of the Debtor in which Proponent and H&H were granted replacement liens.

Debtor means Gray Land & Livestock, LLC.

Disallowed Amount means, with respect to a particular Disputed Claim, that amount which is equal to the difference, if any, between the Face Amount of such Claim and the Allowed Amount thereof.

Disputed Amount means, with respect to a particular Disputed Claim, that amount which is equal to the difference, if any, between the Face Amount of such Claim and the amount of the Claim which the Plan Agent concedes.

Disputed Claim means any Claim for which an Allowed Amount has not yet been determined and with respect to which the Debtor or the Plan Agent has an objection (whether or not a written objection has been filed with the Court).

Distributions means payments of Available Cash under this Plan to the Holders of Allowed Claims in Class 11.

Effective Date means the first business day after the Confirmation Date.

Estate means the estate of the Debtor created by Section 541 of the Bankruptcy Code.

Face Amount means with reference to any Claim: (a) if the holder thereof has not filed a proof of claim with the Court within the applicable period of limitation fixed pursuant to Bankruptcy Rule 3003(c)(3), the amount of the Claim that is listed in the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, as not disputed, contingent or unliquidated; or (b) if the holder thereof has filed a proof of claim with the Court within the applicable period of limitation fixed pursuant to Bankruptcy Rule 3003(c)(3), the amount stated in such proof of claim.

Final Order means a judgment, order or other decree issued and entered by the Court so long as no stay thereof is in effect, or a stipulation or other agreement entered into which has the same effect with like finality.

GF&C means Gray Farms & Cattle Co. LLC.

Grain Trailers means two 40-20 grain trailers and two 40-22 grain trailers that are the subject of a lease or purchase agreement between Debtor and CoBank.

Grantor Trust means the grantor trust created by the Grantor Trust Agreement attached hereto and incorporated into the Plan as **Exhibit 3**.

Gray means Rick T. Gray.

Holder at any particular time means an entity that holds an Interest or Claim.

Initial Cash Reserve means Plan Agent's Cash Reserve which consists of the amount of proceeds from the Debtor's bank account(s) that the Plan Agent deems initially necessary for costs and necessary expenses of the Trust Assts for six months from the Effective Date.

Interests means any and all interests of the Debtor.

IRS means the Internal Revenue Service.

Minimum Distribution means an anticipated Distribution to the Holder of a Class 11 Claim of twenty-five dollars ($25.00) or less.

Net Sale Proceeds means the proceeds of a given sale of one or more Properties after closing costs, realtor commissions (if any), taxes, and payments of superior lien claims (if any).

Petition Date means February 28, 2019.

Plan means this Chapter 11 plan and all exhibits and schedules hereto, which are incorporated by reference, together with any amendments or modifications which may be filed from time to time.

Plan Agent means the plan agent Critical Point Advisors, LLC, or any successor selected by the Proponents with consent of the United States Trustee, who is appointed by the Court to serve as the Estate's and Grantor Trust's agent under this Plan to administer the Assets, to prosecute, defend or resolve any Avoidance Actions and/or Disputed Claims, to effect Distributions that are required to be made under this Plan and to take such other actions as may be required to comply with the provisions of this Plan. The Plan Agent shall have, in addition to the rights and powers conferred or retained under this Plan, all rights and powers of a trustee appointed pursuant to section 1104 of the Bankruptcy Code.

Priority Tax Claim means an Allowed Unsecured Claim entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

Professional Fees means all Administrative Expense Claims of the kind described in paragraph (c) in the definition of Administrative Expense Claim for professional services rendered or expenses incurred prior to the Effective Date.

Pro Rata at any particular time means, with respect to any Claim in a Class, the same proportion that the Allowed Amount of such Claim bears to the aggregate of the Allowed Amount of all Claims in that Class.

Reserve Fund at any particular time means the aggregate of: (a) Unclaimed Property; and (b) the amount necessary in the Plan Agent's discretion to effect the intent of the Plan and Grantor Trust, including payment of Administrative Expense Claims other than for Professional Fees, post-confirmation liquidation expenses, and post-confirmation fees and expenses of the Plan Agent.

Exhibit 1
Page 4 of 5

Service List at any particular time means the Debtor, the Plan Agent, the United States Trustee, Columbia State Bank and any Creditors who request in writing to the Plan Agent after the Confirmation Date that all notices under the Plan be given to them. Such persons shall remain on the Service List until the earlier of: (a) payment in full of such person's Allowed Claim; or (b) receipt by the Plan Agent of such person's written request to be removed from the Service List.

Unclaimed Property at any particular time means the Cash held by or for the Plan Agent, that is unclaimed by a Creditor following a distribution made by the Plan Agent pursuant to the Plan (including property attributable to checks that have been returned as undeliverable without a proper forwarding address, checks that have not been cashed and checks that were not mailed or delivered because of the absence of a proper address to which to mail or deliver such property).

Unsecured Creditor means a Holder of a Claim that is not an Administrative Expense Claim or an Allowed Secured Claim.

Exhibit 1
Page 5 of 5

## Exhibit 2

| Parcel | Legal | Acres | Owner |
|---|---|---|---|
| 05220600000100 | LOTS 2,3; 6-5-22 | 79.11 | GRAY LAND & LIVESTOCK LLC |
| 06212800000300 | S2S2; 28-6-21 | 160.00 | GRAY LAND & LIVESTOCK LLC |
| 06213300000100 | NE LESS R/W; 33-6-21 | 160.00 | GRAY LAND & LIVESTOCK LLC |
| 06221000000300 | W2W2; SESW; SWSE; 10-6-22 | 240.00 | GRAY LAND & LIVESTOCK LLC |
| 06222000000300 | S2NW4;  SW4;  20-6-22 | 240.00 | GRAY LAND & LIVESTOCK LLC |
| 06221900000200 | S2N2 FRACT'L; SE; 19-6-22 | 318.63 | GRAY LAND & LIVESTOCK LLC |
| 06212500000100 | E2; 25-6-21 | 320.00 | GRAY LAND & LIVESTOCK LLC |
| 06222000000100 | E2   20-6-22 | 320.00 | GRAY LAND & LIVESTOCK LLC |
| 06223200000400 | E2NW4; SWNW4;  S2   32-6-22 | 440.00 | GRAY LAND & LIVESTOCK LLC |
| 06221500000100 | W2; W2E2; 15-6-22 | 480.00 | GRAY LAND & LIVESTOCK LLC |
| 06222200000100 | W2 AND W2E2  22-6-22 | 480.00 | GRAY LAND & LIVESTOCK LLC |
| 06223100000100 | ALL LESS SWSW4    31-6-22 | 598.12 | GRAY LAND & LIVESTOCK LLC |
| 06223000000000 | ALL FRACTIONAL  30-6-22 | 636.64 | GRAY LAND & LIVESTOCK LLC |
| 06220900000000 | ALL; 9-6-22 | 640.00 | GRAY LAND & LIVESTOCK LLC |
| 06222100000000 | ALL 21-6-22 | 640.00 | GRAY LAND & LIVESTOCK LLC |
| 06213300000400 | TL 1 IN W2; 33-6-21 | 65.00 | GRAY LAND & LIVESTOCK,LLC |
| 06213200000100 | E2 LESS SWSE; 32-6-21 | 280.00 | GRAY LAND & LIVESTOCK,LLC |
| 06212900000400 | S2SE; 29-6-21 | 80.00 | GRAY LAND AND LIVESTOCK, LLC |
| 05210400000200 | W2NE FRAC'L; E2NW FRAC'L; 4-5-21 | 161.21 | GRAY LAND AND LIVESTOCK, LLC |

6.338 Acres

Yakima County — 2291023402

Yakima County — 2209102340

# GRANTOR TRUST AGREEMENT

This Grantor Trust Agreement (the "**Agreement**") is entered into as of June __, 2020, by and between Gray Land & Livestock, LLC, the debtor (the "**Debtor**") in that certain Chapter 11 case pending in the United States Bankruptcy Court for the Eastern District of Washington (the "**Bankruptcy Court**") as Case No. 08-33339-rld11 (the "**Chapter 11 Case**") and Critical Point Advisors, LLC (with any successors, the "**Trustee**").

On February 28, 2019 (the "**Petition Date**"), the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") in the Bankruptcy Court and thereby commenced the Chapter 11 Case. On June 18, 2020, the Court entered an order (the "**Confirmation Order**") confirming the Second Amended Plan of Liquidation (dated June 17, 2020). The Second Amended Plan of Liquidation as confirmed is referred to herein as the "**Plan**".

The Plan provides, among other things, that on the Effective Date the assets of the Debtor's bankruptcy estate revert back to the Debtor. By way of this Agreement, and pursuant to the Confirmation Order the Debtor hereby creates a Grantor Trust (the "**Grantor Trust**") to be administered by the Trustee. The Debtor transfers and assigns his interest in the assets identified in this Agreement and the Plan to the Grantor Trust.

Pursuant to this Agreement and the Plan, the Grantor Trustee shall liquidate the Trust Assets and distribute the net proceeds from such liquidation to Holders of the Allowed Administrative Expense Claims, the Allowed Secured Claims and the Class 10 Claims and other creditors, all as described in greater detail in this Agreement and the Plan. After payment of the Allowed Claims, any remaining assets shall revert back to the Debtor.

NOW, THEREFORE, in consideration of the premises and agreements contained herein, the parties hereto agree as follows:

## SECTION 1

## DEFINITIONS

Unless otherwise defined herein, all capitalized terms used in this Agreement shall have the meanings assigned to them in the Plan or in the Bankruptcy Code (as in effect on the date hereof). If there is any discrepancy between a definition herein and a definition in the Plan, the definition in the Plan shall govern.

1.1 "**Beneficiaries**" means the holders of Allowed Claims to be paid on or after the Effective Date who will receive payment from the Grantor Trust.

1.2 "**Estate Representative**" means the Trustee acting in the capacity of the Debtor's bankruptcy estate representative as provided in Section 8 of this Agreement.

1.3 "**Rights of Action**" means any and all claims, demands, rights, actions, causes of suits, and suits of the debtor or the estate, of any kind or character whatsoever, known or unknown,

GRANTOR TRUST AGREEMENT

suspected or unsuspected, whether arising before, on or after the petition date, in contract or in tort, at law or in equity or under any theory of law, including, but not limited to (1) derivative claims, (2) rights of setoff, counterclaim, or recruitment, and claims on contract and for breaches of duties imposed by law, (3) the right to object to claims of interest, (4) claims pursuant to Section 362 of the Bankruptcy Code, (5) such claims and defenses as fraud, mistake, duress, and usury, (6) Avoidance Actions and all other claims under Chapter 5 of the Bankruptcy Code or the Revised Code of Washington ("**RCW**") Chapter 19.40 (the Uniform Voidable Transfers Act), (7) the right to assert claims of alter ego, piercing the corporation veil or arguments relating to the commingling of assets by the Debtor with insiders, affiliates and purported third parties or entities, and (8) the claims listed in the Debtor's bankruptcy schedules as amended.

  1.4 "**Trust Assets**" means the Assets transferred by the Debtor to the Trustee after such Assets revert back to the Debtor from the bankruptcy estate pursuant to the Plan and this Agreement, together with any income, proceeds of the Trust Assets, and any other property acquired by the Grantor Trust.

SECTION 2

THE GRANTOR TRUST

  2.1 <u>Creation and Name</u>. There is hereby created the Grantor Trust which shall be known as the "**Gray Land & Livestock Trust**."

  2.2 <u>Declaration of Trust</u>. In order to declare the terms and conditions hereof, and in consideration of the confirmation of the Plan, the Court has entered the Confirmation Order which provides for the creation of the Grantor Trust.

  2.3 <u>Purpose of Grantor Trust</u>. The Grantor Trust is organized for the primary purposes of (a) liquidating the assets transferred to it, in accordance with Treasury Regulation Section 301.7701-4(d); (b) distributing the proceeds thereof with no objective to engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Grantor Trust; and (c) effecting the distributions contemplated by this Agreement and the Plan.

  2.4 <u>Transfer of Property of the Estate</u>. On and as of the Effective Date, but (a) after payments to be made on the Effective Date pursuant to the Plan have been made, and (b) after the Assets of the bankruptcy estate have been returned to the Debtor pursuant to the Plan, the Debtor hereby irrevocably transfers from the Debtor to the Trustee all right, title and interest of the Debtor in and to the Trust Assets, free and clear of all liens and encumbrances except as provided in the Plan or applicable Order of the Court for the benefit of the Beneficiaries. Upon the transfer of the Trust Assets to the Grantor Trust, the Trustee shall succeed to all of the Debtor's right, title and interest in the Trust Assets. The Debtor shall have a remainder interest in the Grantor Trust and any remaining Trust Assets shall be returned to the Debtor after the Beneficiaries and the expenses of the Grantor Trust have been paid in full. The Grantor Trust shall be deemed a successor of the Debtor for the purposes of Section 1145 of the Bankruptcy Code and with regard to all the Trust's assets.

2.5     Trust Beneficiaries.  The beneficiaries of the Grantor Trust shall be the Beneficiaries.

2.6     Grantor Trust Beneficial Interests.  The beneficial interests in the Grantor Trust shall be uncertificated.

2.7     Intention to Establish a Grantor Trust.  This Agreement is intended to create a grantor trust with the Debtor as the grantor, and the trust created hereunder shall be governed and construed in all respects as a grantor trust.

2.8     Investment Company Act.  The Grantor Trust is organized as a liquidating entity in the process of liquidation, and therefore should not be considered, and the Grantor Trust does not and will not hold itself out as, an "investment company" or an entity "controlled" by an "investment company" as such terms are defined in the Investment Company Act.

2.9     Taxation.  The trust is created for no purpose other than to pay the debts of the Debtor.  For United States federal income tax purposes, it is intended that the Grantor Trust be classified as a liquidating trust under Treasury Regulation § 301.7701-4 and shall be treated as a grantor trust pursuant to § 677(a) of the Internal Revenue Code and Treasury Regulation § 1.677(a)-1(d).  The Debtor shall be liable for post-confirmation income taxes.  Gain and loss from the sale of Trust Assets shall pass through to the Debtor.  The Debtor shall be reimbursed by the Trustee pursuant to the procedure set forth in Section 7.2(b)(8) of this Agreement for income tax resulting from any such gain and loss.

## SECTION 3

## RIGHTS OF BENEFICIARIES

3.1     Rights of Beneficiaries.  Each Beneficiary will be entitled to participate in the rights due to a Beneficiary hereunder.  Each Beneficiary shall take and hold its uncertificated beneficial interest subject to all of the terms and provisions of this Agreement and the Plan.  The interest of a Beneficiary of the Grantor Trust is in all respects personal property, and upon the death, insolvency or incapacity of an individual Beneficiary, such Beneficiary's interest shall pass to the legal representative of such Beneficiary and such death, insolvency or incapacity shall not terminate or affect the validity of this Agreement.  A Beneficiary shall have no title to, right to, possession of, management of, or control of, the Trust Assets except as expressly provided in this Agreement or the Plan.  Title to all the Trust Assets shall be vested in the Trustee, and the sole interest of the Beneficiaries shall be the rights and benefits given to such persons under this Agreement.

3.2     Limit on Transfer of Interests of Beneficiaries.

(a)     The interest of a Beneficiary in the Grantor Trust shall be transferable, upon reasonable notice to, and subject to any reasonable limitations that may be placed thereon by, the Trustee.  The Trustee shall cause to be kept a register (the "**Register**") in which the Trustee shall at all times maintain the names, addresses, and interests of the Beneficiaries; provided, however,

that the Trustee need not recognize as valid any transfer (nor make any distribution to any transferee) and will give notice to such Beneficiary that no transfer has been recognized in the event the Trustee reasonably believes that such transfer (or the distribution to such transferee) may constitute a violation of applicable laws or might cause the Grantor Trust to be required to register beneficial interests under the Securities Exchange Act of 1934, as amended.

(b)     Prior to any transfer, assignment, hypothecation, pledge, exchange or conveyance of a beneficial interest in the Grantor Trust (each, a "**Transfer**"), the transferring Beneficiary shall submit to the Trustee a duly endorsed assignment of the beneficial interest to the transferee (in a form reasonably acceptable to the Trustee) together with the service charge, if any, to be specified by the Trustee pursuant to this subsection (b). No such Transfer shall be effective until, and the transferee shall succeed to the rights of a Beneficiary only upon, final acceptance and registration of the Transfer by the Trustee in the Register. Prior to the registration of any Transfer by a Beneficiary, the Trustee shall treat the Person in whose name the beneficial interest is registered as the owner for all purposes, and the Trustee shall not be affected by notice to the contrary. When a request to register the Transfer of a beneficial interest is presented to the Trustee, the Trustee shall register the Transfer as requested if the requirements for Transfers hereunder are met. The Trustee shall charge a service charge in an amount sufficient to cover the expenses of the Trustee and his agents and any tax or governmental charge that may be imposed on any Transfer of a beneficial interest. Failure of any Beneficiary to comply with these provisions shall void any Transfer of the related beneficial interest and the proposed transferee shall have no rights under this Agreement. Upon the Transfer of a transferring Beneficiary's entire beneficial interest in the Trust as evidenced by the Register,     such transferring Beneficiary shall have no further right, title or interest in the Trust Assets or the Grantor Trust.

3.3     No Legal Title in Beneficiaries. No Beneficiary shall have legal title to any part of the Trust Assets. No transfer by operation of law or otherwise, of the right, title and interest of any Beneficiary in and to the Trust Assets or the Grantor Trust shall operate to terminate this Grantor Trust or entitle any successor or transferee of such Beneficiary to an accounting or to the transfer to it of legal title to any part of the Trust Assets.

3.4     Service List. Each Beneficiary and the Debtor has the right to receive all reports prepared by the Trustee, all pleadings and other notices regarding the Grantor Trust. To receive such information the Beneficiary shall prepare a written request, stating in the request the name and number of the chapter 11 case (*In re Gray Land & Livestock, LLC*, Case No. 19-00467-FPC11) and mail a copy to the Trustee at the address set forth in Section 11 of this Agreement or to such address as the Trustee has otherwise designated by service to all parties, including all Beneficiaries. The persons and entities having made such a request for notice, together with the Debtor, the Plan Proponent, the Trustee, and the US Trustee, are collectively referred to herein as the "**Service List**." The right to receive notices to be sent to the Service List shall terminate when a person on the Service List ceases to be a Beneficiary or requests to be excluded.

# SECTION 4

## THE TRUSTEE

4.1     Trustee's Acceptance.  The Trustee accepts his appointment as trustee of the Grantor Trust and agrees to serve in such capacity, subject to the terms and conditions set forth in this Agreement, effective on the Effective Date.  In connection with and in furtherance of the purposes of the Grantor Trust, the Trustee hereby expressly accepts the transfer of the Trust Assets in accordance with the provisions of the Plan, this Agreement, and the Confirmation Order and will make all payments required pursuant to the Plan, this Agreement, and the Confirmation Order.

4.2     Claims Administration Responsibility. The Trustee, as Estate Representative,   shall be responsible for administering, objecting to, and resolving any and all remaining Claims  including disputed Secured Claims, Administrative Claims, Priority Claims and Class 11 Claims,  and shall be entitled to assert any and all defenses and setoff and recoupment rights, provided,  however, that the Trustee shall be bound by the Plan, and all prior resolutions of Claims.

4.3     Vesting of Trust Assets.  On and as of the Effective Date, and after the Assets of the bankruptcy estate have been returned to the Debtor  pursuant to the Plan, all Trust Assets shall be transferred from the Debtor and shall vest in the  Grantor Trust, and the Trustee shall administer the Trust Assets and make distributions as  provided in the Plan and this Agreement.

4.4     Trustee's Bond.  At all times the Trustee holds Trust Assets consisting of cash or cash equivalents, the Trustee shall maintain a fidelity bond covering acts of him and, if the  Trustee has any trust employees, also covering acts of such employees, in a form and with a  surety or sureties reasonably acceptable to the U.S. Trustee in an amount no less than 125% of  such cash and cash equivalents.  Secured creditor and Plan Proponent, Columbia State Bank, by and through its attorneys  of record, or a replacement monitor by court order, shall serve as the monitor of the fiduciary bond.  Not less than thirty days after the expiration of each calendar quarter, the Trustee shall  deliver to the bond monitor a certificate stating the maximum amount of cash and cash equivalents held by the Grantor Trust during the prior calendar quarter, the maximum amount of cash and cash equivalents the Trustee estimates will be held by the Grantor Trust during the  current calendar quarter and the next calendar quarter, and a recommendation as to the proper  amount of the bond.

# SECTION 5

## LIQUIDATION AND DISTRIBUTION OF TRUST ASSETS

5.1     Liquidation of Trust Assets.   The Trustee shall take such steps as it deems necessary or appropriate to reduce the Trust Assets to cash in order to make the distributions required under the Plan.  The Trustee's actions with respect to the disposition of the Trust Assets shall be reasonably expeditious and orderly; provided, however, that such actions shall be taken

in a manner so as to reasonably maximize the value of the Trust Assets. When liquidating Grantor Trust Assets, the Trustee shall take into account the fair market value of the Trust Assets based on current market conditions while also recognizing its duty to all constituents of this Grantor Trust.

5.2　　Establishment of Reserve. The Trustee shall establish a Reserve Fund in an amount equal to the aggregate of the formula amount set forth in the Plan, *i.e.,* the amount necessary for payment of Administrative Expense Claims other than for Professional Fees, post- confirmation liquidation expenses, post-confirmation fees and expenses of the Trustee, and after the sale of a given property, the amount required to pay capital gains to be reimbursed to the Debtor pursuant to § 4.13 of the Plan and § 7.2(b)(8) of this Agreement.

5.3　　Distribution of Trust Assets. Except as otherwise provided herein or the Plan, the Trustee shall distribute the Trust Assets as follows: first, to reimburse Debtor for any taxes and to pay administrative expenses of the Grantor Trust, including the compensation and expenses of the Trustee; second, to holders of Allowed Secured Claims with respect to the asset being sold; third, to pay holders of Allowed Administrative Claims for Professional Fee Claims and Allowed Priority Claims; third, to pay Allowed Unsecured Claims (including holders of Disputed Claims as they are resolved). Upon payment of all Beneficiaries as required by the Plan, the Grantor Trust shall be terminated pursuant to Section 10 of this Agreement, and the remaining Trust Assets, if any, shall revert back to the Debtor.

5.4　　Timing of Distributions. Payments of Allowed Administrative Claims, Allowed Priority Claims, Allowed Secured Claims, and Allowed Unsecured Claims will be made as provided under the Plan and this Agreement; provided, however, that the Trustee may pay Allowed Disputed Claims on a quarterly basis in the fiscal quarter after the claims are finally Allowed rather than immediately upon resolution. The Trustee shall have the discretion to make an earlier distribution of Available Cash in the event that the Trustee receives substantial Cash Proceeds which should be distributed to Creditors prior to the next scheduled distribution date. Further, the Trustee shall not be required to make any distributions to Beneficiaries in the event that the total distribution would be less than $25,000. The Trustee will make continuing efforts to convert the Trust Assets to cash, make timely distributions, and not unduly prolong the duration of the Grantor Trust.

## SECTION 6

## RIGHTS OF ACTION

6.1　　Standing to Sue. The Trustee shall have the sole authority and standing to bring all Rights of Action, including without limitation:

(a)　　all claims and causes of action of the Debtor's Estate under any applicable law;

(b)　　claims and causes of action under Chapter 5 of the Bankruptcy Code or RCW Chapters 19.40 or any other applicable law;

(c)     action for recovery of transfers made during the four-year period preceding the Debtor's bankruptcy, pursuant to RCW Chapter 19.40; and

(d)     any other claim against any other person identified by the Trustee.

6.2    <u>Power to Pursue and Compromise</u>.  The Trustee shall have the power and authority, in his discretion, to compromise, adjust, arbitrate, sue on or defend, abandon, or otherwise resolve or settle, in accordance with the terms hereof and the Plan, the Rights of Action, as the Trustee shall deem advisable.

6.3    <u>Approval of Settlements</u>.  The Trustee may not settle, compromise, dismiss, abandon or not pursue any Rights of Action where the amount sought in the Trustee's demand or complaint exceeds $25,000 without giving fourteen (14) days' notice and opportunity for hearing to the Service List, and if a timely objection is filed with the Court, obtaining a Bankruptcy Court Order approving the settlement.

# SECTION 7

## GENERAL POWERS, RIGHTS AND OBLIGATIONS OF THE TRUSTEE

7.1    <u>Legal Title</u>.  The Trustee shall hold legal title to the Trust Assets, except that the Trustee may cause legal title or evidence of title to any of the Trust Assets to be held by any nominee or person, on such terms, in such manner and with such power as the Trustee may determine advisable.  The Trust Assets shall be held for payment and distribution in accordance with the Plan and this Agreement.

7.2    <u>General Powers</u>.

(a)    <u>Fiduciary Capacity of Trustee</u>.  The Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of the purposes of, the Grantor Trust and not otherwise.  Except as otherwise provided in this Agreement or the Plan, and subject to the retained jurisdiction of the Court as provided for in the Plan, but without prior or further authorization, the Trustee may control and exercise authority over the Trust Assets, and over the acquisition, management and disposition thereof to the same extent as if the Trustee were the sole owner of the Trust Assets in his own right, but shall for all purposes hereunder be acting in the capacity as Trustee and not individually.  No person dealing with the Trust shall be obligated to inquire into the Trustee's authority in connection with the acquisition, management or disposition of the Trust Assets.

(b)    <u>Powers</u>.  In connection with the administration of the Trust Assets, the Trustee, except as otherwise expressly limited in this Agreement, the Plan, or the Confirmation Order, shall have all the rights, powers and duties set forth in this Agreement and available under applicable law for accomplishing the purposes of the Trust.  The Trustee is hereby authorized to file with any governmental authorities any documents necessary or helpful to establish the Trust.  In addition to any powers conferred by any other provision of this Agreement, the Trustee shall have the power and responsibility to take all actions necessary or advisable to effectuate the

purposes of the Trust, including, by way of illustration but without limitation, the power and authority to:

(1)    receive, manage, invest, supervise, protect and liquidate Trust Assets, and release, convey or assign any right, title or interest in or about the Trust Assets or any portion thereof (sale of an interest of a co-owner pursuant to Section 363(h) of the Bankruptcy Code), and if deemed in the best interest of the Trust by the Trustee, abandon, Trust Assets;

(2)    withdraw, make distributions and pay taxes and other obligations owed by the Grantor Trust from funds held by the Trustee and/or the Grantor Trust in accordance with this Agreement and the Plan;

(3)    execute, obtain, deliver, file and record such contracts, instruments, bonds (including any bond to cover the actions of the Trustee), releases, indentures, certificates, and other agreements or documents, and take such actions, as may be reasonably necessary or appropriate to effectuate and implement the terms and conditions of the Plan and this Agreement;

(4)    calculate and implement distributions of the Trust Assets to Beneficiaries in a manner consistent with the Plan and this Agreement;

(5)    vote any claim or interest held by the Grantor Trust in a case under the Bankruptcy Code and receive any distribution therefrom for the benefit of the Grantor Trust;

(6)    protect and enforce the rights to the Trust Assets vested in the Grantor Trust by this Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law or general principles of equity;

(7)    determine and satisfy any and all liabilities created, incurred or assumed by the Grantor Trust;

(8)    assist the Debtor with filing federal, state and local tax and information returns with respect to the Trust, reimburse the Debtor for taxes paid and attributable to the Trust, and apply for any rulings or determinations deemed necessary or appropriate by the Trustee;

(9)    pay all reasonable expenses and make all other payments relating to the Trust Assets;

(10)   obtain insurance coverage with respect to the liabilities and obligations of the Trustee and the Grantor Trust (in the form of an errors and omission policy, fiduciary policy or otherwise);

(11)   obtain insurance coverage with respect to Trust Assets;

GRANTOR TRUST AGREEMENT

(12)     retain and pay such third parties as the Trustee may deem necessary or appropriate to assist the Trustee in carrying out the powers and duties under this Agreement, without liability for any action taken or omission made because of such delegation except as provided herein;

(13)     invest any moneys held as part of the Trust Assets in accordance with § 7.3(b) of this Agreement;

(14)     pay all fees payable pursuant to Section 1930 of chapter 123 of title 28 of the United States Code until such time as the Bankruptcy Court enters a final decree closing the Debtor's Chapter 11 Case;

(15)     borrow funds on behalf of, and solely as a liability of, the Grantor Trust (which loans may be secured by the Trust Assets, but shall be without recourse to the Trustee in his individual capacity) as are necessary to enable the Trustee, as determined in his sole discretion, to discharge his powers and duties as Trustee under this Agreement, including without limitation funding the costs and expenses of prosecuting the Rights of Action and any other litigation by the              Trustee; and

(16)     exercise such other powers as may be vested in or assumed by the Grantor Trust or the Trustee pursuant to the Plan or Orders or as may be necessary to carry out the provisions of the Plan, including but not limited to assuming or rejecting executory contracts and leases.

7.3     Limitation of Trustee's Authority.

(a)     The Trustee is authorized to engage in any trade or business using the Trust Assets or any proceeds therefrom to the extent reasonably necessary to, and consistent with, the liquidating and distributing purposes of the Grantor Trust, and shall take such actions consistent with the expeditious but orderly liquidation (with the goal of obtaining maximum value possible) and distribution of the Trust Assets as is required by applicable law and consistent with the treatment of the Grantor Trust as a Grantor Trust under Treasury Regulation section 301.7701-4(d), and such actions permitted herein; provided, however, that the Trustee may not hold Trust Assets on behalf of the Grantor Trust that consist of listed stocks or securities.

(b)     The Trustee shall sell or abandon Trust Assets only after serving to the Service List a notice of sale or abandonment of any Trust Assets setting forth (i) the Buyer's name and relation, if any, to Debtor or Rick T. Gray, (ii) general description of the property; (iii) other parties to the transaction and their relation, if any, to the Debtor or Rick T. Gray; (iv) the gross sales price; (v) all liens on the property and the amount to be paid to each lienholder; (vi) total sale costs; (vii) tax consequences; (viii) summary of valuation information; (ix) that if any liens are not fully paid at closing they will attach to the sale proceeds in the same order of priority that they attach to the property, which will be held in trust until court order; (x) if any broker involved, name and commission; (xi) amount to be paid pro rata to Class 10 Beneficiaries; (xii) if property is to be abandoned, why it is being abandoned and to whom (the "Notice of Sale/Abandonment"). If no

notice of hearing and objection is filed with the Court by a party in interest within fourteen (14) days of service of the Notice of Sale/Abandonment, the Trustee may immediately sell the asset in accordance with the terms set forth in the Notice of Sale/Abandonment.

   (c) The right and power of the Trustee to invest Trust Assets, the proceeds thereof, and any income earned by the Grantor Trust, consistent with the obligations of a trustee under Section 345 of the Bankruptcy Code, shall be limited to the right and power to invest such Trust Assets in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as Treasury bills ("**Permitted Investments**"). The scope of Permitted Investments shall be limited in include only those investments, or shall be expanded to include any additional investments, as the case may  be, in which a Grantor Trust, within the meaning of Treasury Regulation section 301.7701-4,  may invest in, pursuant to the Treasury Regulations or any modifications in the IRS guidelines,  whether set forth in IRS rulings, other IRS pronouncements or otherwise; provided, however,  that the Trustee may expend the Trust Assets (i) as reasonably necessary to meet contingent  liabilities and to maintain the value of the Trust Assets during liquidation and/or prior to their  distribution, (ii) to pay reasonable administrative expenses which have been incurred (including,  but not limited to, any taxes imposed on the Grantor Trust or reasonable fees and expenses in  connection with litigation), and (iii) to satisfy other liabilities incurred or assumed by the Grantor  Trust (or to which the Trust Assets are otherwise subject) in accordance with the Plan or this  Agreement. Any Permitted Investment made as provided for herein must have a maturity date not in excess of six (6) months from the date of the acquisition of the Permitted Investment. The  Trust Assets, until distributed or paid as provided in this Agreement and in the Plan, shall be held  in trust and segregated in accordance with the Plan. The Trustee shall deposit all cash   comprising Trust Assets in interest-bearing accounts maintained with a domestic FDIC-insured  bank or other financial institution having a shareholder's equity or equivalent capital of not less  than Five Hundred Million Dollars (a "**Qualified Institution**"). The Trustee shall not be liable  for interest or obligated to produce income on any money received by the Grantor Trust hereunder  and held for distribution or payment to the Beneficiaries, except as such interest or other income shall actually be received by the Trustee. The Trustee shall not be liable in any way for any loss or other liability arising from any investment, or the sale or other disposition of any investment, made in accordance with this Section, except for any such loss or liability arising from the Trustee's negligence, breach of fiduciary duty, gross negligence, willful misconduct or fraud.

  7.4 <u>Retention of Attorneys, Accountants and Other Professionals</u>.  Except as otherwise provided in this Agreement or the Plan, and subject to the retained jurisdiction of the  Bankruptcy Court as provided for in the Plan, the Trustee may retain professionals, including, but not limited to, attorneys, accountants, disbursing agents, experts, advisors, consultants, investigators, appraisers or auctioneers as he may deem necessary, in his sole discretion, to aid in  the performance of his responsibilities pursuant to the terms of this Agreement and the Plan.   Such retained professionals shall prepare monthly statements and serve such statements on the Trustee no later than the 10th day of the following month.  The Trustee shall send copies of the statements to the Service List, along with notice that he plans to pay such statements (in full or in  part) unless a notice of hearing and objection is filed.  In the event the Trustee objects to the  reasonableness of such fees and expenses, or any Beneficiary or the Debtor files a notice of  hearing and objection with the Court as the reasonableness of such fees and expenses and serves  such objection on the Trustee within fourteen

(14) days after service of the statement, the Bankruptcy Court shall resolve the dispute. If no notice and objection is filed and served within fourteen (14) days, the Trustee shall pay such statements.

7.5     Compensation of Trustee.  The Trustee shall receive compensation from the Trust Assets as provided to a panel trustee under Section 326 of the Bankruptcy Code.  An interim payment of compensation may be made by the Trustee from proceeds upon the closing of a sale of Trust Assets if the proposed payment is disclosed in the Notice of Sale/Abandonment. As to his expenses, the Trustee shall be authorized to receive payment from the Trust Assets for reimbursement of expenses incurred in fulfilling the Trustee's duties pursuant to this Agreement. The Trustee shall provide a statement of expenses to the Service List, along with notice that he plans to pay such expenses unless an objection is filed.  In the event any Beneficiary or the Debtor files a notice of hearing and objection with the Court as to the reasonableness of such    fees and expenses and serves such notice and objection on the Trustee within fourteen (14) days  after service of the statement, the Bankruptcy Court shall resolve the dispute.  If no notice and objection is filed and served within fourteen (14) days, the Trustee shall reimburse such expenses.

7.6     Standard of Care; Exculpation; Indemnification.  The Trustee and the Trustee's professionals and representatives shall be and hereby are exculpated by all persons, including without limitation, the Beneficiaries (or successors of such entities), the Debtor, and other parties  in interest, from any and all claims, causes of action and other assertions of liability arising out   of the discharge of the powers and duties conferred upon such Trustee by the Plan, this  Agreement or any Order except for actions or omissions to act that are determined by Final    Order of the Bankruptcy Court to be due to negligence, breach of fiduciary duty, gross negligence, willful misconduct or fraud.  No Beneficiary or other party in interests will have or be permitted to pursue any claim or cause of action against the Trustee, the Grantor Trust or the  professionals or representatives of either the Trustee or the Grantor Trust for making payments in  accordance with or implementing the provisions of the Plan.  The Grantor Trust, but not any  Beneficiary, shall indemnify, defend and hold harmless the Trustee and the Trustee's professionals or representatives from and against any and all claims, causes of action, liabilities,  obligations, losses, damages or reasonable expenses (including reasonable attorneys' fees and  expenses) arising in connection with or in any manner relating to the discharge of any powers      and duties conferred upon the Trustee or any such professional or representative by, or the  performance of the services of the Trustee or any such professional or representative under, this  Agreement, the Plan or any Order, including, without limitation, any liability or reimbursement  obligation of the Trustee under any bond obtained by the Trustee in connection with such  services, other than and only to the extent determined by a Final Order of the Bankruptcy Court to  be due to such parties' negligence, breach of fiduciary duty, gross negligence, willful misconduct  or fraud, to the fullest extent permitted by applicable law; provided, that nothing in this Agreement shall preclude actions by the Trustee against any professionals engaged by him as Trustee for negligence or professional malpractice.  Any action taken or omitted to be taken  with the express approval of the Bankruptcy Court will conclusively be deemed not to constitute  negligence, breach of fiduciary duty, gross negligence, willful misconduct or fraud.

7.7     Reliance by Trustee.  The Trustee may rely, and shall be fully protected in acting on, any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order on other instrument or document that it has no reason to believe to be other than genuine and to

have been signed or presented other than by the proper party or parties, or in the case of facsimile transmissions, to have been sent other than by the proper party or parties, in each case without obligation to satisfy himself that the same was given in good faith and without responsibility for errors in delivery, transmission or receipt. In the absence of his negligence, breach of fiduciary duty, willful misconduct, gross negligence, willful disregard of his duties or fraud, the Trustee may rely as to the truth of statements and correctness of the facts and opinions expressed therein and shall be fully protected in acting thereon. The Trustee may consult with legal counsel and shall be fully protected in respect of any action taken or suffered by the Trustee in accordance with the written opinion of legal counsel selected by him with due care. The Trustee may at any time seek instructions from the Bankruptcy Court concerning the acquisition, management or disposition of the Trust Assets.

7.8 <u>Action Upon Instructions</u>. If in performing the Trustee's duties under this Agreement, the Trustee is required to decide between alternative courses of action, or the Trustee is unsure of the application of any provision of this Agreement or the Plan, then the Trustee shall be under no duty to take or refrain from taking such action not inconsistent with this Agreement as the Trustee shall deem advisable. The Trustee may at any time apply to the Bankruptcy Court for a determination as to the course of action to be taken by the Trustee.

7.9 <u>Books and Records</u>. The Trustee shall maintain, in respect of the Grantor Trust estate, the Beneficiaries and all others to receive distributions under this Agreement, books and records relating to the assets and income of the Grantor Trust and the payment of expenses, and liabilities of and, claims against or assumed by the Grantor Trust, in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof in accordance with § 7.10 hereof and to comply with applicable provisions of law. Except as provided in § 7.10 hereof, nothing in this Agreement requires the Trustee to file any accounting or seek approval of any court with respect to the administration of the Grantor Trust or as a condition for making any payment or distribution out of the Trust Assets. The US Trustee shall have the right at any time during regular business hours to inspect such books and records.

7.10 <u>Annual Reports and Notices</u>. Within 120 days after the end of each calendar year (unless the Grantor Trust was terminated during that calendar year, and in such case, within 120 days after such termination), the Trustee shall submit to the Bankruptcy Court (if the Case is still open), the U.S. Trustee and the Service List a written report disclosing transactions for the prior calendar year, including: (i) financial statements of the Grantor Trust at the end of such calendar year and the receipts and disbursements of the Trustee for the year, and (ii) a description of any action taken by the Trustee in the performance of his duties which materially affects the Grantor Trust. Within 60 days after the end of each calendar year, the Trustee shall prepare and mail to each Beneficiary (not only those on the Service List) a separate statement for that Beneficiary setting forth the Beneficiary's share of items of income, gain, loss, deduction or credit for tax- reporting purposes.

7.11 <u>Compliance with Securities Laws</u>. The parties intend that the rights or interests of the Beneficiaries arising under this Grantor Trust shall not be "securities" under applicable laws, but none of the parties hereto represent or warrant that such rights or interests shall not be securities or shall be entitled to exemption from registration under applicable securities laws. If such rights or

interests constitute securities, the parties hereto intend for the exemption from registration provided by Section 1145 of the Bankruptcy Code and under applicable securities laws to apply to their issuance under the Plan. The Trustee shall file with the Securities Exchange Commission and other applicable federal and state governmental agencies the reports and other documents and take any other actions necessary to comply with federal or state securities laws, including, but not limited to, in the event that the Grantor Trust becomes subject to the registration requirements of the Exchange Act, causing the Grantor Trust to register pursuant to, and to comply with, the applicable reporting requirements of the Exchange Act and issuing reports to all beneficiaries of such Grantor Trust in accordance therewith.

7.12 <u>Timely Performance</u>. The Trustee will make continuing efforts to prosecute or settle the Rights of Action, make timely distributions, and not unduly prolong the duration of the Grantor Trust.

7.13 <u>Actions Taken on Other Than Business Day</u>. If any payment or act under the Plan is required to be made or performed on a date that is not a business day, then the making of such payment or the performance of such act may be completed on the next succeeding business day, but shall be deemed to have been completed as of the required date.

7.14 <u>Identification of Trust Beneficiaries</u>. In order to determine the actual names and addresses of the Beneficiaries, the Trustee shall be entitled to rely on the names and addresses set forth in the Schedules or filed proofs of claim or provided to the Trustee by the Debtor or Plan Proponent; provided, that if there is a discrepancy between the Debtor's schedules and a filed proof of claim to which an objection has not been interposed, the proof of claim shall control. Each payment and distribution by the Trustee shall be made in accordance with the Plan, any order of the Bankruptcy Court, and this Agreement. In the event of any inconsistency between the Plan, any order of the Bankruptcy Court, and this Agreement, the terms of the Plan shall govern.

7.15 <u>No Implied Obligations</u>. No other further covenants or obligations shall be implied into this Agreement. The Trustee shall not be responsible in any manner whatsoever for the correctness of any recital, statement, representation, or warranty herein, or in any document or instrument evidencing or otherwise constituting a part of the Trust Assets.

7.16 <u>Unknown Property and Liabilities</u>. The Trustee shall be responsible for only that property delivered to it, and shall have no duty to make, nor incur any liability for failing to make, any search for unknown property or for any liabilities.

7.18 <u>Compliance with Laws</u>. Any and all distributions of Trust Assets and proceeds of borrowings, if any, shall be in compliance with applicable laws, including, but not limited to, applicable federal and state securities law.

7.19 <u>Resignation; Successor Trustee</u>.

(a) <u>Resignation</u>. The Trustee may resign as Trustee by giving written notice of its resignation to the US Trustee and the Service List. The Trustee shall continue to serve as trustee for the lessor of (i) 45 days after the date of its notice of resignation, or (ii) until the

appointment of a successor Trustee shall become effective in accordance with paragraph (c) below.

   (b) <u>Removal</u>. The Trustee may be removed by the Bankruptcy Court for cause, including, without limitation, gross negligence or willful misconduct.

   (c) <u>Selection of Successor</u>. Upon any resignation or removal of the Trustee or any vacancy in such position, a successor Trustee may be appointed by the Plan Proponent (a) with the consent of holders of at least 50% of the dollar amount of the remaining unpaid Claims, or (b) with the approval of the Bankruptcy Court; provided that in the case of the resignation of the Trustee, a Successor Trustee must be appointed and approved within 45 days of the date of the notice of such resignation.

   (d) <u>Successor Trustee</u>. Any successor Trustee appointed hereunder shall execute an instrument accepting such appointment, file such acceptance with the Bankruptcy Court and in the Grantor Trust records and mail a copy to the United States Trustee. The successor Trustee shall obtain a fidelity bond in the manner and in the amount required by § 4.4, above. Thereupon, such successor Trustee shall, without any further act, become vested with all the estates, properties, rights, powers, trusts and duties of his predecessor trustee with like effects as if originally named herein; provided, however, that a removed or resigning Trustee shall, nevertheless, when requested in writing by the successor Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Trustee under the Grantor Trust all the estates, properties, rights, powers and trusts of such predecessor Trustee.

  7.20 <u>Continuance of Grantor Trust</u>. The death, dissolution, resignation, incompetency or removal of the Trustee shall not operate to terminate the Grantor Trust created by this Agreement, to revoke any existing agency created under the terms of this Agreement or invalidate any action theretofore taken by the Trustee. In the event of resignation or removal, the Trustee promptly (a) shall execute and deliver such documents, instruments and other writings as may be ordered by the Bankruptcy Court or requested by a successor Trustee to effect the termination of the Trustee's capacity under this Agreement and the conveyance of the Trust Assets then held by the Trustee to the successor, (b) shall deliver to the Bankruptcy Court or the successor Trustee all documents, instruments, records and other writings related to the Grantor Trust as may be in the possession of the Trustee and (c) shall otherwise assist and cooperate in effecting the assumption of his obligations and functions by such successor Trustee, and (d) may seek and obtain Bankruptcy Court discharge of obligations and liabilities as the Trustee as if the Grantor Trust were terminated pursuant to Section 10.

  7.21 <u>Preservation of Privilege</u>. Any attorney-client privilege, work-product privilege, or other privilege or immunity in effect with respect to any documents or communications (whether written or oral), and any causes of action and other assets transferred to the Grantor Trust (the "**Privileges**") shall vest in the Grantor Trust and its representatives, to the full extent permitted by law. The Debtor shall be deemed to irrevocably transfer to the Trustee, as legal successor, all rights of the Debtor and the bankruptcy estate to exercise or waive any Privileges. This transfer is self-executing, provided however, that the Trustee and the Debtor are authorized and directed to take any and all necessary actions to effectuate the transfer of such Privileges.

GRANTOR TRUST AGREEMENT

Exhibit 3
Page 14 of 18

7.22    No Liability for Acts of Predecessor.  No successor Trustee shall be in any way responsible or liable for the acts or omissions of any predecessor Trustee in office prior to the date on which such Person becomes the Trustee, nor shall such successor Trustee be obligated to inquire into the validity or propriety of any such act or omission unless such successor Trustee expressly assumes such responsibility. Any successor Trustee shall be entitled to accept as conclusive any final accounting and statement of Trust Assets furnished to such successor Trustee by the predecessor Trustee and shall further be responsible only for those Trust Assets properly includable in such statement.

## SECTION 8

## ESTATE REPRESENTATIVE

8.1    Status of Trustee as Estate Representative.  In addition to his rights and duties as Trustee of the Debtor's grantor trust as set forth herein, the Trustee shall be the representative of the Estate within the meaning of Section 1123(b)(3)(B) of the Bankruptcy Code and shall have the rights and powers provided for in the Bankruptcy Code in addition to any rights and powers granted in this Agreement and in the Plan (acting in such capacity, the "**Estate Representative**"). The Trustee shall be a party in interest as to all matters over which the Bankruptcy Court has jurisdiction.

8.2    Compensation as Estate Representative and Retention of Professionals.  The compensation of the Trustee, as described in § 7.5 above, shall include the Trustee's service in its capacity as Estate Representative.  Professionals hired by the Trustee may also represent the Trustee in its capacity as Estate Representative pursuant to the provisions of § 7.4 above.

8.3    Limited Liability of the Estate Representative.  For the avoidance of doubt, the provisions of §§ 7.6, 7.7 and 7.8 above, to the extent applicable, shall include the Trustee acting in its capacity as Estate Representative.

## SECTION 9

## DEBTOR'S DUTY OF COOPERATION AND ASSISTANCE

The Debtor shall use all reasonable efforts to assist the Trustee as necessary or appropriate to effectuate the purposes of the Plan and this Agreement and make available all books and records of the Debtor to enable the Trustee to perform the Trustee's tasks and duties under this Agreement and the Plan.

## SECTION 10

## TERMINATION

The Trustee shall continue until the earlier of (i) termination of the Grantor Trust as approved by the Bankruptcy Court after either payment of all Beneficiaries or the liquidation  and distribution of the proceeds of all Trust Assets; or (ii) three (3) years after the Effective Date.  Upon termination, any remaining Trust Assets shall be immediately transferred back to the Debtor.

Notwithstanding the foregoing, in the event the Trustee shall have been unable after continuing reasonable efforts to complete the liquidation and/or distribution of all Trust Assets in the initial term of the Grantor Trust or other circumstances require extension, the Trustee shall apply to the Bankruptcy Court to extend the term of the Grantor Trust for such periods as are necessary in the Trustee's judgment to accomplish the purposes of the Grantor Trust, (on notice to the Beneficiaries, the Debtor, the US Trustee, and such other parties as the Bankruptcy Court directs), provided that each such extension must be approved by the Bankruptcy Court before the beginning of the extended term. The Trustee shall at all times endeavor to liquidate and/or distribute the Trust Assets expeditiously, and in no event shall the Trustee unduly prolong the duration of the Grantor Trust. On termination of the Grantor Trust, the Trustee shall advise the US Trustee, the Service List and the Bankruptcy Court in writing of its termination. Notwithstanding the foregoing, after the termination of the Grantor Trust, the Trustee may exercise all powers, authorities and discretions herein conferred solely for the purpose of liquidating and winding up the affairs of the Grantor Trust. Upon termination, the Trustee shall retain the books, records and files that shall have been delivered to or created by the Trustee. At the Trustee's discretion, all of such records and documents may be destroyed at any time after four years from the date of termination. The Trustee may request Bankruptcy Court approval of the final annual report filed pursuant to § 7.10, and upon court approval, the Trustee shall be discharged from all obligations and liabilities to the Grantor Trust or any Person who has had or may then or thereafter have an interest in the Grantor Trust for acts or omissions in the Trustee's capacity as the Trustee or in any other capacity contemplated by this Trust Agreement or the Plan and the surety or sureties on any bond provided by the Trustee under this Agreement shall be discharged and exonerated.

## SECTION 11

## MISCELLANEOUS

11.1    Notices.  All notices, requests or other communications required or permitted to be made in accordance with this Agreement shall be in writing and shall be mailed by first-class mail or by overnight delivery service:

If to the Trustee, at:

Critical Point Advisors, LLC
Attn: Brian Birdsall
2626 School St
Wenatchee, WA 98801

If to the Debtor, at both:

Gray Land & Livestock, LLC
PO Box 1525
Prosser, WA 99350-0833

GRANTOR TRUST AGREEMENT

and to the Debtor's counsel at:

Roger Bailey
Bailey & Busey PLCC
411 N 2nd St
Yakima, WA 98901

Notices shall be deemed delivered when actually received.

11.2    Effectiveness.  This Agreement shall become effective on the Effective Date.

11.3    Counterparts.  This Agreement may be executed in one or more counterparts (via facsimile or otherwise), each of which shall be deemed an original but which together shall constitute but one and the same instrument.

11.4    Governing Law.  This Agreement shall be governed by construed under and interpreted in accordance with the laws of the State of Washington.

11.5    Headings.  Sections, subheadings and other headings used in this Agreement are for convenience only and shall not affect the construction of this Agreement.

11.6    Severability.  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall not invalidate the remaining provisions of this Agreement, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable any such provision in any other jurisdiction.

11.7    Amendment and Waiver.  This Agreement may be amended from time to time, (a) with respect to non-material amendments or waivers without the consent of the Beneficiaries and (b) with respect to material amendments or waivers, pursuant to an order of the Bankruptcy Court on notice to the Beneficiaries, the Debtor, the Plan Proponent and the US Trustee.

11.8    Successors.  This Agreement shall bind and inure to the benefit of the parties and their respective successors and assigns.

11.9    Irrevocability.  The Grantor Trust is irrevocable, but is subject to amendment as provided in this Agreement.

11.10   Enforcement and Administration.  The Bankruptcy Court shall enforce and administer the provisions of this Agreement as set forth in the Plan.

*[Signature page to follow]*

GRANTOR TRUST AGREEMENT

IN WITNESS WHEREOF, the parties hereto have executed this Agreement or caused this Agreement to be duly executed as of the date first above written.

GRAY LAND & LIVESTOCK, LLC,
DEBTOR-IN-POSSESSION

CRITICAL POINT ADVISORS, LLC, AS
TRUSTEE

_____
Matthew Anderton, Chapter 11 Trustee for
Gray Land & Livestock, LLC

_____
Brian Birdsall, President

GRANTOR TRUST AGREEMENT

Exhibit 3
Page 18 of 18

19-00467-FPC11   Doc 286   Filed 06/18/20   Entered 06/18/20 16:06:36   Pg 50 of 50