Jody M. McCormick, WSBA #26351
Daniel J. Gibbons, WSBA #33036
WITHERSPOON · KELLEY
422 W. Riverside Avenue, Suite 1100
Spokane, WA 99201
Phone: (509) 624-5265
Fax: (509) 458-2728
jmm@witherspoonkelley.com
djg@witherspoonkelley.com
*Attorneys for Plan Agent,*
*Critical Point Advisors, LLC*

## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>GRAY LAND & LIVESTOCK, LLC<br><br>           Debtor. | NO. 19-00467-FPC11<br><br>DECLARATION OF BRIAN BIRDSALL |

BRIAN BIRDSALL, declares under penalty of perjury as follows:

1.    I am a Principal of Critical Point Advisors, LLC ("CPA"). CPA is the Plan Agent under the confirmed Second Amended Plan of Liquidation and the Trustee under the Grantor Trust Agreement. I am over the age of 18 and competent to be a witness herein, and make this Declaration based on my personal knowledge. I am familiar with the status of the estate assets, liabilities and financial condition, including the dispute with Lynda Lee Gray and the Orville Thomas Gray and Lynda

DECLARATION OF BRIAN
BIRDSALL- 1
S2119458



WITHERSPOON·KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100          Phone: 509.624.5265
Spokane, Washington 99201-0300               Fax: 509.458.2728

Lee Gray Living Trust (collectively, the "Parents' Trust"). I have access to and am familiar with the books and records kept in the ordinary course of CPA's business including but not limited to the documents attached hereto as exhibits.

2. Attached hereto as Exhibit A is a true and correct copy of the Farm Lease Agreement with Option to Purchase, effective as of January 1, 2014 (the "Farm Lease").

3. Attached hereto as Exhibit B is a true and correct copy of the Assignment of Lease, dated July 17, 2019 whereby the Farm Lease was assigned from Rick Gray to Debtor Gray Land & Livestock, LLC.

4. Attached hereto as Exhibit C is a true and correct copy of a letter from former Chapter 11 Trustee Matt Anderton to the Parent's Trust dated March 17, 2020 exercising the option to purchase contained in the Farm Lease.

5. The Parents' Trust disputes that the assignment of the Farm Lease and Option were timely and proper.

6. After several months of negotiation, CPA and the Parents' Trust has resolved this issue, as well the Parents' Trust's Proof of Claim and Motion for Administrative Expense Treatment. Pursuant to the Plan and Grantor Trust Agreement, notice of the proposed settlement was provided to the service list (the

DECLARATION OF BRIAN
BIRDSALL- 2
S2119458

WK WITHERSPOON·KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100        Phone: 509.624.5265
Spokane, Washington 99201-0300             Fax: 509.458.2728



"Proposed Settlement"). Attached hereto as Exhibit D is a true and correct copy of the Notice of Settlement, dated October 26, 2020. The Notice of Settlement and documents attached thereto describe the Proposed Settlement in full. The principal terms of the Proposed Settlement include:

- The existing Farm Lease will be rejected and replaced with a new Farm Lease Agreement that does not contain an option to purchase the property (the "New Lease");

- The Parents' Trust will disclaim any interest in casualty insurance proceeds of $396,807.78 causing them to be retained by CPA;

- The Parents' Trust will withdraw its $200,000.00 claim (part of which is claimed to be a general unsecured claim and part of which is alleged to qualify for administrative expense priority) and disclaim any right to payment from the bankruptcy estate, including a potential lease rejection claim for an additional $100,000.00, other than payments due under the New Lease and for 2nd half 2020 taxes paid;

- The Parents' Trust will convey 20,000 bushels of wheat to the bankruptcy trust, which had been previously abandoned by CPA to the Parents' Trust; and

- The Parents' Trust will pay $200,000.00 in cash to CPA.

7.    Based on my best information and belief, the 20,000 bushels of wheat should provide more than $100,000 in proceeds to the estate.

8.    I believe that the Proposed Settlement is fair, reasonable and adequate and beneficial to creditors. I believe the Proposed Settlement is a significantly better alternative for creditors than litigating the dispute regarding the proper assignment of the Farm Lease and exercise of the option, and thus avoids the risk, time, expense and

DECLARATION OF BRIAN
BIRDSALL- 3
S2119458

**WK WITHERSPOON·KELLEY**
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100        Phone: 509.624.5265
Spokane, Washington 99201-0300             Fax: 509.458.2728



uncertainty of that litigation. In addition, if successful financing will be required to acquire the farmland and therefore interest and the cost of acquiring the farmland is being avoided. Resolving this dispute will also save the costs of subsequently selling the property.

9.     Attached hereto as Exhibit E is a true and correct copy of an offer from Rick Gray received on August 14, 2020. Mr. Gray's offer was for all of the assets of the Debtor. I discussed this offer with Mr. Gray and Roger Bailey during a meeting on or about August 20, 2020. I considered the offer to be too low, and Mr. Gray's ability to generate the cash necessary to acquire the assets to be questionable. In addition, the offer required CPA to successfully litigate the whether the assignment of the Farm Lease and exercise of the option to purchase were timely and proper. This offer was orally rejected at the meeting.

10.     Following the meeting on August 20, 2020, Mr. Gray made a subsequent offer. Attached hereto as Exhibit F is a true and correct copy of Mr. Gray's August 20, 2020 offer. Again, this offer was for all of the assets of the Debtor. This offer was also rejected, for the same reasons stated above.

//

//

//

//

DECLARATION OF BRIAN
BIRDSALL- 4
S2119458



WITHERSPOON·KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100          Phone: 509.624.5265
Spokane, Washington 99201-0300               Fax: 509.458.2728

I declare under penalty of perjury under the laws of the United States and the State of Washington that the foregoing is true and correct.

Dated this 13th day of November, 2020, in Wenatchee, Washington.

_R. Birdsall_

BRIAN BIRDSALL

DECLARATION OF BRIAN
BIRDSALL- 5
S2119458

WK **WITHERSPOON·KELLEY**
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

# Exhibit A

Exhibit A                    Exhibit A                    Exhibit A

# FARM LEASE AGREEMENT
# WITH OPTION TO PURCHASE

THIS FARM LEASE AGREEMENT WITH OPTION TO PURCHASE, made and entered into this _29th_ day of _March_____, 2017, and effective January 1, 2014, by and between ORVILLE THOMAS GRAY and LYNDA LEE GRAY, Co-Trustees of the Orville T. Gray and Lynda Lee Gray Living Trust dated September 18, 1995 and any and all amendments thereto, hereinafter called Lessor, and RICK T. GRAY, an individual, hereinafter called Lessee,

W I T N E S S E T H :

1.      That for and in consideration of the stipulations hereinafter contained and the rental agreed to be paid, Lessor does hereby lease, let and demise unto Lessee the following described real property situate in Klickitat County, State of Washington, to wit:

**Ptns of Sections 2, 3, 4, 12, 13 & 14 in Township 5, Range 21; and Ptns of Sections 33, 34 and 35 in Township 6, Range 21; all fully described as follows:**

<u>Township 5 North, Range 21 EWM</u>

**Section 2:**
**All less Government Lot 3.**
**Assessor's Parcel No. 05-21-0200-0001/00**

**Section 3:**
**Government Lots 1, 2, 3 and 4;**
**The South Half of the Northeast Quarter;**
**The East Half of the Southeast Quarter;**
**The South Half of the Northwest Quarter; and**
**The North Half of the Southwest Quarter**
**Assessor's Parcel No. 05-21-0300-0001/00**

**Section 4:**
**Government Lot 1:**
**The Southeast Quarter of the Northeast Quarter; and**
**The North Half of the Southeast Quarter**
**Assessor's Parcel No. 05-21-0400-0001/00**

Law Offices
LYON WEIGAND & GUSTAFSON PS
Lyon Law Offices · 222 North Third Street
P O Box 1689
Yakima, Washington 98907
Telephone (509) 248-7220
Fax (509) 575-1883

Section 11:
All
Assessor's Parcel No. 05-21-1100-0000/00

Section 12:
The Southwest Quarter of the Northeast Quarter;
The Southeast Quarter of the Northwest Quarter;
The West Half of the Southeast Quarter;
The West Half of the Northwest Quarter; and
The North Half of the Southwest Quarter
Assessor's Parcel No. 05-21-1200-0002/00

Section 13:
The North Half of the Northwest Quarter of the Southeast Quarter of the Northeast Quarter;
The North Half of the Northwest Quarter of the Northeast Quarter of the Northeast Quarter;
The Northeast Quarter of the Southeast Quarter of the Northeast Quarter;
The East Half of the Southeast Quarter of the Southwest Quarter of the Northeast Quarter;
The Northwest Quarter of the Northeast Quarter;
The Northeast Quarter of the Northwest Quarter;
The North Half of the Southeast Quarter of the Northwest Quarter;
The South Half of the Northeast Quarter of the Northeast Quarter;
The South Half of the Northwest Quarter of the Southeast Quarter of the Northeast Quarter;
The South Half of the Southeast Quarter of the Northeast Quarter;
The West Half of the Southeast Quarter of the Southwest Quarter of the Northeast Quarter; and
The West Half of the Northwest Quarter
Assessor's Parcel No. 05-21-1300-0002/00

Section 14:
The North Half of the North Half
Assessor's Parcel No. 05-21-1400-0001/00

<u>Township 6 North, Range 21 EWM</u>

Section 33:
The Southeast Quarter, EXCEPT County Road No. 47380
Assessor's Parcel No. 06-21-3300-0002/00

FARM LEASE AGREEMENT - 2
10061-01\ja\gray tom\general\farm lease agreement

Law Offices
LYON WEIGAND & GUSTAFSON PS
Lyon Law Offices - 222 North Third Street
P.O. Box 1689
Yakima, Washington 98907
Telephone (509) 248-7220
Fax (509) 575-1883

EXHIBIT 4
Page 156 of 174

Section 34:
The East Half of the East Half;
The West Half of the East Half;
The Northwest Quarter; and
The Southwest Quarter
Assessor's Parcel No. 06-21-3400-0000/00

Section 35:
The Southwest Quarter;
The East Half of the Northeast Quarter;
The Northeast Quarter of the Southeast Quarter; and
The Northwest Quarter
Assessor's Parcel No. 06-21-3500-0001/00

The West Half of Section 33, Township 6 North, Range 21, E.W.M.,
less County Road right of way, less Westerly 480 feet and less the
Southerly 700 feet of the Easterly 400 feet of the Westerly 880 feet of
said property, retaining in Grantor an easement for ingress and
egress over the Westerly 20 feet of the property being sold, for the
benefit of the remainder of said section 33 lying westerly of the
property being transferred hereby, ALSO reserving in Miland Walling
and Lester Walling or the survivor, a life estate (measured by
Miland's and Lester's joint lives) in the mineral rights on the property
being sold hereunder.
Assessor's Parcel No. 06-21-3300-0000/00

Excepted from the leased premises is that home and property
immediately surrounding the home located on Assessor's Parcel No.
05-21-0400-0001/00, which serves as Lessor's personal residence.

2.      The term of this lease shall commence on January 1, 2014, and shall be
for a period of sixteen (16) years, terminating December 31, 2029, at midnight.

3.      Lessee shall pay as rental for the use and occupancy of said premises the
sum of One Hundred Thousand and no/100 Dollars ($100,000.00) per year.   Said
payment shall be paid on or before January 1, 2014 and upon the like date of each year
during the continuation of this agreement.  Shall Lessee exercise the option to purchase
this real estate as said option is granted in Paragraph 12 hereof, Forty-six Thousand
and no/100 Dollars ($46,000.00) of each $100,000.00 lease payment shall be applied
as rent and Fifty-four Thousand and no/100 Dollars ($54,000.00) shall be applied as a

Law Offices
LYON WEIGAND & GUSTAFSON PS
Lyon Law Offices - 222 North Third Street
P.O. Box 1689
Yakima, Washington 98907
Telephone (509) 248-7220
Fax (509) 575-1883

credit towards the option purchase price. In addition to such cash rental, certain other costs and expenses shall be paid as additional rental as hereinafter provided.

4. As additional rental hereunder, Lessee shall pay all real property taxes and assessments on said property, commencing with the taxable year 2014. Lessee shall pay all water charges and irrigation assessments falling due throughout the term hereof, together with all premiums on any insurance required because of the terms and provisions of this agreement, and all repairs required under the terms hereof.

5. Lessee herein agrees as follows:

a). To pay all cash rentals at the time and in the amounts hereinabove set forth.

b). To indemnify and save harmless the Lessor from and against all loss, liability and expense that may be incurred by reason of any accident, damage, or neglect arising from, or in any way growing out of the use, misuse, or abuse of the leased premises.

c). Lessee will not make or suffer any unlawful, improper, or offensive use of the premises herein leased, or any use or occupancy thereof contrary to the laws of the state of Washington or any ordinances now or hereafter made, or which shall be injurious to any person or person's property.

d). Not to assign or sublet in whole or part any of the demised premises without first obtaining the written consent of Lessor.

e). That all property of any kind that may be on the premises during the continuance of this lease shall be at the sole risk of Lessee and Lessor shall not be liable to Lessee or to any person for injury, loss, or damage to the property or to any person on the premises during the term hereof.

f). That Lessee has inspected said premises and hereby accepts said premises without any representation by Lessor as to the tenantability or farmability of the demised premises.

FARM LEASE AGREEMENT - 4
10061-01\ja\gray tom\general\farm lease agreement

Law Offices
LYON WEIGAND & GUSTAFSON PS
Lyon Law Offices - 222 North Third Street
P.O. Box 1689
Yakima, Washington 98907
Telephone (509) 248-7220
Fax (509) 575-1883

EXHIBIT 4
Page 158 of 174

19-00467-FPC11     Doc 205-2     Filed 04/02/20     Entered 04/02/20 13:54:06     Pg 32 of 48

g). Lessee shall pay all charges for public utilities supplied to the leased premises and shall save Lessor harmless from any and all liens of any kind whatsoever which may attach to said leased premises and the improvements thereon by reason of the failure of Lessee to pay any charges of whatsoever kind, the payment of which is the responsibility of Lessee pursuant to the terms of this lease agreement or by operation of law.

6. Lessor agree that Lessee may place any personal property or equipment on said premises for use in connection with the operation of said farming property and the farming operations carried on said premises, provided that Lessee shall not have the right to remove any such personal property or fixtures if it is in default in the rental due under this lease.

7. It is understood and agreed that Lessee will maintain liability insurance covering all the leased premises and improvements thereon with such limits as are normally carried by Lessee in connection with his own land, but not less than $1,000,000 per person, $1,000,000 per accident, and $100,000 property damage, and such liability insurance shall name Lessor as additional insureds as their interests may appear. Such liability policies will be kept in full force and effect at all times during the term hereof. Additionally Lessee shall provide Lessor with a certificate verifying said insurance and confirming that Lessor is listed as an additional insured under said policy. The policy shall further require that notice by provided to Lessor at least 30 days prior to cancellation of said policy. Should the policy be cancelled, Lessor may, but shall not be required to, purchase a replacement policy. Should Lessor purchase a replacement policy, Lessee shall be responsible for all costs of said policy as shall reimburse Lessor of all costs related to said policy, plus an additional twelve percent (12%) above said policy cost.

8. In the event Lessee shall make default in any of the terms or conditions of this lease agreement, Lessor may, at their option, cancel and terminate this lease upon giving twenty (20) days' written notice of such default to Lessee within which time such default may be remedied by Lessee. Any such notice shall be in writing and shall set

FARM LEASE AGREEMENT - 5
10061-01\ja\gray tom\general\farm lease agreement

Law Offices
LYON WEIGAND & GUSTAFSON PS
Lyon Law Offices - 222 North Third Street
P.O. Box 1689
Yakima, Washington 98907
Telephone (509) 248-7220
Fax (509) 575-1883

EXHIBIT 4
Page 159 of 174

19-00467-FPC11    Doc 205-2    Filed 04/02/20    Entered 04/02/20 13:54:06    Pg 33 of 48

19-00467-FPC11    Doc 385    Filed 11/13/20    Entered 11/13/20 15:58:59    Pg 11 of 66

forth the grounds of forfeiture and such written notice shall be served upon Lessee by personal delivery of the same to Lessee or by mailing it to Lessee by registered or certified mail, postage prepaid, addressed to Lessee at his last registered address. In the event this lease is not reinstated in good standing at the expiration of said twenty-day period as above set forth, this lease shall be forfeited and terminated immediately. In such event, Lessor may re-enter the demised premises and resume possession thereof and expel Lessee or any person or persons occupying the same under Lessee either with or without process of law. This provision, however, shall not in any way release Lessee from any of his liability to pay rental as herein provided, nor shall it prevent Lessor from recovering any damages which they may sustain by reason of Lessee's breach hereof.

9.     It is understood and agreed that any waiver, express or implied, by either party of any breach of the covenant of this lease, shall not be nor be construed to be a waiver of any subsequent breach of the same or other covenants of this lease, and in the event either of the parties hereto shall resort to litigation for the enforcement of this lease or any of its terms or provisions, the successful party in any such litigation shall be entitled to recover such sum as the court may adjudge reasonable as attorney's fees.

10.    All the terms and conditions hereof shall inure to the benefit of and be binding upon Lessor and Lessee, their respective heirs, executors, administrators, successors, legal representatives and assigns.

11.    Lessee represents himself to be a skilled farmer and agrees to farm the said premises in a good and husbandman-like manner and not to permit any waste thereon, and upon the expiration or termination thereof, Lessee agrees to quit said premises in as good a state and condition as the same now are in, reasonable use excepted. Lessee especially agrees to take proper care of land, irrigation system and all equipment which may be used by him on said premises. Lessee further agrees to maintain all improvements on said premises in a good state of repair and to maintain the same at Lessee's expense. Such improvements to be in the condition that the same were in at the time this lease commences, ordinary wear and tear excepted. Except as

FARM LEASE AGREEMENT - 6
10061-01\ja\gray tom\general\farm lease agreement

Law Offices
LYON WEIGAND & GUSTAFSON PS
Lyon Law Offices - 222 North Third Street
P.O. Box 1689
Yakima, Washington 98907
Telephone (509) 248-7220
Fax (509) 575-1883

to those improvements excluded herefrom and any expenses to be paid by Lessor, all other obligations of keeping the leased premises in good condition shall remain on Lessee.

12.   In consideration of the leasing and promises of the parties contained herein, Lessor gives Lessee the option to purchase the above-described real property at the price of One Million Two Hundred Fifty Thousand and no/100 Dollars ($1,250,000.00) at the expiration of the sixteen (16) year lease term or upon the death of either Orville Thomas Gray or Lynda Lee Gray, whichever occurs first. If Lessee elects to purchase the above-described real property, Lessee is to notify Lessor or Lessor's representative in writing ninety (90) days prior to expiration of the lease or not more than sixty (60) days after the death of Tom Gray or Linda Gray of Lessee's intent to exercise said option to purchase. Should this option be exercised, a portion of each lease payment, said portion in the amount of Fifty-four Thousand no/100 Dollars ($54,000.00) will be applied as a credit toward the purchase price. Should Lessee fail to exercise the option of the end of the sixteen (16) year term, all payments shall be considered rent and forfeited to the Lessor. Lessee may finance the purchase price with Lessor by executing a promissory note for the purchase price, said to terms to be for payments over a period of ten (10) years with an interest accruing on the unpaid balance at a rate equal to the ten (10) year Treasury rate plus two and one-half percent (2.5%). There shall be no penalty for prepayment of the purchase price. The unpaid purchase price obligation owing to Lessor shall be secured by a mortgage against the subject property and any improvements thereon. Such sale shall be closed by a title company acceptable to the parties, and Lessee and Lessor shall share equally in the closing agent's fee and document preparation costs. Lessor shall be responsible to pay for any excise tax as well as the cost for a standard form owner's/purchaser's policy of title insurance to be issued by a title company acceptable to the parties. Title is to be conveyed by Statutory Warranty Deed free and clear of any encumbrances, excepting those usual and typical non-monetary encumbrances. Excepted from the transfer shall be a reservation of the life estate for the benefit of Tom Gray and Linda Gray on the portion of

Law Offices
LYON WEIGAND & GUSTAFSON PS
Lyon Law Offices - 222 North Third Street
P.O. Box 1689
Yakima, Washington 98907
Telephone (509) 248-7220
Fax (509) 575-1883

Assessor's Parcel No. 05-21-0400-0001/00 which contains the residence and that property immediately surrounding said residence. Tom Gray and Linda Gray shall be entitled to occupy the home for the reminder of their lives, or until such time as both Tom Gray and Linda Gray have vacated the home with no intention of ever returning to said home.

13. The terms and conditions of this agreement shall not be amended or modified except in writing signed by all parties hereto. This agreement is fully integrated and constitutes the entire agreement of the parties. There are no other agreements of these parties.

14. This agreement has been reviewed and approved by each of the parties after negotiation of the terms thereof. In the event it should be determined that any provision of this agreement is uncertain or ambiguous, the language in all parts of the agreement shall be in all cases construed as a whole according to the fair meaning of the agreement, and not strictly construed for or against any party.

15. This agreement is fully assignable by the Lessee to any entity of which the Lessee owns no less than fifty percent (50%).

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals the day and year first above written.

LESSOR:

ORVILLE THOMAS GRAY AND
LYNDA LEE GRAY LIVING TRUST

By: _____
    Orville T. Gray, Trustee

By: _____
    Lynda Lee Gray, Trustee

LESSEE:

_____
Rick T. Gray

FARM LEASE AGREEMENT - 8
10061-01\ja\gray tom\general\farm lease agreement

Law Offices
LYON WEIGAND & GUSTAFSON PS
Lyon Law Offices · 222 North Third Street
P.O. Box 1689
Yakima, Washington 98907
Telephone (509) 248-7220
Fax (509) 575-1883

EXHIBIT 4
Page 162 of 174

STATE OF _Arizona_ )
                                        ) ss.
County of _Maricopa_ )

On this day personally appeared before me Orville T. Gray and Lynda Lee Gray to me known to be the Co-Trustees of the ORVILLE THOMAS GRAY AND LYNDA LEE GRAY LIVING TRUST, to me known to be the individuals described in and who executed the within and foregoing instrument, and acknowledged that they signed the same as their free and voluntary act and deed, for the uses and purposes therein mentioned.

GIVEN UNDER MY HAND AND OFFICIAL SEAL this _13th_ day of _March_, 2017.

LORETTA STINES
Notary Public, State of Arizona
Maricopa County
My Commission Expires
November 28, 2020

_Linda Stines_
_Linda Stines_
(Print Name)
Notary Public in and for the State
of Washington, residing at _Sun City, AZ_
My commission expires _11/28/20_

STATE OF WASHINGTON )
                                        ) ss.
County of _Yakima_ )

On this day personally appeared before me Rick T. Gray, to me known to be the individual described in and who executed the within and foregoing instrument, and acknowledged that he signed the same as his free and voluntary act and deed, for the uses and purposes therein mentioned.

GIVEN UNDER MY HAND AND OFFICIAL SEAL this _24th_ day of _March_, 2017.


JOAN M ANNEN
NOTARY
My Comm. Expires
04/01/2018
PUBLIC
STATE OF WASHINGTON

_Joan M Annen_
_Joan M Annen_
(Print Name)
Notary Public in and for the State
of Washington, residing in _Yakima_
My Commission Expires: _04/01/18_

FARM LEASE AGREEMENT - 9
10061-01\ja\gray tom\general\farm lease agreement

Law Offices
LYON WEIGAND & GUSTAFSON PS
Lyon Law Offices · 222 North Third Street
P.O. Box 1689
Yakima, Washington 98907
Telephone (509) 248-7220
Fax (509) 575-1883

EXHIBIT 4
Page 163 of 174

# Exhibit B

# ASSIGNMENT OF LEASE

Rick T. Gray hereby assigns all of his right, title and interest in that certain real property lease with option to purchase dated effective January 1, 2014 between Rick T. Gray as lessee and Tom & Lynda Gray as lessor to Gray Land & Livestock, LLC. Rick T. Gray owns 100% of the membership interests in Gray Land & Livestock, LLC and thus this assignment is made pursuant to paragraph 15 of the Lease. This assignment is made without warranty or representation of any kind.

Dated this _17_ day of July, 2019

_Ricic 7. G_
_____
Rick T. Gray

STATE OF WASHINGTON    )
                       ) ss.
County of Yakima       )

I certify that I know or have satisfactory evidence that Rick T. Gray personally appeared before me, signed this instrument and acknowledged it to be his/her free and voluntary act for the uses and purposes mentioned in the instrument.

DATED: July _17_, 2019

_(Signature)_
(Signature)

_Brooke Maloney_
(Name legibly printed or stamped)
Notary Public in and for the State of
Washington residing at _Yakima_
My appointment expires _11/13/20_

(Seal or stamp)

*[Notary seal: BROOKE M MALONEY — NOTARY — My Comm. Expires November 13, 2020 — PUBLIC — STATE OF WASHINGTON]*

# Exhibit C

MATTHEW J. ANDERTON, LLM JD

Direct Dial  509/ 469-6648
Visit our offices at:
1424 West Summitview Avenue
Yakima, Washington  98902
Send mail to us at:
POBox 711
Yakima, Washington 98907

*Transmitted Via First Class Mail*
*And USPS Priority Express Mail to Each Addressee*

March 17, 2020

Lynda Lee Gray, Co-Trustee
c/o Lessor Representative
Attn Bryan P. Myre, Esq.
Lyon Law Office
POBox 1689
Yakima, Washington  98907

Lynda Lee Gray, Co-Trustee
c/o Lessor Representative
Attn Bryan P. Myer, Esq.
Lyon Law Office
222 North Third Street
Yakima, Washington  98901

Lynda Lee Gray, Co-Trustee
10619 West Crosby Drive
Sun City, Arizona  83851

Lynda Lee Gray, Co-Trustee
c/o Lessor Representative
POBox 1525
Prosser, Washington  99350

Re:     March 13, 2017 Farm Lease Agreement
        Orville Thomas Gray and Lynda Lee Gray
        Co-Trustees of the Orville T. Gray and Lynda Lee Gray Living Trust

        In re: Gray Land & Livestock, LLC
        Bkrtcy ED Washington
        (Case No. 19-00467-FPC11)

Dear Lynda Lee Gray, Lessor Representative, and Bryan Myer, Esq.:

Please be advised that Gray Land & Livestock, LLC, a limited liability company wholly owned by Rick T. Gray, hereby gives written notice of its intent to exercise the election to purchase the property subject to the Farm Lease Agreement with Option to Purchase (described above) (hereafter referred to as the "Lease Agreement").   See Section 12 at page 7 of said Lease Agreement.  The Lease Agreement was prepared by Bryan P. Myer, Esq. as representative of and on behalf of his clients Orville Thomas Gray, Lynda Lee Gray, and the Orville Thomas Gray and Lynda Lee Gray Living Trust.   Gray Land & Livestock, LLC has been assigned the lessee's interests in the Lease Agreement.  Gray Land & Livestock, LLC filed for relief under Chapter 11 of the United States Bankruptcy Code, and I represent the Chapter 11 Trustee, Matthew J. Anderton. The transaction will be consummated in accordance with applicable law.

Please have your representative contact me if you have any questions.  Thank you.

Very truly yours,

Anderton Law Firm

By:_____
        Matthew J. Anderton, Esq.

MJA/ms
Enclosure(s):  na

Cc:        Roger Bailey, Esq.
           Donald Boyd, Esq.
           Jayson Ayers, Esq.
           William Hames, Esq

# Exhibit D

JODY M. McCORMICK
*jmm@witherspoonkelley.com*
DIRECT – 509-755-2007

October 26, 2020

**Via First Class Mail**

Roger Bailey
Bailey & Busey PLLC
411 N. 2nd Street
Yakima, WA 98901

Gray Land & Livestock, LLC
P.O. Box 1525
Prosser, WA 99350-0833

Critical Point Advisors, LLC
Attn: Brian Birdsall
2626 School St,
Wenatchee, WA 98801

Jim Perkins
U.S. Dept. of Justice
920 W. Riverside Ave.
Suite 593
Spokane, WA 99201

Tara Scheicher
Foster Garvey P.C.
121 SW Morrison St.
11th Floor
Portland, OR 97204

Jason Ayres
Foster Garvey P.C.
121 SW Morrison St.
11th Floor
Portland, OR 97204

Bruce Medeiros
Davidson Backman Medeiros PLLC
601 W. Riverside Ave., Suite 1550
Spokane, Washington 99201

**Re:** ***NOTICE OF SETTLEMENT, In re Gray Land & Livestock, LLC, Case No. 19-00467-FPC11***

*TO: THE SERVICE LIST*

We are counsel to Critical Point Advisors, LLC ("Plan Agent/Trustee"), the Plan Agent as set forth in the confirmed Second Amended Plan of Liquidation (the "Plan") and the Trustee under the Grantor Trust Agreement (the "Trust Agreement") in the above titled case. Plan Agent/Trustee provides notice of settlement with Lynda Lee Gray and the Orville Thomas Gray and Lynda Lee Gray Living Trust dated September 18, 1995 (collectively, the "Parents' Trust") with respect to a Farm Lease Agreement with Purchase Option dated March 13, 2017. A copy of the proposed Settlement Agreement is enclosed herewith. Broadly, the settlement contemplates the following key elements:

- The 2017 Farm Lease Agreement will be rejected and replaced with a new Farm Lease Agreement that does not contain an option to purchase the property (the "New Lease");
- The Parents' Trust will disclaim any interest in casualty insurance proceeds of approximately $400,000.00 causing them to be retained by the bankruptcy trust;

- The Parents' Trust will withdraw its current $200,000.00 claim against the bankruptcy estate (part of which is claimed to be a general unsecured claim and part of which is claimed to qualify for administrative expense priority claim under 11 U.S.C. § 507(a)) and disclaims any right to payment from the bankruptcy estate, including a potential lease rejection claim for an additional $100,000.00, other than payments due under the New Lease and for 2nd half 2020 taxes paid;
- The Parents' Trust will convey 20,000 bushels of wheat to the bankruptcy trust, which had been previously abandoned by the bankruptcy estate to the Parents' Trust; and
- The Parents' Trust will pay $200,000.00 in cash to the bankruptcy trust.

**Please refer to the enclosed proposed Settlement Agreement for all terms and conditions of the settlement.**

Please take notice that CPA intends to enter into the Settlement Agreement with the Parents' Trust and to close the transaction contemplated therein <u>unless objection is made within fourteen (14) days of the date of this notice</u>. Your objection must be filed with the United States Bankruptcy Court for the Eastern District of Washington, 904 W. Riverside Avenue, Suite 304, Spokane, WA 99201 and served on the Plan Agent/Trustee at the address set forth above. Any objection must set forth the grounds for the objection.

This notice is provided pursuant to Section 5.1 of the Plan and Section 6.2 and 6.3 of the Trust Agreement.

Feel free to contact the undersigned with questions or concerns.

Sincerely yours,

WITHERSPOON • KELLEY

*Jody M. McCormick*

By:

Jody M. McCormick

JMM|dms
Enclosure

S2110276.DOCX

# SETTLEMENT AGREEMENT

This Settlement Agreement (this "**Agreement**") is dated as of _____, 2020 and is entered into between Critical Point Advisors, LLC ("**CPA**"), the Plan Agent as set forth in the confirmed Second Amended Plan of Liquidation (the "**Plan**") and the Trustee under the Grantor Trust Agreement (the "**Bankruptcy Trust**") in *In re Gray Land & Livestock, LLC* (the "**Debtor**"), Case No. 19-00467-FPC11 pending in the United States Bankruptcy Court for the Eastern District of Washington (the "**Bankruptcy**") and Lynda Lee Gray and the Orville Thomas Gray and Lynda Lee Gray Living Trust dated September 18, 1995 (collectively, the "**Parents' Trust**"). CPA and the Parents' Trust may be each referred to herein as a "Party," and collectively, as the "Parties."

## I.     <u>RECITALS</u>

A.     Part of CPA's duties in the Bankruptcy, under the Plan and under the Bankruptcy Trust is to pursue assets to be distributed to creditors of the Debtor and beneficiaries under the Bankruptcy Trust.

B.     In 2017, the Parents' Trust entered into a transaction with Rick T. Gray ("**Gray**"), which is characterized as a Farm Lease Agreement with Purchase Option (the "**Lease Agreement**") relating to 4170 acres of agricultural land (the "**Property**"). It is the position of the CPA that Gray assigned the Lease Agreement to the Debtor on July 17, 2019. The Parents' Trust disputes that the Lease Agreement was legally and effectively assigned to the Debtor. The Lease Agreement contains an option to purchase the Property on the death of Tom Gray. On January 22, 2020, Tom Gray died. It is the position of the CPA that on March 17, 2020, Debtor, through the Chapter 11 trustee, timely notified the Parents' Trust of its intention to exercise the option to purchase the Property. The Parents' Trust disputes that the Chapter 11 trustee's attempt to exercise the purchase option was legally effective and binding on the Parents' Trust and asserts that the Chapter 11 trustee did not have the legal authority or capacity to exercise the option to purchase. The Parents' Trust also takes the position that the Lease Agreement was rejected and terminated based on the Debtor's failure to timely assume the Lease Agreement as required by 11 U.S.C. Section 365(d)(4).

C.     CPA and the Parents' Trust dispute whether the Property is properly part of the Bankruptcy and the Bankruptcy Trust.

D.     On July 17, 2020, the Parents' Trust filed, in the Bankruptcy, a Proof of Claim in the amount of $200,000.00, part of which is claimed to be a general unsecured claim and part of which is claimed to qualify for administrative expense priority claim under 11 U.S.C. § 507(a) (the "**Claim**").

E.     On July 20, 2020, the Parents' Trust filed in the Bankruptcy a Motion for Allowance of Administrative Expenses Claim pursuant to 11 U.S.C. § 503(a) and Payment Thereof (the "**Motion**"). On August 13, 2020, CPA objected to the Motion (the "**Objection**").

F.     Effective as of August 20, 2020, CPA abandoned to the Parents' Trust, 20,000 bushels of wheat from the 2018 crop year with an approximate value of $100,000.00 (the "**2018 Wheat**").

G.     An insured residence on the Property burned in February of 2020.  Due to the casualty, Travelers Insurance Company paid the claim and issued a check payable to the Parents' Trust and the Debtor for the insurance proceeds in the amount of $396,807.78 (the "**Insurance Proceeds**").   The Parent's Trust takes the position that all of the insurance proceeds belong to the Parent's Trust/Lynda Gray.  The CPA disputes this contention.

H.     Under a Tolling Agreement between the Parties, the deadline to accept or reject executory contracts and leases under the Plan is October 18, 2020.  CPA intends to bring an adversary action against the Parents' Trust on or before said date to seek specific performance of the option to purchase the Property, a judicial determination that the Lease Agreement and the Property are part of the Bankruptcy and the Bankruptcy Trust and other relief as may be appropriate (the "**Adversary Proceeding**").

I.     The Parties entered into informal settlement discussions on September 9, 2020 during which the Parties agreed to the principle elements of a settlement of their dispute with respect to the Lease Agreement, the Property, the Claim, the Motion, the Objection, the Adversary Proceeding and Insurance Proceeds (collectively, the "**Dispute**").

J.     The purpose of this Agreement is to provide for the full settlement of claims of each against the other which were, or could have been, the subject of the Agreement, the Dispute.

## AGREEMENT

NOW THEREFORE, in consideration of their mutual covenants and benefits contained herein, the receipt and sufficiency of which are hereby acknowledged, and other good and valuable consideration, the Parties as follows:

1.     **REJECTION OF LEASE/NEW LEASE.** Upon satisfaction of the conditions to settlement set forth in Section 5 hereof: (a) CPA, as Plan Agent and Trustee of the Bankruptcy Trust, shall reject the Lease Agreement, including, but not limited to the Purchase Option, and transfer and surrender possession of all interests in the Property to the Parent's Trust, pursuant to CPA's powers set forth in Section 5.1 of the Plan thereby terminating the Lease Agreement, including, but not limited to the Purchase Option, and (b) the Parent's Trust and CPA shall execute a new lease for the Property in form and content set forth in Exhibit "A" hereto (the "**New Lease**").

2.     **CLAIMS.** Upon satisfaction of the conditions to settlement set forth in Section 5 hereof, the Parents' Trust agrees: (a) to withdraw the Claim; (b) to withdraw the Motion; (c) not to file a claim associated with CPA's rejection of the Lease Agreement under Section 5.2 of the Plan. For avoidance of doubt, after approval and performance of the terms of this Agreement by all parties to this Agreement, the Parents' Trust will be deemed to have waived any right to seek

19-00467-FPC11     Doc 385     Filed 11/13/20     Entered 11/13/20 15:58:59     Pg 25 of 66

any money, property, compensation or other benefit from the Debtor, the Bankruptcy estate or the Bankruptcy Trust except as specifically set forth in this Agreement.

3. **CONSIDERATION.** Upon satisfaction of the conditions to settlement set forth in Section 5 hereof, the Parents' Trust shall provide the following consideration to CPA as the trustee of the Bankruptcy Trust: (a) Two Hundred Thousand Dollars ($200,000.00) in U.S. Funds; (b) conveyance by bill of sale of the Parents' Trust's interest in the 2018 Wheat subject to any claims of Debtor's creditors in the 2018 Wheat; (c) waiver of the 2020 lease payment due under the Lease Agreement (which shall be deemed to have occurred upon the Closing without further need for evidence or documentation other than the Parents' Trust signature to this Agreement); and (d) endorsement of the Insurance Proceeds with the intent of such endorsement being a release of any claim that the Parents' Trust may have in the Insurance Proceeds; provided however, Lynda Gray reserves all rights, if any, to recover or receive proceeds separately under the Traveler's Insurance Company policy referenced above for any of her personal property contents, which were located in the property that was burned as reference above in paragraph G.

4. **TERMINATION OF LEASE AGREEMENT.** Upon satisfaction of the conditions to settlement set forth in Section 5 hereof, the Parties mutually agree that the Lease Agreement, and the option contained therein, shall be terminated effective upon Closing. To evidence said termination and surrender of the Property to the Parent's Trust, a quit claim deed conveying any interest in the Property, including but not limited to interests under the Lease Agreement and purchase option contained therein, to the Parents' Trust held by CPA, the Trust or the Debtor for purposes of clearing title to the Property, in form and content set forth in Exhibit "B" hereto. For all purposes the Quit Claim Deed shall be deemed delivered prior to the New Lease irrespective of the time of recording the Quit Claim Deed of the Memorandum of Lease (described below). Nothing in the Quit Claim Deed shall be deemed to include CPA's rights under or interest in the Property set forth in the New Lease.

5. **CONDITIONS TO SETTLEMENT.** Neither party shall be bound by this Agreement unless signed by both Parties, the service list in the Bankruptcy has been notified of this Agreement without objection thereto and/or Bankruptcy court approval has been obtained, if necessary. In the event Bankruptcy court approval is necessary the Parties shall cooperate in obtaining such approval. The Parties entering into this Agreement shall not be construed as a waiver of any position taken or a position that could have been taken in the Bankruptcy or in the Adversary Proceeding. In the event the conditions to settlement are not met and the terms of this Agreement are not preformed and completed, the Parties reserve all rights and remedies such Parties may have at law and in equity and the contents of this Agreement shall not be construed against any Party.

6. **CLOSING.** Within ten (10) business days of the conditions to settlement set forth in Section 5 hereof, the closing of the transaction contemplated by this Agreement (the **"Closing"**) shall occur at the office of counsel for the Parents' Trust where the following documents or items shall be delivered:

a. The Parents' Trust shall deliver the following to CPA or its counsel:

Settlement Agreement
Page 3 of 10
S2110104.DOCX

i. An original counterpart of the New Lease executed by the Parents' Trust;
ii. A cashier's check in the amount of $200,000.00 payable to CPA as the Trustee of the Bankruptcy Trust;
iii. An original bill of sale conveying the Parents' Trust's interest in the 2018 Wheat subject to any claims of Debtor's creditors in the 2018 Wheat;
iv. An endorsement to Insurance Proceeds check;
v. A copy of a counterpart of the memorandum of lease in form and content set forth as <u>Exhibit "C"</u> hereto executed (before a notary public) by the Parents' Trust (the "Memorandum of Lease"); and
vi. Evidence of the amount and payment of the second half of the 2020 real property taxes relating to the Property.

b. CPA, as Plan Agent and Trustee of the Bankruptcy Trust, shall deliver the following to the Parents' Trust or its counsel:
i. An original counterpart of the New Lease executed by CPA;
ii. A written rejection of the Lease Agreement and surrender of all interests in the Property as provided above pursuant to CPA's powers set forth in Section 5.1 of the Plan signed by the CPA pursuant to the CPA's powers set forth in Section 5.1 of the Plan and as Trustee of the Bankruptcy Trust;
iii. The Quit Claim Deed executed by CPA pursuant to the CPA's powers set forth in Section 5.1 of the Plan and as Trustee of the Bankruptcy Trust with a corresponding excise tax affidavit;
iv. An original counterpart of the Memorandum of Lease executed (before a notary public) by CPA; and
v. A check payable to Lessor in the amount equal to the second half of the 2020 real property taxes relating to the Property paid by Lessor.

Within two (2) business days of the Closing, counsel for the Parents' Trust shall file with the Bankruptcy Court a withdrawal of the Claim in the form prescribed by the Bankruptcy court and shall withdraw the Motion. Counsel for the Parents' Trust shall cause the Quit Claim Deed and the Memorandum of Lease (in that order) to be recorded with Klickitat County, Washington Auditor.

7. **SETTLEMENT AND COMPROMISE.** This Agreement is a full and complete compromise and settlement of any and all claims known or unknown between Parties to the date of this Agreement relating to or involving the Dispute, except for the obligations and rights created by or arising out of this Agreement and any other documents executed in compliance with this Agreement, including, but not limited to the New Lease.

8. **RELEASE OF CLAIMS.** Upon Closing and the filing of the pleadings contemplated by Section 6, the following release will become effective:

8.1 The Parties, on their behalf and on behalf of their past, present and future descendants, heirs, partners, parent and subsidiary corporations, affiliates, joint ventures, stockholders, officers, directors, employees, predecessors, successors, assigns, agents and representatives, and each of them, hereby release and forever discharge each other, and their

Settlement Agreement
Page 4 of 10
S2110104.DOCX

past, present and future descendants, heirs, partners, parent and subsidiary corporations, divisions, affiliates, partners, joint ventures, stockholders, predecessors, successors, assigns, officers, directors, employees, agents, representatives and any other person, firm or corporation with whom any of them is now or may hereafter be affiliated, from any and all claims, demands, obligations, losses, causes of action, whether in law or equity, costs, expenses, attorneys' fees, liabilities and indemnities of any nature whatsoever, whether based on contract, tort, statute or other legal or equitable theory of recovery, whether known or unknown, which, as of the date of this Agreement, that each now has, or claims or may claim to have against the other, in any way related, directly or indirectly, to the Dispute, EXCEPT for the each Party's obligations under this Agreement and the documents delivered pursuant to this Agreement, including, but not limited to the New Lease.

8.2     The general release set forth above specifically includes any and all claims, demands, obligations and/or causes of action for contract, statutory, compensatory and/or exemplary damages and/or other relief relating to or in any way connected with the Dispute, whether or not now known or suspected to exist and whether or not specifically or particularly described herein or therein. Each Party expressly waives any right to claim or right to assert hereafter, that any claim, damage, obligation and/or cause of action has, through ignorance, oversight or error, been omitted from the terms of this Agreement.

8.3     The general release set forth above expressly excludes the Parties' obligations under this Agreement and the documents delivered pursuant to this Agreement, including, but not limited to the New Lease.

8.4     It is understood and agreed by and between the Parties that other damages not now known may develop or be discovered, or other consequences or other results may develop or be discovered, and this Agreement is specifically intended to cover and include, and does cover and include, all such future damages or future consequences or results of known or unknown damages.

9.     **BINDING EFFECT**.  This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, personal representatives, legal representatives, agents, attorneys, successors and assigns.

10.     **ENTIRE AGREEMENT.** This Agreement and the documents delivered pursuant to this Agreement represent the entire agreement among the Parties, and there is no agreement, either oral or in writing, which modifies the terms of this Agreement or the documents delivered pursuant to this Agreement. No statement, promises or inducements made by any Party or any agent of any Party that is not contained in this written Agreement or the documents delivered pursuant to this Agreement shall be valid or binding. Any enlargement, modification or alteration of this Agreement is binding only if executed in writing and signed by all Parties hereto.

11.     **REPRESENTATION.**  The Parties have had the opportunity to review this Agreement and acknowledge that they fully understand and agree to the contents herein. The

19-00467-FPC11     Doc 385     Filed 11/13/20     Entered 11/13/20 15:58:59     Pg 28 of 66

Parties have had the opportunity to consult with their own attorneys concerning this Agreement and have not entered into this Agreement under any undue influence.

12. **RULES OF CONSTRUCTION**.

12.1    Each party and counsel for each party have reviewed this Agreement and accordingly the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement.

12.2    In the event that one or more of the provisions or portions hereof, of this Agreement is determined to be illegal or unenforceable, the remainder of this Agreement shall not be affected thereby, and each remaining provision or portion thereof shall continue to be valid and effective and shall be enforceable to the fullest extent permitted by law.

12.3    This Agreement is entered into in the State of Washington and shall be construed and interpreted in accordance with its laws.

13. **INCORPORATION OF RECITALS.** The recitals set forth in Paragraphs A through J above are true and are incorporated into the substantive provisions of this Agreement.

14. **COUNTERPARTS.** This Agreement shall be executed in duplicate originals. Each duplicate original shall be deemed an original, but both duplicate originals shall together constitute one and the same agreement.

15. **EFFECTIVE AGREEMENT.** This Agreement may be pleaded as a full and complete defense to, and may be used as the basis for, an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in challenge of or in breach of this Agreement.

16. **ATTORNEYS' FEES.** If a Party shall default under or breach any term or condition of this Agreement, such Party agrees to pay on demand all costs and expenses of the non-breaching party in connection with said default or breach by the breaching Party, including all attorneys' fees, costs and expenses incurred by the non-breaching Party in enforcing any term or provisions of the Agreement whether through litigation, dispute resolution or otherwise. Such fees, costs and other expenses shall include without limitation all costs and disbursements, all costs associated with discovery, depositions and expert witness fees, and all out-of-pocket costs incurred by the non-breaching party in the prosecution or defense of any action. For purposes of this section, the phrase "litigation or other dispute resolution" shall be deemed to include any proceeding commenced in the Bankruptcy, any court of general or limited jurisdiction, any arbitration or mediation, any proceeding commenced in the bankruptcy courts of the United States, and any appeal from any of the foregoing.

[Signatures Appear on Subsequent Page.]

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed on the day and year first written above.

CPA:

CRITICAL POINT ADVISORS, LLC, AS
PLAN AGENT AND TRUSTEE

By:_____
    Brian Birdsall, its principal

PARENTS' TRUST:

_____
Lynda Lee Gray

Orville Thomas Gray and Lynda Lee Gray
Living Trust dated September 18, 1995

By:_____
Lynda Lee Gray, Trustee

Settlement Agreement
Page 7 of 10
S2110104.DOCX

Exhibit "A"

New Lease

# FARM LEASE AGREEMENT

| | |
|---|---|
| Grantor (Lessor): | Orville Thomas Gray and Lynda Lee Gray Living Trust dated September 18, 1995 |
| Grantee (Lessee): | Gray Land and Livestock Trust under Trust Agreement dated June 19, 2020 (the "Bankruptcy Trust") |
| Legal Description (abbreviated): | Ptns of Sections 2, 3, 4, 12, 13 & 14 in Township 5, Range 21; and Ptns of Sections 33, 34 and 35 in Township 6, Range 21; A complete legal description is set forth on Exhibit A hereto. |
| Assessors Tax Parcel ID#: | 05-21-0200-0001/00; 05-21-0300-0001/00; 05-21-0400-0001/00; 05-21-1100-0000/00; 05-21-1200-0002/00; 05-21-1300-0002/00; 05-21-1400-0001/00; 06-21-3300-0002/00; 06-21-3400-0000/00; 06-21-3500-0001/00; and 06-21-3300-0000/00 |

## I.     Parties

1.1     <u>Lessor</u>.  Orville Thomas Gray and Lynda Lee Gray Living Trust dated September 18, 1995 ("<u>Lessor</u>").

1.2     <u>Lessee</u>.  Gray Land and Livestock Trust under Trust Agreement dated June 19, 2020 ("<u>Lessee</u>")

## II.     Lease

2.1     <u>The Property</u>.  The property is located in the County of Klickitat, State of Washington, more particularly described as follows:

See Exhibit A attached hereto and by this reference incorporated herein.

2.2     <u>Agreement to Lease</u>.  Lessor agrees to lease to Lessee and Lessee agrees to lease from Lessor the property legally described on Exhibit A, except for the portion of the Property and all outbuildings, improvements and structures thereon, that are depicted on the photograph/diagram as Exhibit B, consisting of approximately eleven (11) acres (hereinafter collectively referred to as the "<u>Reserved Property</u>"), which are not included in this Lease and are specifically reserved for the exclusive use and possession of the Lessor and its heirs, executors, administrators, successors and assigns (such legally described property without the Reserved Property is herein referred to as the "<u>Property</u>").  Lessee shall have no right under this Lease or otherwise, to access or otherwise the Reserved Property during the term of this Lease without the prior written consent of the Lessor.  Lessor shall also have the right to enter the Property and place a memorial monument on the Property at the location shown on the photograph/diagram as Exhibit C.  Lessor and its heirs, executors, administrators, successors and assigns will have reasonable access to the memorial with prior notice given to the Lessee.  Lessee agrees that Lessee has inspected the Property prior to entering

into this Lease and Lessee hereby accepts the Property without any representation by Lessor as to the tenantability or farmability of the Property.

2.3    <u>Term of Lease</u>. The initial term of this Lease shall be for ten years (10) years, commencing _____, 2020 and ending _____, 2030.

2.4    <u>Rental</u>. Rent shall be determined as follows:

(a)    for the 2,200 tillable acres, the annual rent shall be (i) a minimum of Twelve and 60/100 Dollars ($12.60) per tillable acre or $27,720.00 per year for the first five (5) years of this Lease, beginning _____, 2020, and ending _____, 2025 and Thirteen and 23/100 Dollars ($13.23) per tillable acre or $29,106.00 per year for the second five (5) years of this Lease, beginning _____, 2025, and ending _____, 2030 (the rent set forth in this subsection (a)(i) shall be referred to as the "Minimum Tillable Rent"); *plus* (ii) 30% of all proceeds from the crops grown upon the Property during the term of this Lease *less* the Minimum Tillable Rent paid by Lessee; *plus* (iii) 30% of any Federal Farm Service Agency wheat crop program payments, any Conservation Reserve Program (CRP) payments, any crop insurance proceeds (after deduction for any crop insurance premiums) *less* the Minimum Tillable Rent paid by Lessee; and

(b)    for the 1,904.38 of non-tillable acres, the annual rent shall be Six and 30/100 Dollars ($6.30) or $11,997.59 per year for the first five (5) years of this Lease, beginning _____, 2020, and ending _____, 2025 and Six and 62/100 Dollars ($6.62) per non-tillable acre or $12,607.00 per year for the second five (5) years of this Lease, beginning _____, 2025, and ending _____, 2030 (the rent set forth in this subsection (b) shall be referred to as the "Non-Tillable Rent").

Rent shall be payable in U. S. currency and paid as follows:

(x)    The Minimum Tillable Rent and the Non-Tillable Rent shall be paid on or before _____ 1, 2020 and thereafter on or before the first of _____ for each year thereafter.

(y)    Rent payable under subsection 2.4(a)(ii) shall be determined as follows: the crops grown during the year shall be sold by Lessee at the nearest public warehouse (or at Lessee's request, other warehouse acceptable to Lessor) free and clear of all encumbrances at the then prevailing crop prices after warehouse fees, taxes and government assessments on the crop, with the amount due under subsection 2.4(a)(ii) remitted to Lessee within fifteen (15) days of Lessee's receipt of such crop proceeds. At the same time, Lessee shall provide to Lessor evidence of the total crop sold, total proceeds received and the Lessee's calculation of the amount due Lessor under subsection 2.4(a)(ii).

(z)    The rent payment due under subsection (a)(iii) shall be made within fifteen (15) days of Lessee's receipt of such payment or proceeds. Nothing in this Lease shall be deemed to require the Lessee to apply for or enroll in any governmental program, which shall be applied for or enrolled in Lessee's sole and absolute discretion.

2.5    <u>Interest on Delinquent Payments</u>. In the event of nonpayment of rent by Lessee to Lessor in the full amount and at the time(s) required by this Lease, with such nonpayment continuing for more than ten (10) days after due, then the full amount of delinquent rent, without notice or demand, shall

19-00467-FPC11    Doc 385    Filed 11/13/20    Entered 11/13/20 15:58:59    Pg 33 of 66

commence to bear interest from the due date at a rate of twelve percent (12%) per annum until paid in full; provided, however, that in the event such interest rate is usurious, interest shall accrue at the highest rate provided by law. No default on account of delinquent rent payment(s) shall be cured until the interest required by this paragraph is paid in addition to the delinquent rent payment(s).

2.6    Growing and Harvesting Costs.  Lessee shall pay all expenses and production costs for growing and harvesting the crops from the Property, including, as additional rent hereunder, irrigation assessments thereon. Lessee shall be required to perform, and pay for as additional rent hereunder, any day to day maintenance and repair to the Property, including repairs, acquisitions, and replacement of assets. Lessee shall winterize the Property.

2.7    Taxes and Utilities.  As additional rent hereunder, Lessee shall timely pay all real property taxes on the Property during the term of this Lease; provided that Lessor shall pay the portion of the real property taxes associated with the Reserved Property as mutually agreed by Lessor and Lessee.  If Lessor and Lessee cannot mutually agree on the real property taxes associated with the Reserved Property, a certified public accountant acceptable to both Lessor and Lessee shall determine the appropriate amount of said real estate taxes.  Lessee shall pay its portion of the real property taxes on the Property, as set forth above, within fifteen (15) days of receiving a copy of such tax statement showing the portion of real property taxes which Lessor has calculated are Lessee's portion.  As additional rent hereunder, Lessee shall be responsible for all utility charges and water assessments for Lessee's farming and other operations on the Property hereunder.  In addition, Lessee shall pay a flat monthly charge of $35 to Lessor for the electricity for the pump that is located on the Reserved Property that provides water for the two (2) watering troughs, one on the Property and one on the Reserved Property.  Lessee shall pay all personal property taxes assessed against Lessee's personal property located on the Property.

2.8    Use of Property and Lessor's Right of Entry.  The parties understand and agree that the Property has historically been used to produce wheat and row crops and for livestock grazing.  The parties further understand and agree that Lessee may convert the farm property to other crops or Government crop programs, i.e. CRP program.  The Lessee may not develop or place wind or solar power on the Property, or place any such wind or solar power equipment on the Property.  This Lease does not transfer to Lessee any mineral or hunting rights for the Property and Lessee may not do anything to the Property for the purpose of accessing minerals on the Property.  Lessor and Lessor's agents may enter the Property and any outbuildings or structures thereon at reasonable times for the purpose of inspecting the Property so long as growing crops and Lessee's use of the Property for the purposes allowed hereunder are not unreasonably interfered with.

2.9    Use of Structures, Outbuildings and Water.  Other than the Reserved Property, Lessee may, at the option of Lessee, utilize structures and outbuildings located on the Property for storage, operations, other than housing of staff, provided that Lessee shall be responsible for all costs and maintenance associated with such uses, including utilities associated with such uses, Lessee shall comply with all applicable laws, rules, and regulations for such use.  In addition, Lessee shall maintain and repair as necessary, or pay for the maintenance and repair of the pump for the well that provides water for the trough on the Property, as referenced in paragraph 2.7. Lessor shall determine when maintenance and repairs are necessary and provide Lessee with written notice of such required maintenance or repairs.  Lessee shall have three (3) business days to arrange for such repairs and maintenance, and an additional five (5) days for completion of such repairs or maintenance, after which time Lessor may have such repairs and/or

19-00467-FPC11    Doc 385    Filed 11/13/20    Entered 11/13/20 15:58:59    Pg 34 of 66

maintenance done and Lessee shall reimburse Lessor for the cost of such repairs or maintenance within seven (7) days after receiving a copy of the invoice for such repairs or maintenance. Lessee shall take reasonable steps to insure that grazing livestock use only the trough on the Property and not use the trough on the Reserved Property. Lessee shall not use the water supplied for the trough on the Property for anything other than to fill the trough on the Property for use by grazing livestock. Lessee shall not be permitted to transport water from the trough on the Property to other places on the Property or otherwise.

2.10 <u>Improvements; Equipment</u>. Lessee shall obtain Lessor's written consent before making or installing any improvements in excess of $10,000.00 on the Property; provided however, repairs or maintenance of the existing improvements on the Property shall not be subject to the foregoing limitation. As to improvements so allowed by Lessor, Lessee shall provide and pay for any and all capital improvements necessary for Lessee's farming operations on the Property, including without limitation, fencing, irrigation systems, and other improvements installed on the Property by Lessee ("<u>Lessee's Improvements</u>"), which Lessee's Improvements shall be owned by Lessee. Lessee shall provide for all equipment necessary for Lessee's farming operations at the Property. During the term of this Lease, Lessee shall have the right to remove from the Property any and all equipment brought on to the Property and owned by Lessee, at any time, from time to time, at Lessee's sole discretion. Upon termination of this Lease, Lessee's Improvements shall be disposed of as provided in Section 3.4. All equipment or Lessee's Improvements placed on the Property by the Lessee or during the term of this Lease shall be placed there at the sole risk of the Lessee and Lessor shall not be liable or responsible to Lessee or to any other person for injury, loss or damage to the such equipment or Lessee's Improvements or to any person on the Property during the term of this Lease.

2.11 <u>Farming Practices</u>. During the term of this Lease, Lessee shall care for and maintain the Property other than the Reserved Property, in a neat, orderly, and sanitary condition and in good repair, shall allow no unlawful occupation or condition thereon, and shall suffer or commit no waste of the Property or any part thereof. During the same period, Lessee shall properly and timely fertilize (for portions of the Property planted in crops) spray, irrigate, control all pests, and in general care for the Property and shall grow, raise, produce and market and sell the crops to be grown on the Property each year in a first class husbandry-like manner and according to the best standards of farming prevailing in the district and in accordance with all local, state and federal laws, rules and regulations.

2.12 <u>Crop Ownership</u>. The parties expressly agree and acknowledge that Lessee shall be the sole owner of any crops and crop proceeds resulting from crops grown, growing and harvested from the Property during the term of this Lease. Lessor waives any landlord's or other statutory lien on the crops, grown, growing or harvested from the Property, except liens allowed for non-payment of rent hereunder allowed by applicable statute subject to any financing lien contemplated in Section 2.13 of this Lease.

2.13 <u>Financing and Crop Liens</u>. It is understood and agreed that Lessee shall have full power and responsibility to arrange for crop financing secured by Lessee's interest in the Lessee's Improvements to the Property and all crops grown by Lessee as may be deemed advisable at the sole discretion of Lessee. Lessee may not grant a security interest or lien of any kind in the Lessee's interest in this Lease, without obtaining prior written consent of the Lessor. Lessee may give valid first priority crop liens and security interests therein to secure such financing for Lessee's farming operations on the Property, provided, however, that Lessee shall discharge, pay and satisfy all liens or encumbrances which may be filed or recorded against the crop and the Lessee's Improvements to the Property by Lessee, at Lessees own cost

and expense, within a reasonable time, but not to exceed sixty (60) days after the sale of such crop upon which such liens are placed and sixty (60) days after payment of any financing for the installation of such Lessee's Improvements. Lessee has no authority hereunder to grant any liens or security interests in the Property.

2.14  Lessor's Right to Encumber Property. Lessor may encumber the Property by mortgage or otherwise securing such sum or sums and upon such terms and conditions as Lessor may desire, without the consent of or communication with Lessee regarding such encumbrance or mortgage.

2.15  Liability Insurance. Lessee agrees to maintain in full force and effect during the term of this Lease a liability insurance policy covering all Lessee's operations on the Property in an amount not less than Two Million Dollars ($2,000,000.00). All premiums for said insurance shall be paid when due by Lessee. Said policy shall name Lessor as an additional insured, and a certificate of such policy or policies and renewals thereof shall be provided to Lessor on demand. Each such policy of insurance shall contain an endorsement providing that it may not be canceled or modified without ten (10) days' prior written notice from the insurance carrier to Lessor. Lessor may continue to hold its own insurance on the Property at its sole cost and expense.

2.16  Indemnity/Hold Harmless. Lessee agrees that at the sole option of Lessor, Lessee shall either indemnify or shall defend and hold Lessor and its officers', employees, contractors, and agents harmless from all claims for damages to persons or property occurring on the Property during the term of the Lease, or arising out of or in connection with Lessees possession, use, occupation, or operation of the Property, excepting damages caused by the negligence or willful misconduct of Lessor or its agents, employees or invitees. Lessee waives its immunity under industrial insurance, Title 51 RCWJ to the extent necessary to effectuate this indemnification / hold harmless agreement.

2.17  Lessee's Compliance with Environmental Laws. Lessee shall not use or permit the premises to be used, in a manner that violates any applicable federal, state or local environmental law, regulation, or ordinance now or hereafter in force. This includes, but is not limited to, any law, regulation, or ordinance pertaining to air or water quality or emissions; the handling, transportation, storage, treatment, usage or disposal of toxic or hazardous substances; or any other environmental matters. Such compliance shall be at the sole cost and expense of Lessee, its agents, employees, contractors or invitees. Lessee shall immediately notify Lessor of any spills, releases, or other potential failures to comply with applicable environmental laws and regulations and of any inspections, notices, orders, fines or communications originating from environmental regulatory agencies. Lessor, its officers, employees, contractors, or agents, shall have the right, but not the duty to inspect the premises, including Lessee's records pertaining to environmental compliance with applicable environmental laws and regulations and this Lease. If Lessee is found to be in violation of this Lease or any applicable environmental law or regulations, or if environmental contamination is detected, Lessee shall be responsible for all costs associated with such contamination or noncompliance.

2.18  Lessees Environmental Indemnification/Hold Harmless. Lessee agrees that at the sole option of Lessor, Lessee shall either indemnify and/or shall defend and hold Lessor and its officers, employees, contractors and agents harmless from all costs or liabilities arising from any environmental contamination or noncompliance with any applicable federal state or local environmental law, regulation or ordinance now or hereafter in force resulting from the operations of Lessee, its agents, employees,

19-00467-FPC11    Doc 385    Filed 11/13/20    Entered 11/13/20 15:58:59    Pg 36 of 66

contractors or invitees. This indemnification and/or hold harmless includes, without limitation, all claims, judgments, damages (including natural resource damages), penalties, fines and costs incurred in connection with any site investigation to determine the presence or extent of any contamination, as well as the costs of any cleanup, removal or remedial work, whether or not it is required by any regulatory agency. Such costs shall include reasonable environmental consultants and attorney fees. This indemnification/hold harmless clause shall not apply to any action or omission of Landlord, its officers, employees, contractors or agent, but shall survive the expiration or earlier termination of this Lease.

## III. Termination of Lease

    3.1    <u>Cancellation, Termination or Default</u>. Time is of the essence. If Lessee shall default with respect to any of the provisions of this Lease, Lessor, shall provide Lessee with written notice of such default, including, but not limited to, any breach of the rental terms or conditions of this Lease, and Lessee shall have ten (10) days to pay any monetary default or thirty (30) days to correct any non-monetary default. If the default is a non-monetary default and Lessee has not commenced and diligently pursued good faith efforts to correct the non-monetary default within thirty (30) days following the effective date of the notice of such default, Lessor or others designated by Lessor may enter the Property without further notice to Lessee and perform such work or cause the same to be performed as is necessary to correct the defaulting condition. The expense thereof shall be repaid to Lessor by Lessee within three (3) days following notice to Lessee thereof as additional rent hereunder. At the sole discretion of Lessor, Lessor and Lessee may alternatively reach an agreement on a reasonable time to complete the correction of a non-monetary default. If Lessee fails to cure a default within the time periods provided herein or otherwise agreed upon, Lessor shall at the expiration of said cure period, without further notice, be deemed to have declared a forfeiture of this Lease, this Lease shall terminate, and Lessor may immediately take possession and control of the Property and all crops growing and stored thereon, subject to existing validly perfected liens on such crop, with or without process of law. Lessee shall in such case immediately vacate the Property. If Lessee fails to do so, Lessor shall have the right to eject or remove Lessee and any other person or persons on the Property. Lessor shall have the further right to remove any property of Lessee located on the Property and place the same in storage at the expense of the Lessee. Lessor may, following the taking of possession, harvest or cause to be harvested any crops then growing on the Property and retain such crop, subject to existing properly perfected liens against such crop, and relet the Property, or any portion thereof, upon such terms as Lessor shall determine, without any obligation to pay or reimburse Lessee for any expense incurred by Lessee prior to such forfeiture and termination. Lessor may elect to enforce the terms and conditions of this Lease by any method available under law or in equity, including, but not limited to, Lessor declaring a forfeiture of the Lease as provided herein. All of Lessor's remedies are cumulative and are not mutually exclusive and may be exercised in conjunction with each other.

    3.2    <u>Early Termination by Lessee</u>. Only with twelve (12) months prior written notice of the election for early termination by Lessee and absent default, this Lease may be terminated upon the termination date provided for in such notice, and Lessee covenants and agrees that upon termination, Lessee will at once peacefully surrender and deliver up the whole of the Property to Lessor, Lessors agents or assigns. If Lessee elects such early termination, upon termination after notice and running of the notice period as required herein and absent default, Lessee shall have no further obligations on this Lease other than those obligations that expressly survive termination of this Lease. Lessee will return the Property in like condition as it was at the beginning of the term. In the event of such early termination by Lessee,

Lessee's Improvements shall be disposed of as provided in Section 3.4. Lessee's right to terminate this Lease pursuant to this Section may not be exercised by Lessee prior to December 15, 2021.

      3.3    <u>Termination by expiration of Lease Term</u>. Upon termination of the ten (10) year term of this Lease, the parties may agree upon an extension of this Lease, provided that Lessee has provided Lessor with sixty (60) days written notice of Lessee's intent to request an extension of this Lease, or may propose a different or modified Lease to begin upon expiration of the original ten (10) year term of this Lease. Lessor shall have no obligation to extend or otherwise modify this Lease or to enter into a new lease for the Property with Lessor. In the event the parties fail to enter into a new lease or an extension of this Lease prior to expiration of the ten (10) year term of this Lease, this Lease shall terminate. Lessee covenants and agrees that upon termination, Lessee will at once peacefully surrender and deliver up the whole of the Property to Lessor, Lessor's agents or assigns. Lessee will return the Property in like condition as it was at the beginning of the term, reasonable wear and tear excepted. In the event of termination, Lessee's Improvements shall be disposed of as provided in Section 3.4.

      3.4    <u>Disposition of Lessee's Improvements</u>. Upon the expiration, or earlier termination of the Lease, including termination pursuant to Sections 3.2 and 3.3, Lessee shall determine in its sole discretion which of Lessee's Improvements will be made available for Lessor to purchase and retain with the Property as provided by this Section. Lessee shall provide Lessor with a written list of all such Lessee's Improvements available for Lessor's purchase hereunder.

      Upon receipt of Lessee's list of available Lessee's Improvements for purchase and retention by Lessor, Lessor may elect one of the following options: (a) Lessor may purchase such Lessee's Improvements from Lessee for a purchase price to be agreed upon by Lessee and Lessor; or (b) as to Lessee's Improvements that are not purchased by Lessor, Lessee shall remove such Lessee's Improvements that may be physically moved without destroying the Property, and in no case later than, sixty (60) days after expiration of the Lease, provided that, only with the written consent of the Lessor, Lessee may be allowed to abandon such Lessee's Improvements and any improvements remaining thereafter shall belong to Lessor. Unless otherwise agreed between the parties, the purchase price for the Lessee's Improvements shall be due and payable in cash to Lessee within sixty (60) days of establishing the agreed upon purchase price. If Landlord fails to pay the agreed purchase price within said sixty (60) day period, Lessee shall have another sixty (60) days to remove said Lessee Improvements.

      Further provided that Lessor may assign or otherwise transfer its purchase rights as to the Lessee's Improvements to a third party.

## IV.    **Further Provisions**

      4.1    <u>Service of Notices</u>. All notices shall be in writing. All notices to be given to a party may be delivered by U.S. Mail postage prepaid or by electronic means (fax, email, or otherwise), addressed to the party's address or transmitted to the designated contact info listed under each party's signature below. Such notice is delivered by U.S. Mail or by electronic means, notice shall be deemed delivered seventy-two (72) hours after mailing or transmission.

      4.2    <u>Savings Clause</u>. Nothing in this Lease shall be construed so as to require the commission of any act contrary to law, and wherever there is any conflict between any provision of this Lease and any

material statute, law, public regulation or ordinance, the latter shall prevail but in such event the provisions of this Lease affected shall be curtailed and limited only to the extent necessary to bring it within legal requirements.

4.3    Waiver.  Provisions of this Lease may not be waived or changed except in a writing signed by the party against whom enforcement of the waiver or change is sought.  No waiver of breach or other provision shall constitute a subsequent waiver of such breach or provision.  If any provision of this Lease or the application thereof to any person or circumstance shah be invalid, illegal, or unenforceable to any extent, the remainder of this Lease and the application thereof shall not be affected and this Lease shall be construed and enforced to the fullest extent possible so as to accomplish the original intent of the parties as reflected by the documents as drafted.

4.4    Assignment.  Lessee may only assign, sublet or otherwise transfer this Lease, including, but not limited to its interest, rights and obligations under this Lease, in whole or in part or sublease the Property or any portion thereof to a third-party with the previous written consent of Lessor, which consent shall not unreasonably be withheld.  Lessee and Lessor agree that an assignee without sufficient financial resources to perform under this Lease or a sublease is a reasonable basis to withhold consent to assignment.  Lessee and Lessor also agree that it is unreasonable to withhold consent to a sublease by the Bankruptcy Trust as the original Lessee only and where the Bankruptcy Trust as the original Lessee (and not an assignee of the Bankruptcy Trust as the original Lessee) remains fully liable to Lessor under this Lease.  Any sublease by any Lessee other than the Bankruptcy Trust as the original Lessee shall require the prior written consent of the Lessor.  Upon the completion of an assignment of this Lease, the previous Lessee who assigned this Lease to a new Lessee who is bound hereunder shall have no further obligations under this Lease and shall otherwise be released from liability under this Lease.

4.5    No Joint Venture.  This Lease is not a joint venture agreement.

4.6    Entire Agreement and Successors.  This Lease contains the entire agreement between the parties relating to the subject matter hereof and supersedes any prior agreements, written or oral, with respect to the same subject matter.  This Lease may not be modified or amended except by written agreement executed by the parties hereto.  This Lease shall be binding upon the parties, their heirs, executors, administrators, successors and assigns, and they do agree for themselves, their heirs, executors, administrators, successors and assigns, to execute any instrument and to perform any acts reasonably necessary to effectuate this Lease and its purposes.

4.7    Interpretation: Captions and Construction.  Where the context permits, references to the singular shall include the plural and vice versa, and to the neutral shall include the feminine and masculine. Use of the word "may" shall denote an option or privilege and shall impose no obligation upon the party which may exercise such option or privilege; use of the word "shall" shall denote a duty or an obligation. The captions in this Lease are for the convenience of the reader and are not to be considered in the interpretation of its terms.

4.8    Memorandum of Lease.  Lessor and Lessee agree that this Farm Lease Agreement shall not be placed of record.  Either party may execute and place of record an instrument, in recordable form, referencing this lease, the parties to this Lease, the Property governed by this Lease, the commencement date and expiration date of this Lease.

4.9     Counterparts.  This Lease may be executed in one or more counterparts, each of which shall be deemed to be an original but all of which together shall constitute one and the same instrument.

4.10     Authority to Sign.  The parties signing this instrument hereby acknowledge that they are authorized to execute the instrument on behalf of the entities they are signing for and acknowledged it to be the free and voluntary act of such parties for the uses and purposes mentioned in the instrument.

4.11     Attorney's Fees and Costs, Jurisdiction and Venue.  If a party shall default under or breach any term or condition of this Lease, such party agrees to pay on demand all costs and expenses of the non-breaching party in connection with said default or breach by the breaching party, including all attorneys' fees, costs and expenses incurred by the non-breaching party in enforcing any term or provisions of the Lease whether through litigation, dispute resolution or otherwise.  Such fees, costs and other expenses shall include without limitation all costs and disbursements, all costs associated with discovery, depositions and expert witness fees, and all out-of-pocket costs incurred by the non-breaching party in the prosecution or defense of any action.  For purposes of this section, the phrase "litigation or other dispute resolution" shall be deemed to include any proceeding commenced in the Bankruptcy, any court of general or limited jurisdiction, any arbitration or mediation, any proceeding commenced in the bankruptcy courts of the United States, and any appeal from any of the foregoing.  Jurisdiction and venue for any action to enforce this Lease shall lie with the Superior Courts of Klickitat County, Washington.

GRANTOR/LESSOR:

Orville Thomas Gray and Lynda Lee Gray
Living Trust dated September 18, 1995


_____
Lynda Lee Gray, Trustee
10619 W. Crosby Drive
Sun City, AZ  83851

GRANTEE/LESSEE:

Gray Land and Livestock Trust under Trust Agreement dated June 19, 2020

By:  Critical Point Advisors, LLC, a Washington
        limited liability company, Trustee


        _____
        By:  Brian Birdsall
        Its:  Principal
        2626 School Street
        Wenatchee, WA  98801

19-00467-FPC11     Doc 385     Filed 11/13/20     Entered 11/13/20 15:58:59     Pg 40 of 66

STATE OF WASHINGTON )
) ss.
County of _____ )

This record was acknowledged before me on _____, 2020 by Lynda Lee Gray, Trustee Orville Thomas Gray and Lynda Lee Gray Living Trust.

DATED: _____, 2020.

PRINT NAME: _____
NOTARY PUBLIC for the State of Washington
My appointment expires: _____

STATE OF WASHINGTON )
) ss.
County of _____ )

This record was acknowledged before me on _____, 2020 by Brian Birdsall as Principal of Critical Point Advisors, LLC, a Washington limited liability company, Trustee of the Gray Land and Livestock Trust.

DATED: _____, 2020.

PRINT NAME: _____
NOTARY PUBLIC for the State of Washington
My appointment expires: _____

19-00467-FPC11    Doc 385    Filed 11/13/20    Entered 11/13/20 15:58:59    Pg 41 of 66

## Exhibit "A"

**PARCEL 1:**
05-21-0200-0001/00

All less Government Lot 3 of Section 2, Township 5 North, Range 21 East of the Willamette Meridian in the County of Klickitat and State of Washington.

**PARCEL 2:**
05-21-0300-0001/00

Government Lots 1, 2, 3 and 4; the South Half of the Northeast Quarter; the East Half of the Southeast Quarter; the South Half of the Northwest Quarter; and the North Half of the Southwest Quarter of Section 3, Township 5 North, Range 21 East of the Willamette Meridian in the County of Klickitat and State of Washington.

**PARCEL 3:**
05-21-0400-0001/00

Government Lot 1; the Southeast Quarter of the Northeast Quarter; and he North Half of the Southeast Quarter of Section 4, Township 5 North, Range 21 East of the Willamette Meridian in the County of Klickitat and State of Washington.

**PARCEL 4:**
05-21-1100-0000/00

All of Section 11, Township 5 North, Range 21 East of the Willamette Meridian in the County of Klickitat and State of Washington.

**PARCEL 5:**
05-21-1200-0002/00

The Southwest Quarter of the Northeast Quarter; the Southeast Quarter of the Northwest Quarter; the West Half of the Southeast Quarter; the West Half of the Northwest Quarter; and the North Half of the Southwest Quarter of Section 12, Township 5 North, Range 21 East of the Willamette Meridian in the County of Klickitat and State of Washington.

**PARCEL 6:**
05-21-1300-0002/00

The North Half of the Northwest Quarter of the Southeast Quarter of the Northeast Quarter; the North Half of the Northwest Quarter of the Northeast Quarter of the Northeast Quarter; the Northeast Quarter of the Southeast Quarter of the Northeast Quarter; the East Half of the Southeast Quarter of the Southwest Quarter of the Northeast Quarter; the Northwest Quarter of the Northeast Quarter; the Northeast Quarter of the Northwest Quarter; the North Half of the Southeast Quarter of the Northwest Quarter; the South Half of the Northeast Quarter of the Northeast Quarter; the South Half of the Northwest Quarter of the Southeast Quarter of the Southwest Quarter of the Northeast Quarter; the West Half of the Southeast Quarter of the Southwest Quarter of the Northeast Quarter; and the West Half of the Northwest Quarter of Section 13, Township 5 North, Range 21 East of the Willamette Meridian in the County of Klickitat and State of Washington.

PARCEL 7:
05-21-1400-0001/00

The North Half of the North Half of Section 14, Township 5 North, Range 21 East of the Willamette Meridian in the County of Klickitat and State of Washington.

PARCEL 8:
06-21-3300-0002100

The Southeast Quarter, EXCEPT County Road No. 47380 of Section 33, Township 6 North, Range 21 East of the Willamette Meridian in the County of Klickitat and State of Washington.

PARCEL 9:
06-21-3400-0000100

The East Half of the East Half; the West Half of the East Half; the Northwest Quarter; and the Southwest Quarter Section 34, Township 6 North, Range 21 East of the Willamette Meridian in the County of Klickitat and State of Washington.

PARCEL 10:
06-21-3500-0001/00

The Southwest Quarter; the East Half of the Northeast Quarter; the Northeast Quarter of the Southeast Quarter; and the Northwest Quarter Section 35, Township 6 North, Range 21 East of the Willamette Meridian in the County of Klickitat and State of Washington.

PARCEL 11:
06-21-3300-0000/00

The West Half of Section 33, Township 6 North, Range 21, E.W.M., less County Road right of way, less Westerly 480 feet and less the Southerly 700 feet of the Easterly 400 feet of the Westerly 880 feet of said property, retaining in Grantor an easement for ingress and egress over the Westerly 20 feet of the property being sold, for the benefit of the remainder of said section 33 lying westerly of the property being transferred hereby. ALSO reserving in Miland Walling and Lester Walling or the survivor, a life estate (measured by Miland's and Lester's joint lives) in the mineral rights on the property being sold hereunder.

Exhibit B

Reserved Property



FARM LEASE AGREEMENT – PAGE 13
S2110099.DOCX

Exhibit C

Memorial Depiction



Google        ...57'17"N 120°10'37"W) 2 mi

FARM LEASE AGREEMENT – PAGE 14
S2110099.DOCX

Exhibit "B"

Quit Claim Deed

Settlement Agreement
Page 9 of 10
S2110104.DOCX

AFTER RECORDING RETURN TO:

WITHERSPOON ● KELLEY
ATTN: Jody M. McCormick
422 W. RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WA 99201

# QUIT CLAIM DEED

THE GRANTOR, CRITICAL POINT ADVISORS, LLC , a Washington limited liability company, Trustee of the Gray Land & Livestock Trust under trust agreement dated June 19, 2020, for and in consideration of Ten Dollars ($10.00) in hand paid, conveys and quit claims without warranty, express or implied to Lynda Lee Gray, the Trustee of the Orville Thomas Gray and Lynda Lee Gray Living Trust dated September 18, 1995, the following described real estate, situated in the County of Klickitat, State of Washington, including any interest therein which grantor may hereafter acquire:

### SEE EXHIBIT "A"-LEGAL DESCRIPTION ATTACHED

<u>Abbreviated legal:</u> Ptns of Sections 2, 3, 4, 12, 13 & 14 in Township 5, Range 21; and Ptns of Sections 33, 34 and 35 in Township 6, Range 21; A complete legal description is set forth on Exhibit A hereto.

<u>Tax Parcel Nos.:</u>
05-21-0200-0001/00; 05-21-0300-0001/00; 05-21-0400-0001/00; 05-21-1100-0000/00; 05-21-1200-0002/00; 05-21-1300-0002/00; 05-21-1400-0001/00; 06-21-3300-0002/00; 06-21-3400-0000/00; 06-21-3500-0001/00; and 06-21-3300-0000/00

SUBJECT TO: Easements, covenants, restrictions and conditions of record.

**[Signature Appears on Subsequent Page]**

Dated this _____ day of _____, 2020.

Gray Land and Livestock Trust under Trust Agreement dated June 19, 2020

By: Critical Point Advisors, LLC, a Washington limited liability company, Trustee

By: _____
      Brian Birdsall
      Its: Principal

STATE OF WASHINGTON     )
                        ) ss.
County of                   )

This record was acknowledged before me on _____, 2020 by Brian Birdsall as Principal of Critical Point Advisors, LLC, a Washington limited liability company, Trustee of the Gray Land and Livestock Trust.

DATED: _____, 2020.

_____
PRINT NAME: _____
NOTARY PUBLIC for the State of Washington
My appointment expires: _____

<u>EXHIBIT "A"</u>

PARCEL 1:
05-21-0200-0001/00

All less Government Lot 3 of Section 2, Township 5 North, Range 21 East of the Willamette Meridian in the County of Klickitat and State of Washington.


PARCEL 2:
05-21-0300-0001/00

Government Lots 1, 2, 3 and 4; the South Half of the Northeast Quarter; the East Half of the Southeast Quarter; the South Half of the Northwest Quarter; and the North Half of the Southwest Quarter of Section 3, Township 5 North, Range 21 East of the Willamette Meridian in the County of Klickitat and State of Washington.


PARCEL 3:
05-21-0400-0001/00

Government Lot 1; the Southeast Quarter of the Northeast Quarter; and he North Half of the Southeast Quarter of Section 4, Township 5 North, Range 21 East of the Willamette Meridian in the County of Klickitat and State of Washington.


PARCEL 4:
05-21-1100-0000/00

All of Section 11, Township 5 North, Range 21 East of the Willamette Meridian in the County of Klickitat and State of Washington.


PARCEL 5:
05-21-1200·0002/00

The Southwest Quarter of the Northeast Quarter; the Southeast Quarter of the Northwest Quarter; the West Half of the Southeast Quarter; the West Half of the Northwest Quarter; and the North Half of the Southwest Quarter of Section 12, Township 5 North, Range 21 East of the Willamette Meridian in the County of Klickitat and State of Washington.

PARCEL 6:
05-21-1300-0002/00

The North Half of the Northwest Quarter of the Southeast Quarter of the Northeast Quarter; the North Half of the Northwest Quarter of the Northeast Quarter of the Northeast Quarter; the Northeast Quarter of the Southeast Quarter of the Northeast Quarter; the East Half of the Southeast Quarter of the Southwest Quarter of the Northeast Quarter; the Northwest Quarter of the Northeast Quarter; the Northeast Quarter of the Northwest Quarter; the North Half of the Southeast Quarter of the Northwest Quarter; the South Half of the Northeast Quarter of the Northeast Quarter; the South Half of the Northwest Quarter of the Southeast Quarter of the Northeast Quarter; the South Half of the Southeast Quarter of the Northeast Quarter; the West Half of the Southeast Quarter of the Southwest Quarter of the Northeast Quarter; and the West Half of the Northwest Quarter of Section 13, Township 5 North, Range 21 East of the Willamette Meridian in the County of Klickitat and State of Washington.


PARCEL 7:
05-21-1400-0001/00

The North Half of the North Half of Section 14, Township 5 North, Range 21 East of the Willamette Meridian in the County of Klickitat and State of Washington.

PARCEL 8:
06-21-3300-0002100

The Southeast Quarter, EXCEPT County Road No. 47380 of Section 33, Township 6 North, Range 21 East of the Willamette Meridian in the County of Klickitat and State of Washington.


PARCEL 9:
06-21-3400-0000100

The East Half of the East Half; the West Half of the East Half; the Northwest Quarter; and the Southwest Quarter Section 34, Township 6 North, Range 21 East of the Willamette Meridian in the County of Klickitat and State of Washington.


PARCEL 10:
06-21-3500-0001/00

The Southwest Quarter; the East Half of the Northeast Quarter; the Northeast Quarter of the Southeast Quarter; and the Northwest Quarter Section 35, Township 6 North, Range 21 East of the Willamette Meridian in the County of Klickitat and State of Washington.

PARCEL 11:
06-21-3300-0000/00

The West Half of Section 33, Township 6 North, Range 21, E.W.M., less County Road right of way, less Westerly 480 feet and less the Southerly 700 feet of the Easterly 400 feet of the Westerly 880 feet of said property, retaining in Grantor an easement for ingress and egress over the Westerly 20 feet of the property being sold, for the benefit of the remainder of said section 33 lying westerly of the property being transferred hereby, ALSO reserving in Miland Walling and Lester Walling or the survivor, a life estate (measured by Miland's and Lester's joint lives) in the mineral rights on the property being sold hereunder.

Exhibit "C"

Memorandum of Lease

AFTER RECORDING RETURN TO:

WITHERSPOON ● KELLEY
ATTN: Jody M. McCormick
422 W. RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WA 99201

## MEMORANDUM OF LEASE

This Memorandum of Lease ("Memorandum"), dated to be effective as of _____, 2020, is entered into by between Orville Thomas Gray and Lynda Lee Gray Living Trust dated September 18, 1995 ("Landlord") and Gray Land and Livestock Trust dated June 19, 2020 ("Tenant"), for the following-described real property:

See Exhibit A attached.

Abbreviated legal: Ptns of Sections 2, 3, 4, 12, 13 & 14 in Township 5, Range 21; and Ptns of Sections 33, 34 and 35 in Township 6, Range 21; A complete legal description is set forth on Exhibit A hereto.

Tax Parcel Nos.:
05-21-0200-0001/00; 05-21-0300-0001/00; 05-21-0400-0001/00; 05-21-1100-0000/00; 05-21-1200-0002/00; 05-21-1300-0002/00; 05-21-1400-0001/00; 06-21-3300-0002/00; 06-21-3400-0000/00; 06-21-3500-0001/00; and 06-21-3300-0000/00

1.  Grant of Lease; Term; Other Rights. Landlord leased to Tenant, and Tenant leased from Landlord, the real property more particularly described above (the "Property") for a term of ten (10) years, ending on _____, 2030, subject to the provisions of that certain Farm Lease Agreement ("Lease") between the parties hereto dated _____, 2020, and as from time to time may be amended. The provisions of the Lease are incorporated herein by this reference.

2.  Purpose. This Memorandum is prepared for the purpose of recordation only, and does not modify the provisions of the Lease. In the event of any inconsistency between the provisions of this Memorandum and the Lease, the provisions of the Lease shall prevail.

3.  Miscellaneous. The parties have executed this Memorandum as of the date first set forth above on the dates and at the places indicated in their acknowledgments below.

1

S2092003

4.    Counterparts. This Memorandum may be executed in counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute a single, fully executed Memorandum.

IN WITNESS WHEREOF, Landlord and Tenant have executed this Memorandum of Lease as of the date first above written.

TENANT:                                                    LANDLORD:

Gray Land and Livestock Trust dated June        Orville Thomas Gray and Lynda Lee Gray
19, 2020                                                       Living Trust dated September 18, 1995

By: Critical Point Advisors, LLC, a
    Washington limited liability company,       By: _____
    Trustee                                                        Lynda Lee Gray, Trustee
                                                                       10619 W. Crosby Drive
        By: _____        Sun City, AZ  83851
            Brian Birdsall
            Its:  Principal

2

S2092003

STATE OF WASHINGTON )
                                    ) ss.
County of                       )

This record was acknowledged before me on _____, 2020 by Brian Birdsall as Principal of Critical Point Advisors, LLC, a Washington limited liability company, Trustee of the Gray Land and Livestock Trust.

DATED: _____, 2020.

                                           _____

                                           PRINT NAME: _____
                                           NOTARY PUBLIC for the State of Washington
                                           My appointment expires: _____


STATE OF _____ )
                                    ) ss.
County of                       )

This record was acknowledged before me on _____, 2020 by Lynda Lee Gray, Trustee Orville Thomas Gray and Lynda Lee Gray Living Trust.

DATED: _____, 2020.

                                           _____

                                           PRINT NAME: _____
                                           NOTARY PUBLIC for the State of _____
                                           My appointment expires: _____

S2092003

Exhibit "A"

PARCEL 1:
05-21-0200-0001/00

All less Government Lot 3 of Section 2, Township 5 North, Range 21 East of the Willamette Meridian in the County of Klickitat and State of Washington.

PARCEL 2:
05-21-0300-0001/00

Government Lots 1, 2, 3 and 4; the South Half of the Northeast Quarter; the East Half of the Southeast Quarter; the South Half of the Northwest Quarter; and the North Half of the Southwest Quarter of Section 3, Township 5 North, Range 21 East of the Willamette Meridian in the County of Klickitat and State of Washington.

PARCEL 3:
05-21-0400-0001/00

Government Lot 1; the Southeast Quarter of the Northeast Quarter; and he North Half of the Southeast Quarter of Section 4, Township 5 North, Range 21 East of the Willamette Meridian in the County of Klickitat and State of Washington.

PARCEL 4:
05-21-1100-0000/00

All of Section 11, Township 5 North, Range 21 East of the Willamette Meridian in the County of Klickitat and State of Washington.

PARCEL 5:
05-21-1200·0002/00

The Southwest Quarter of the Northeast Quarter; the Southeast Quarter of the Northwest Quarter; the West Half of the Southeast Quarter; the West Half of the Northwest Quarter; and the North Half of the Southwest Quarter of Section 12, Township 5 North, Range 21 East of the Willamette Meridian in the County of Klickitat and State of Washington.

PARCEL 6:
05-21-1300-0002/00

The North Half of the Northwest Quarter of the Southeast Quarter of the Northeast Quarter; the North Half of the Northwest Quarter of the Northeast Quarter of the Northeast Quarter; the Northeast Quarter of the Southeast Quarter of the Northeast Quarter; the East Half of the Southeast Quarter of the Southwest Quarter of the Northeast Quarter; the Northwest Quarter of the Northeast Quarter; the Northeast Quarter of the Northwest Quarter; the North Half of the

4

S2092003

Southeast Quarter of the Northwest Quarter; the South Half of the Northeast Quarter of the Northeast Quarter; the South Half of the Northwest Quarter of the Southeast Quarter of the Northeast Quarter; the South Half of the Southeast Quarter of the Northeast Quarter; the West Half of the Southeast Quarter of the Southwest Quarter of the Northeast Quarter; and the West Half of the Northwest Quarter of Section 13, Township 5 North, Range 21 East of the Willamette Meridian in the County of Klickitat and State of Washington.

PARCEL 7:
05-21-1400-0001/00

The North Half of the North Half of Section 14, Township 5 North, Range 21 East of the Willamette Meridian in the County of Klickitat and State of Washington.

PARCEL 8:
06-21-3300-0002100

The Southeast Quarter, EXCEPT County Road No. 47380 of Section 33, Township 6 North, Range 21 East of the Willamette Meridian in the County of Klickitat and State of Washington.

PARCEL 9:
06-21-3400-0000100

The East Half of the East Half; the West Half of the East Half; the Northwest Quarter; and the Southwest Quarter Section 34, Township 6 North, Range 21 East of the Willamette Meridian in the County of Klickitat and State of Washington.

PARCEL 10:
06-21-3500-0001/00

The Southwest Quarter; the East Half of the Northeast Quarter; the Northeast Quarter of the Southeast Quarter; and the Northwest Quarter Section 35, Township 6 North, Range 21 East of the Willamette Meridian in the County of Klickitat and State of Washington.

PARCEL 11:
06-21-3300-0000/00

The West Half of Section 33, Township 6 North, Range 21, E.W.M., less County Road right of way, less Westerly 480 feet and less the Southerly 700 feet of the Easterly 400 feet of the Westerly 880 feet of said property, retaining in Grantor an easement for ingress and egress over the Westerly 20 feet of the property being sold, for the benefit of the remainder of said section 33 lying westerly of the property being transferred hereby, ALSO reserving in Miland Walling and Lester Walling or the survivor, a life estate (measured by Miland's and Lester's joint lives) in the mineral rights on the property being sold hereunder.

5

S2092003

# Exhibit E

| | |
|---|---|
| **From:** | roger.bailey.attorney@gmail.com |
| **Sent:** | Friday, August 14, 2020 9:52 AM |
| **To:** | Jody M. McCormick |
| **Subject:** | Gray Land & Livestock |

Jody (hoping you can pass this along to Brian as well – he and Rick Gray may have discussed this yesterday):

Rick Gray or his assigns **("Gray")** submits the following termsheet to Critical Point Advisors in support of Gray's offer to purchase all assets owned by the Gray Land & Livestock, LLC bankruptcy estate.   The following terms, if agreeable, would be incorporated into a more formal purchase and sale agreement to be signed by the parties and approved by the United States Bankruptcy Court for the Eastern District of Washington, after notice and hearing:

1.      Gray would either pay, or cause to be paid, to the Estate no later than February 28, 2021 **("Closing Date")**, the amount of: (a)  $2,000,000 **plus (b)** any amounts expended by Critical Point in preparing and growing 2021 crops; **plus** (c) any payments made by Critical Point to creditors, including administrative creditors, during the Offer Period  (which from the table below appears to be approximately $750,000) **("Purchase Price");**

2.      Upon full payment of the Purchase Price, Gray would receive an order authorizing the sale and transfer to Gray, free and clear of liens and encumbrances, all remaining eal and personal property assets owned by the Estate.

3.      The payment of the Purchase Price is contingent upon the Estate obtaining a Bankruptcy Court order or judgment providing that: (a) Gray Land & Livestock, LLC properly exercised the option to purchase contained in the lease between Rick T. Gray and Tom & Lynda Gray with an effective date of January 1, 2014; and (b) establishing the payment terms and conditions as between the Estate and Lynda Gray/Estate of Tom Gray.  Critical Point and Gray would cooperate in moving forward with litigation to establish the Estate's rights in the lease/leased property during the Offer Period.

4.      Between the date an offer is approved by the Bankruptcy Court and the Closing Date **("Offer Period")**, the Trustee would continue, with the cooperation of Gray, to administer, liquidate and settle the following assets of the Estate: (a) 2016 crop insurance claim; (b) 2019 crop insurance claim; (c) sale of remaining 2019 crops; (d) 2020 wheat crop and crop insurance; and (e) 38 acre grape/vacant lot parcels located in Yakima County.   Any net proceeds received, whether through settlement, sale or otherwise would be a credit against the Purchase Price payable by Gray.

5.      In the event Gray doesn't pay the entire Purchase Price on or before the Closing Date, Gray's rights under the offer would expire, the Trustee would retain any funds received during the Offer Period and Gray would have no further right to possess or purchase any of the assets of the Estate.

6.      During the Offer Period the Trustee would fund operations on the property of the Estate, however, Gray would agree to utilize existing equipment owned by the Estate and to continue providing labor to the Estate for the sum of $8,000 per month.

7.      During the Offer Period the Estate would retain and maintain all equipment currently owned by the Estate.

1

Gray believes that this offer provides the Estate with significantly more recovery than it will receive by continuing to liquidate the assets as currently provided for by the confirmed plan. Gray believes that if Critical Point remains in possession and attempts to liquidate the Estate's assets without the assistance of Gray, that it's recovery is likely to be limited to the following amounts:

| Asset | | Net Proceeds | Explanation |
|---|---|---|---|
| | | | $400/Acre for farmable acres (3,500 acres) & $50/ac |
| Farm Ground (5.750 Acres) | $ | 1,361,250.00 | (2,250 acres) - less 10% costs of sale |
| 2016 Crop Insurance | $ | - | Recovery unlikely or limited without Debtor particip: |
| 2019 Crop Insurance | $ | - | Recovery unlikely or limited without Debtor particip: |
| 2019 Remaining Wheat | $ | 175,000.00 | |
| 2020 Replant | $ | - | |
| 2020 - Fall Wheat | $ | 175,000.00 | Recovery limited to actual crops harvested (based or |
| 2020 - Grape Crop | $ | 50,000.00 | |
| 2020 Feeder Sale | $ | 50,000.00 | |
| 2020 - Spring Guaranty | $ | 153,000.00 | Recovery limited to spring crop insurance guaranty ( |
| Grape Ground/Lot | $ | 400,000.00 | less 10% percent cost of sale |
| Equipment | $ | 100,000.00 | Equipment auction estimate |
| Total Assets | $ | 2,464,250.00 | |

| Liquidation Costs | | |
|---|---|---|
| 2020 Operating Costs | $ | (100,000.00) |
| 2020 Custom Harvest Costs | $ | (115,000.00) |
| Real Property Taxes | $ | (30,000.00) |
| Chapter 11 Trustee & Counsel Fees | $ | (62,500.00) |
| Chapter 11 Debtor Fees | $ | (95,000.00) |
| Plan Agent Fees | $ | (225,000.00) |
| Lynda Gray Administrative Claim | $ | (100,000.00) |
| Capital Gains Tax (sale of real estate)* | | Unknown |
| 2020 Fall Wheat Input Costs | $ | (290,000.00) |
| Husch Senior Lien | $ | (260,000.00) |
| Total Costs | $ | (1,277,500.00) |
| Net Recovery | $ | 1,186,750.00 |

* The Debtors 2017-2019 tax returns will need to be prepared and filed in order to make a determination as to whether c: will be due upon sale of the real estate by Critical Point Advisors

As Brian indicated in conversation, it is very unlikely CPA would attempt to make a third party sale of the real estate prior to early 2021, as a result, the risk to the Estate associated with accepting the Gray offer is minimal. The Estate obtains Gray's cooperation with the liquidation process and likely receives over

2

$1,000,000 more than it would without his assistance. If Mr. Gray is unable to consummate the offer by February 28, 2021 then the Estate retains the benefit of Mr. Gray's assistance and retains all of the assets to sell in the Spring of 2021. There is little additional risk to the Estate in agreeing to this proposal. In addition to Mr. Gray being able to assist in the prosecution of the crop insurance recoveries for 2016, 2019 and 2020, Mr. Gray will also be able to limit or eliminate a number of the expenses that CPA would incur in liquidating the assets without Mr. Gray's assistance.

I hope that you will strongly consider this offer. I am happy to sit down and work through these numbers with you at any time.

Very Truly Yours,
Roger Bailey

_____

Roger W. Bailey
Bailey & Busey PLLC
411 North 2nd Street
Yakima, Washington 98901

Phone:        509.248.4282
Facsimile:    509.575.5661
Direct Line: 509.895.0232
Cell:         509.834.0515
E-Mail:       roger.bailey.attorney@gmail.com

The information contained in this e-mail message, including any attachments, is private and may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying of the contents of this message is strictly prohibited. If you think you received this message in error, please delete the message and e-mail the sender at roger.bailey.attorney@gmail.com.

3

# Exhibit F

| | |
|---|---|
| **From:** | roger.bailey.attorney@gmail.com |
| **Sent:** | Thursday, August 20, 2020 11:22 AM |
| **To:** | Diane Pearson |
| **Subject:** | Letter for Rick |

Here is the letter to give to Rick. He may ask you to make some changes. That is fine if he wants some changes.

Brian:

I appreciate you meeting with myself and Roger this morning to discuss the terms of the offer to purchase which I submitted. You have indicated that you will not be accepting my offer, however, you mentioned that you would consider any additional offers that I make. I have re-evaluated my previous offer and made some changes which I am hopeful you will evaluate. I continue to believe that the offer I have made will generate significantly more in proceeds than you will receive from liquidating them by other means. If you are not inclined to pursue discussions about this offer I would ask that you make a counteroffer or at least let me know what portions of offer are unacceptable. As indicated I am convinced that you will receive more for creditors by accepting this offer than by continuing to operate and liquidate the assets in some other manner. As with my previous offer, this termsheet offers to purchase all assets owned by the Gray Land & Livestock, LLC bankruptcy estate/Liquidating Trust. The following terms, if agreeable, would be incorporated into a more formal purchase and sale agreement to be signed by the parties and approved by the United States Bankruptcy Court for the Eastern District of Washington, after notice and hearing:

1.      Gray would either pay, or cause to be paid, to the Estate no later than February 28, 2021 (**"Closing Date"**), the amount of: (a) $2,750,000 **plus** (b) any amounts expended by Critical Point in preparing and growing 2021 crops, **plus** (c) any payments made by Critical Point to creditors, including administrative creditors, during the Offer Period (which from the table below appears to be approximately $750,000) (**"Purchase Price"**). The total purchase price is likely in the $3.5 million range);

2.      Upon full payment of the Purchase Price, Gray would receive an order authorizing the sale and transfer to Gray, free and clear of liens and encumbrances, all remaining real and personal property assets owned by the Estate.

3.      The payment of the Purchase Price is contingent upon the Estate obtaining a Bankruptcy Court order or judgment providing that: (a) Gray Land & Livestock, LLC properly exercised the option to purchase contained in the lease between Rick T. Gray and Tom & Lynda Gray with an effective date of January 1, 2014; and (b) establishing the payment terms and conditions as between the Estate and Lynda Gray/Estate of Tom Gray. Critical Point and Gray would cooperate in moving forward with litigation to establish the Estate's rights in the lease/leased property during the Offer Period.

4.      Between the date an offer is approved by the Bankruptcy Court and the Closing Date (**"Offer Period"**), the Trustee would continue, with the cooperation of Gray, to administer, liquidate and settle the following assets of the Estate: (a) 2016 crop insurance claim; (b) 2019 crop insurance claim; (c) sale of remaining 2019 crops; (d) 2020 wheat crop and crop insurance; and (e) 38 acre grape/vacant lot parcels located in Yakima County. Any net proceeds received, whether through settlement, sale or otherwise would be a credit against the Purchase Price payable by Gray. Gray would guarantee that the Trustee receives at least $1.0 million in proceeds from some or all of these sources prior to November 30, 2020. If the Estate/Trust does not receive more than $1.0 million prior to November 30, 2020, this offer would terminate.

19-00467-FPC11    Doc 385    Filed 11/13/20    Entered 11/13/20 15:58:59    Pg 63 of 66

5.       In the event Gray doesn't pay the entire Purchase Price on or before the Closing Date, Gray's rights under the offer would expire, the Trustee would retain any funds received during the Offer Period and Gray would have no further right to possess or purchase any of the assets of the Estate.

6.       During the Offer Period the Trustee would fund operations on the property of the Estate, however, Gray would agree to utilize existing equipment owned by the Estate and to continue providing labor to the Estate for the sum of $8,000 per month.

7.       During the Offer Period the Estate would retain and maintain all equipment currently owned by the Estate.

Gray believes that this offer provides the Estate with significantly more recovery than it will receive by continuing to liquidate the assets as currently provided for by the confirmed plan. Gray believes that if Critical Point remains in possession and attempts to liquidate the Estate's assets without the assistance of Gray, that it's recovery is likely to be limited to the following amounts:

19-00467-FPC11    Doc 385    Filed 11/13/20    Entered 11/13/20 15:58:59    Pg 64 of 66

| Asset | Net Proceeds | Explanation |
|---|---|---|
| Farm Ground (5.750 Acres) | $ 1,361,250.00 | $400/Acre for farmable acres (3,500 acres) & $50/acre fc (2,250 acres) - less 10% costs of sale |
| 2016 Crop Insurance | $ - | Recovery unlikely or limited without Debtor participation |
| 2019 Crop Insurance | $ - | Recovery unlikely or limited without Debtor participation |
| 2019 Remaining Wheat | $ 175,000.00 | |
| 2020 Replant | $ - | |
| 2020 - Fall Wheat | $ 175,000.00 | Recovery limited to actual crops harvested (based on esti |
| 2020 - Grape Crop | $ 50,000.00 | |
| 2020 Feeder Sale | $ 50,000.00 | |
| 2020 - Spring Guaranty | $ 153,000.00 | Recovery limited to spring crop insurance guaranty (base |
| Grape Ground/Lot | $ 400,000.00 | less 10% percent cost of sale |
| Equipment | $ 100,000.00 | Equipment auction estimate |
| Total Assets | $ 2,464,250.00 | |

### Liquidation Costs

| | | |
|---|---|---|
| 2020 Operating Costs | $ (100,000.00) | |
| 2020 Custom Harvest Costs | $ (115,000.00) | |
| Real Property Taxes | $ (30,000.00) | |
| Chapter 11 Trustee & Counsel Fees | $ (62,500.00) | |
| Chapter 11 Debtor Fees | $ (95,000.00) | |
| Plan Agent Fees | $ (225,000.00) | |
| Lynda Gray Administrative Claim | $ (100,000.00) | |
| Capital Gains Tax (sale of real estate)* | Unknown | |
| 2020 Fall Wheat Input Costs | $ (290,000.00) | |
| Husch Senior Lien | $ (260,000.00) | |
| Total Costs | $ (1,277,500.00) | |
| **Net Recovery** | $ 1,186,750.00 | |

* The Debtors 2017-2019 tax returns will need to be prepared and filed in order to make a determination as to whether capita will be due upon sale of the real estate by Critical Point Advisors

You have indicated that it is very unlikely CPA would attempt to make a third party sale of the real estate prior to early 2021, as a result, the risk to the Estate associated with accepting my offer is minimal. The Estate obtains Gray's cooperation with the liquidation process and likely receives over $1,500,000 more than it would without his assistance. If Mr. Gray is unable to consummate the offer by February 28, 2021 (and ensure the payment of at least $1.0 million prior to November 30) then the Estate retains the benefit of Mr. Gray's assistance and retains all of the assets to sell in the Spring of 2021. There is little additional risk to the Estate in agreeing to this proposal. In addition to Mr. Gray being able to assist in the prosecution of the crop insurance recoveries for 2016, 2019 and 2020, Mr. Gray will also be able to limit or eliminate a number of the expenses that CPA would incur in liquidating the assets without Mr. Gray's assistance.

3

Thank you for your consideration.

Rick Gray

---

Roger W. Bailey
Bailey & Busey PLLC
411 North 2nd Street
Yakima, Washington 98901

Phone:       509.248.4282
Facsimile:   509.575.5661
Direct Line: 509.895.0232
Cell:        509.834.0515
E-Mail:      roger.bailey.attorney@gmail.com

The information contained in this e-mail message, including any attachments, is private and may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying of the contents of this message is strictly prohibited. If you think you received this message in error, please delete the message and e-mail the sender at roger.bailey.attorney@gmail.com.